RON BENDER (SBN 143364)
TODD M. ARNOLD (SBN 221868)
YIHAN SHE (SBN 348334)
LEVENE, NEALE, BENDER, YOO & GOLUBCHIK L.L.P.
2818 La Cienega Avenue
Los Angeles, California 90034
Telephone: (310) 229-1234
Facsimile: (310) 229-1244
Email: RB@LNBYG.COM; TMA@LNBYG.COM; YAS@LNBYG.COM

Proposed Attorneys for Debtor and Debtor in Possession

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**LOS ANGELES DIVISION**

| | |
|---|---|
| In re:<br><br>BOISSON INC.,<br><br>       Debtor and Debtor in Possession. | Case No.: 2:24-bk-12614-NB<br><br>Chapter 11 Case<br>Subchapter V<br><br>**DEBTOR'S EMERGENCY MOTION FOR ENTRY OF AN INTERIM ORDER: (I) AUTHORIZING THE DEBTOR TO USE CASH COLLATERAL; (II) GRANTING ADEQUATE PROTECTION; (III) SCHEDULING A FINAL HEARING; AND (IV) GRANTING RELATED RELIEF; MEMORANDUM OF POINTS AND AUTHORITIES AND DECLARATIONS IN SUPPORT THEREOF**<br><br><u>Hearing</u><br>Date:     TBD[1]<br>Time:     TBD<br>Location:  Courtroom <u>1545</u><br>           255 East Temple Street<br>           Los Angeles, California 90012 |

---

[1] The Debtor will provide notice of the date and time for the hearing when set and as directed by the Court.

Pursuant to Local Bankruptcy Rules 2081-1 and 9075-1, 11 U.S.C. §§ 105(a), 361, 363, 1182(2), and 1184 and Rules 4001 and 6003 of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules"), Boisson Inc., the Chapter 11 debtor and debtor in possession herein (the "Debtor"), hereby files this motion (the "Motion"), on an emergency basis, for the entry of an interim order ("Interim Order"), in substantially the form attached hereto as **Exhibit 1,** and for the entry of a final order ("Final Order" and with the Interim Order, the "Orders") following a final hearing, which provide for, among other things:

(1)     authorization for the Debtor to use of cash collateral, as such term is defined in Section 363(a),[2] in accordance with the Debtor's thirteen (13) week cash flow forecast (the "Budget") attached hereto as **Exhibit 2,** which sets forth all projected cash receipts and cash disbursements following the petition date, with the Debtor entitled to exceed weekly Budget disbursement amounts by 20% on a line-item basis and overall basis (the "Permitted Variances") and any unused Permitted Variances carrying forward to subsequent weeks;

(2)     the grant of adequate protection to the Secured Creditors (as defined below) on account of the Debtor's use of cash collateral, in the form of (x) valid, enforceable, non-avoidable and fully perfected replacement liens on, and security interests in, the assets of the Debtor, other than avoidance action claims under Chapter 5 of the Bankruptcy Code and any recoveries thereon ("Avoidance Actions"), with the same extent, validity, and priority as their respective pre-petition liens on pre-petition collateral and all post-petition proceeds obtained by the Debtor from such pre-petition collateral (the "Adequate Protection Liens"), and (y) super-priority administrative expense claims with priority over any and all administrative expenses and claims asserted against the estate pursuant to Section 507(b) to the extent of any post-petition diminution in value in the Secured Creditors' respective interests in the Debtor's pre-petition collateral (the "Adequate Protection Administrative Claims");

(3)     instructing and ordering all banks holding or in possession of the Debtor's funds to immediately release such funds to the Debtor to enable the Debtor to transfer and deposit

---

[2] Unless otherwise stated, all Section references herein are to 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code").

such funds into its debtor in possession bank accounts irrespective of any pre-petition agreements, including, without limitation, any deposit account control agreements;

(4)     pursuant to Bankruptcy Rule 4001, the scheduling of an interim hearing (the "<u>Interim Hearing</u>") on the Motion for this Court to consider entry of the Interim Order;

(5)     the scheduling of a final hearing (the "<u>Final Hearing</u>") on the Motion no later than the twenty-first (21st) day following the entry of the Interim Order to consider entry of a Final Order granting the relief requested in the Motion on a final basis; and

(6)     waiver of any applicable stay and provision for immediate effectiveness of the Interim Order.

## **REQUEST TO USE CASH COLLATERAL**

As an initial matter important to the review and consideration of the Motion, the Debtor hereby advises the Court and other parties in interest that the Debtor has obtained consent from Connect Ventures I, L.P., as Collateral Agent ("<u>Connect Ventures</u>") to the use of cash collateral pursuant to the Budget, with Permitted Variances, as requested herein.  Connect Ventures' consent is set forth in the email (the "<u>Consent Email</u>") attached hereto as **Exhibit 3**.  As further discussed in the Memorandum of Points and Authorities (the "<u>Memorandum</u>") annexed hereto, Connect Ventures is the only known creditor with a lien on the Debtor's cash collateral. Therefore, the Debtor submits that, even without the Motion and any Orders thereon, it is entitled to use cash collateral pursuant to Section 363(c)(2)(A).  Nevertheless, the Debtor filed the instant Motion out of an abundance of caution and so that it can provide adequate protection to Connect Ventures and other Secured Creditors as appropriate under the circumstances.

As of the petition date, the Debtor's primary assets were comprised of (1) cash in the approximate amount of $80,000, (2) inventory, which can be sold for no less than $650,000, and (3) approximately $400,000 in accounts receivable, which are expected to be collected in the ordinary course of business.  In addition, the Debtor owns intellectual property (including branded beverages), rolling stock, and goodwill that have substantial value.

By the Motion, the Debtor seeks an order of the Court authorizing the Debtor to use its cash collateral to pay all of its projected post-petition expenses set forth in the Budget, subject to

the Permitted Variances. As further discussed in the Memorandum, the Secured Creditors are or will be adequately protected by (1) the Adequate Protection Liens, (2) the Adequate Protection Administrative Claims, and (3) the ongoing operation of the Debtor's business, which must continue in the ordinary course in order for the Debtor to emerge as a more streamlined and focused business following the Chapter 11 reorganization process and the maintain and maximize the Detor's enterprise value.

Pursuant to Bankruptcy Rule 4001, while the Court cannot conduct a Final Hearing on the Motion earlier than fourteen (14) days after service of this Motion, the Court may conduct a preliminary hearing before such 14-day period expires to enable the Debtor to use cash collateral as is necessary to avoid immediate and irreparable harm to the Debtor's estate pending a Final Hearing. The Debtor must have access and use of its cash to avoid immediate and irreparable harm to its business, enterprise value, and bankruptcy estate and the creditors thereof. The use of cash collateral is essential to maintain operations, pay critical expenses like payroll, rent, and utilities, as well as to make required ordinary course payments enabling the Debtor to continue operations during its Chapter 11 reorganization to maximize recovery for all creditors, including the Secured Creditors. Without authority to use cash collateral per the Budget, the Debtor would be forced to cease operations, which would severely harm the Debtor's overall enterprise value, as well as the value of its inventory, which the Debtor would likely no longer be able to sell at a profit and would have to sell at liquidation values, all of which would harm the estate and its creditors.

The relief sought in this Motion is based upon (1) the Motion, (2) the Memorandum of Points and Authorities, declarations, and exhibits annexed hereto, (3) the statements, arguments and representations of counsel to be made at the hearing(s) on the Motion, and (4) any other evidence properly presented to the Court at or prior to the hearing(s) on the Motion.

In order to provide maximum notice of this Motion, concurrently with the filing of this Motion with the Court, the Debtor served a copy of this Motion and all supporting papers (including notice of the hearing on the Motion) upon the Office of the United States Trustee, any Subchapter V Trustee appointed in the case, all of the Secured Creditors and their counsel

(if known), the 20 largest unsecured creditors of the Debtor, and parties requesting special notice via overnight mail.

**WHEREFORE**, the Debtor respectfully requests that this Court:

(1)    grant the relief requested in the Motion on an interim basis;

(2)    enter the proposed form of the Interim Order attached hereto as **Exhibit 1**;

(3)    waive any applicable stay to allow the Interim Order to become immediately effective;

(4)    schedule the Final Hearing on the Motion no later than the twenty-first (21st) day following the entry of the Interim Order to consider entry of a Final Order granting the relief requested in the Motion on a final basis; and

(5)    grant such further relief as the Court deems just and proper.

Dated:  April 5, 2024                              BOISSON INC.

By:____/s/ Ron Bender_____
RON BENDER
TODD M. ARNOLD
YIHAN SHE
LEVENE, NEALE, BENDER, YOO
& GOLUBCHIK L.L.P.
Proposed Attorneys for Debtor and Debtor in Possession

**MEMORANDUM OF POINTS AND AUTHORITIES[3]**

**I.**

**STATEMENT OF FACTS**

**A.    GENERAL CASE BACKGROUND.**

1.      On April 4, 2024 (the "Petition Date"), the Debtor, filed a voluntary petition under Chapter 11 of the Bankruptcy Code.  The Debtor is a "debtor" as defined by Section 1182 of Subchapter V of Chapter 11 of the Bankruptcy Code and elected Subchapter V on its bankruptcy petition.

2.      The United States Trustee (the "UST") has not yet appointed a Subchapter V Trustee (the "Trustee") in this case pursuant to Section 1183(a).

3.      The Debtor continues to manage its financial affairs, operate its business, and administer its bankruptcy estate as a debtor in possession pursuant to Sections 1182(2) and 1184.

**B.    THE DEBTOR, THE REASON FOR FILING FOR BANKRUPTCY PROTECTION, AND THE CURRENT EXIT STRATEGY.**

4.      In 2021, the Debtor was formed and launched in New York, aiming to create a unique, judgment-free space for consumers to explore an extensive array of non-alcoholic wines, beers, and spirits. With an ambitious expansion strategy, the Debtor opened 11 storefronts in major cities, including New York, Miami, Los Angeles, and San Francisco, amplified its digital presence through a growing e-commerce platform, and also launched a wholesale distribution channel.  The Debtor offers a vast portfolio, boasting over 125 brands of non-alcoholic wines, beers, spirits, aperitifs, and mixers, including brands owned by the Debtor. Additional information regarding the Debtor can be obtained at: https://boisson.co/.

5.      As the preeminent curator and leading go-to-market choice for non-alcoholic brands, the Debtor successfully cultivated a customer base exceeding 200,000, generating $20 million in Gross Merchandise Value (GMV) within just three years, with a repeat customer rate of 40% and an efficient Advertising Cost of Sales (ACOS) of 11%.

---

[3]  Capitalized terms not defined herein have the meanings ascribed to them in the preceding Motion.

6.      As the sector's leading specialty omnichannel retailer, the Debtor excels in utilizing data analytics to tailor its offerings and predict emerging trends, ensuring its offerings remain at the storefront of consumer preferences and industry innovation.

7.      In 2023, the Debtor generated a combined revenue of $10 million from its retail and e-commerce operations, alongside more than $1 million in wholesale revenue and an additional $175,000 from Boisson-owned brands.

8.      Unfortunately, faced with escalating operational costs, particularly from retail operations at its current nine traditional brick and mortar locations, and a competitive landscape that strained its financial reserves, the Debtor became unable to pay its debts as they came due.

9.      In order to address its financial issues, the Debtor has begun to initiate a strategic pivot, whereby it will completely transition away from physical retail operations to focus instead on e-commerce and wholesale distribution channels for greater efficiency and sustainability.

10.     In consideration of the foregoing, and after considering the best interests of its creditors, the Debtor filed for bankruptcy protection on the Petition Date.  The bankruptcy case will afford the Debtor a breathing spell from its creditors as it concentrates its efforts on implementing the strategy outlined above to reorganize its financial affairs.  The contemplated strategic realignments are envisioned to lower overheads, improve margins, and position the Debtor for sustainable operation and future growth in the competitive landscape of non-alcoholic beverages.  The Debtor believes that once it has effectuated its reorganization it will be able to emerge from Chapter 11 as a leaner, focused, profitable business, which will benefit all creditors.

## C.      THE DEBTOR'S ASSETS AND ALLEGED SECURED CREDITORS.

11.     As of the petition date, the Debtor's primary assets were comprised of (a) cash in the approximate amount of $80,000, (b) inventory, which can be sold for no less than $650,000, and (c) approximately $400,000 in accounts receivable, which are expected to be collected in the ordinary course of business.  In addition, the Debtor owns intellectual property (including branded beverages), rolling stock, and goodwill that have substantial value.

12.     The Debtor obtained a certified search of UCC-1 financing statements recorded against the Debtor (the "<u>UCC Summary/Financing Statements</u>") from the Secretary of State of Delaware, where the Debtor was incorporated.   A true and correct copy of the UCC Summary/Financing Statements is attached hereto as **Exhibit 4**.   As can be seen from the UCC Summary/Financing Statements, there are five (5) Financing Statements recorded against the Debtor by (a) 11770 SVB, LLC ("<u>SVB</u>"), (b) Farnam Street Financial, Inc. ("<u>Farnam</u>"), (c) HYG Financial Services, Inc. ("<u>HYG</u>"), (d) Connect Ventures, and (v) Ouiby, Inc ("<u>Ouiby</u>") (collectively, the "<u>Secured Creditors</u>").

13.     A general summary of the Financing Statements recorded against the Debtor, including the names of the creditors, the numbers and dates of the UCC financing statements, and the scope of their purported collateral ("<u>UCC Analysis</u>")[4] is as follows:

| Creditor | Number and Date | Collateral |
|---|---|---|
| SVB | 2022 3717790 (filed 5/3/22) | "All stock in trade and debtor's trader fixtures (which includes trade fixtures which are not attached to or integrated with improvements **to the 'premises'** (as defined below) but shall not include improvements to the premises made by debtor or fixtures, including trade fixtures, attached to or integrated with improvements to the premises), furniture, equipment and other personal property now or hereafter **located in the premises** and all proceeds therefrom. **'Premises' means those certain premises located at 11762 San Vincente Boulevard, Los Angeles, California 90049**, which premises are leased to debtor, as tenant, by secured party, as landlord, pursuant to that certain restaurant lease dated as of May 2, 2022." (emphasis added).<br><br>The Debtor is no longer at this premises and has no property at the premises that would generate cash collateral. |
| Farnam | 2022 8097271 (filed 9/28/22) | Equipment subject to Lease Agreement No. BO092622 between the Debtor and Farnam. |

---

[4]     The following UCC Analysis is being provided for information purposes only and does not constitute an admission or legal opinion as to the validity, priority, or scope of any liens asserted by any creditor in this case.  As set forth in the UCC Analysis, various assets, including stock in trade, trade fixtures, equipment, personal property assets, and consignment inventor, may constitute the collateral secured by the Secured Creditors.

| Creditor | Number and Date | Collateral |
|---|---|---|
| | | This is a lien to secure a purported lease and does not apply to any cash collateral, as the Debtor is not seeking to sell any equipment subject to the Farnam lease or to use the proceeds therefrom. |
| HYG | 2022 9961590 (filed 12/2/22) | "All of the equipment leased by HYG to the Debtor and all accessions, additions, replacements, and substitutions thereto and therefore, and all proceeds including insurance proceeds thereof." <br><br> This is a lien to secure a purported lease and does not apply to any cash collateral, as the Debtor is not seeking to sell any equipment subject to the HYG lease or to use the proceeds therefrom. |
| Connect Ventures | 2023 5382014 (filed 8/4/23) | All personal property assets. |
| Ouiby | 2024 1975810 (filed 3/26/24) | Consignment of specified inventory of non-alcoholic wines, spirits, cocktails and beverages from several brands (Leitz, Pentire, Kolonne Null, Lautus, Misty Cliffs, Thomson & Scott), along with any proceeds from the sale of that inventory. <br><br> To the extent any inventory consigned by Ouiby is still in possession as of the Petition Date, at this juncture, the Debtor will treat the consigned inventory as not constituting property of the estate, and, therefore, the Debtor will pay proceeds to Ouiby net of any amounts owed to the Debtor per the agreements of the parties. |

14.    Based on a review of the UCC Summary/Financing Statements and the UCC Analysis above, it appears that Connect Ventures is the only creditor with a lien on the Debtor's cash collateral.

15.    As to Connect Ventures, pursuant to a Secured Convertible Promissory Note and Warrant Purchase Agreement, a Security Agreement, and related loan documents dated August 4, 2023 between the Debtor and various lenders (the "Connect Lenders") for which Connect Ventures serves as the collateral agent, the Debtor borrowed $5 million from the Connect Lenders secured by a first priority blanket lien on the Debtor's personal property assets not

otherwise subject to a senior lien or lessor lien set forth in the UCC Analysis. The Debtor currently owes the Connect Lenders $5 million. Three of the Connect Lenders – Connect Ventures, Convivialité Ventures, and Scorpion Investments II, L.P. – hold seats on the Debtor's five-member Board of Directors; at present, Convivialité Ventures' seat is vacant.

16.    The Debtor has obtained consent from Connect Ventures to the use of cash collateral pursuant to the Budget, with Permitted Variances, as requested herein. Connect Ventures' consent is set forth in the Consent Email attached hereto as **Exhibit 3**.

**D.    THE NEED FOR USE OF CASH COLLATERAL.**

17.    As discussed above, it appears that Connect Ventures is the only entity with a lien on the Debtor's cash collateral (as such term is defined in 11 U.S.C. § 363(a)). However, it is possible that other of the alleged Secured Creditors may also assert interests in cash collateral.

18.    Attached as **Exhibit 2** hereto is the Debtor's thirteen (13) week Budget, which sets forth all projected cash receipts and cash disbursements following the petition date. As the Budget shows, the use of the Debtor's cash collateral will be sufficient to meet the Debtor's immediate post-petition liquidity needs.

19.    The Debtor must have access and use of its cash to avoid immediate and irreparable harm to its business, enterprise value, and bankruptcy estate and the creditors thereof. The use of cash collateral is essential to maintain operations, pay critical expenses like payroll, rent, and utilities, as well as to make required ordinary course payments enabling the Debtor to continue operations during its Chapter 11 reorganization to maximize recovery for all creditors, including the Secured Creditors. Without authority to use cash collateral per the Budget, the Debtor would be forced to cease operations, which would severely harm the Debtor's overall enterprise value, as well as the value of its inventory, which the Debtor would likely no longer be able to sell at a profit and would have to sell at liquidation values, all of which would harm the estate and its creditors. The Budget reflects those expenses that the Debtor *must* pay in order to avoid the foregoing immediate and irreparable harm to its business and to this estate.

10

20.    By the Motion, the Debtor seeks to use cash collateral pursuant to the Budget, with authority to deviate from the Budget, without the need for any further Court order or consent of the Secured Creditors, by up to 20% on a line-item basis and overall basis (*i.e.*, the Permitted Variance) with any unused Permitted Variances carrying forward to subsequent weeks.

21.    As adequate protection for the Debtor's use of cash collateral, the Debtor proposes to provide to the Secured Creditors, in the form of (a) valid, enforceable, non-avoidable and fully perfected replacement liens on, and security interests in, the assets of the Debtor, other than Avoidance Actions and any recoveries thereon, with the same extent, validity, and priority as their respective pre-petition liens on pre-petition collateral and all post-petition proceeds obtained by the Debtor from such pre-petition collateral (*i.e.*, the Adequate Protection Liens), and (b) super-priority administrative expense claims with priority over any and all administrative expenses and claims asserted against the estate pursuant to Section 507(b) to the extent of any post-petition diminution in value in the Secured Creditors' respective interests in the Debtor's pre-petition collateral (*i.e.*, the Adequate Protection Liens).

22.    The Secured Creditors will be further adequately protected by the ongoing operation of the Debtor's business, which must continue in the ordinary course in order for the Debtor to emerge as a more streamlined and focused business following the Chapter 11 reorganization process and the maintain and maximize the Detor's enterprise value.

23.    Attached as **Exhibit 1** hereto is the proposed Interim Order granting the Motion. The Debtor also seeks to include in the Interim Order an instruction and order to all banks holding or in possession of the Debtor's funds to immediately release such funds to the Debtor to enable the Debtor to transfer and deposit such funds into its debtor in possession bank account irrespective of any pre-petition agreements, including, without limitation, any deposit account control agreements.

29.    For all of the reasons set forth herein, the Debtor submits that the immediate granting of all of the relief sought herein is warranted.  Use of cash collateral as requested herein is appropriate under the circumstances.

11

## II.

## THE DEBTOR MUST BE AUTHORIZED TO USE CASH COLLATERAL

**A.     THE DEBTOR MUST BE AUTHORIZED TO USE CASH COLLATERAL TO OPERATE, MAINTAIN AND PRESERVE ITS ASSETS IN ACCORDANCE WITH THE APPROVED BUDGET.**

The Debtor's use of property of the estate is governed by section 363 of the Bankruptcy Code.  Section 363(c)(1) provides in pertinent part:

> If the business of the debtor is authorized to be operated under section. . .1108. . . of this title and unless the court orders otherwise, the trustee may enter into transactions, including the sale or lease of property of the estate, in the ordinary course of business, without notice or a hearing, and may use property of the estate in the ordinary course of business without notice or a hearing.

11 U.S.C. § 363(c)(1).  A debtor in possession has all of the rights and powers of a trustee with respect to property of the estate, including the right to use property of the estate in compliance with section 363.  11 U.S.C. § 1107(a).

"Cash collateral" is defined as "cash, negotiable instruments, documents of title, securities, deposit accounts or other cash equivalents … in which the estate and an entity other than the estate have an interest…."  11 U.S.C. § 363(a).  Section 363(c)(2) establishes a special requirement with respect to "cash collateral," providing that the trustee or debtor in possession may use "cash collateral" under subsection (c)(1) if:

> (A)     each entity that has an interest in such cash collateral consents; or
> (B)     the court, after notice and a hearing, authorizes such use, sale or lease in accordance with the provisions of this section.

11 U. S.C. §363(c)(2)(A) and (B).

It is well settled that it is appropriate for a Chapter 11 debtor to use cash collateral for the purpose of maintaining and operating its property. 11 U.S.C. § 363(c)(2)(B); *In re Oak Glen R-Vee*, 8 B.R. 213, 216 (Bankr. C.D. Cal. 1981); *In re Tucson Industrial Partners*, 129 B.R. 614 (9th Cir. BAP 1991). In addition, where the debtor is operating a business, it is extremely important that the access to cash collateral be allowed in order to facilitate the goal of reorganization: "the purpose of Chapter 11 is to rehabilitate debtors and generally access to cash collateral is necessary to operate a business." *In re Dynaco Corporation*, 162 B.R. 389 (Bankr. D.N.H. 1993), *quoting In re Stein*, 19 B.R. 458, 459. (Bankr. E.D. Pa. 1982).

For the reasons discussed herein, the Debtor has no ability to maintain its business operations or to preserve the going-concern value of its assets unless it has the ability to use cash collateral to pay its projected expenses in accordance with the Budget. The Debtor's inability to pay such expenses would cause immediate and irreparable harm to its customers, business, its sale efforts, and its bankruptcy estate. Indeed, the Debtor's inability to pay the expenses set forth in the Budget, which include critical services needed for meeting its clients' needs, payroll, rent, utilities, inventory purchases, and other critical operating expenses, would result in the immediate shutdown of its business, and the decimation of the value of the Debtor's assets and overall going-concern value. The preservation and maintenance of the Debtor's business and assets are of the utmost significance and importance to its ability to effectuate its pivot away from physical retail operations to focus instead on e-commerce and wholesale distribution channels for greater efficiency and sustainability in ultimate furtherance of the Debtor's reorganization efforts.

1. **THE ONLY SECURED CREDITOR WITH AN INTEREST IN THE DEBTOR'S CASH COLLATERAL CONSENTED TO THE USE THEREOF.**

As discussed above, it appears that Connect Ventures is the only Secured Creditor with an interest in the Debtor's cash collateral, and Connect Ventures consented to the Debtor's use of cash collateral pursuant to the Budget, with Permitted Variances, as requested herein. Therefore, the Debtor submits that, even without the Motion and any Orders thereon, it is

entitled to use cash collateral as requested herein pursuant to Section 363(c)(2)(A). Nevertheless, the Debtor filed the instant Motion out of an abundance of caution and to that it can provide adequate protection to Connect Ventures and other Secured Creditors as appropriate under the circumstances as set for the below.

## 2.    THE SECURED CREDITORS ARE ADEQUATELY PROTECTED.

Pursuant to Section 363(c)(2)(A), the Court may authorize a debtor in possession to use a secured creditor's cash collateral if secured creditors are adequately protected. *In re Mellor*, 734 F.2d 1396, 1400 (9th Cir. 1984). *See also In re O'Connor*, 808 F.2d 1393, 1398 (10th Cir. 1987); *In re McCombs Properties VI, Ltd.*, 88 B.R. 261, 265 (Bankr. C.D. Cal. l988) ("McCombs").

Section 361 provides various means of providing adequate protection in regard to cash collateral use under Section 363.  11 U.S.C. § 361.  Adequate protection can be provided by (1) requiring periodic payments to the extent there is a decrease in the value of a secured creditor's overall collateral resulting from cash collateral use, (2) providing additional or replacement liens to the extent there is a decrease in the value of a secured creditor's overall collateral resulting from cash collateral use, or (3) granting such other relief, other than entitling such entity to compensation allowable under Section 503(b)(1) an administrative expense, as will result in the realization by the secured creditor of the indubitable equivalent of the secured creditor's interest in collateral.

Here, Connect Ventures and the other Secured Creditors will be adequately protected in three ways.  **First**, the Debtor will provide the Secured Creditors with valid, enforceable, non-avoidable and fully perfected replacement liens on, and security interests in, the assets of the Debtor, other than Avoidance Actions and any recoveries thereon, with the same extent, validity, and priority as their respective pre-petition liens on pre-petition collateral and all post-petition proceeds obtained by the Debtor from such pre-petition collateral (*i.e.*, the Adequate Protection Liens).

**Second**, the Debtor will provide the Secured Creditors with super-priority administrative expense claims with priority over any and all administrative expenses and claims asserted

against the estate pursuant to Section 507(b) to the extent of any post-petition diminution in value in the Secured Creditors' respective interests in the Debtor's pre-petition collateral (*i.e.*, the Adequate Protection Liens).

**Third**, the Secured Creditors will be adequately protected by the continued operation of the Debtor's business. Pursuant to the Supreme Court case of *United Savings Association v. Timbers of Inwood Forest Associates*, 108 S.Ct. 626, 629 (1988) ("Timbers") and subsequent case law, the property interest that a debtor must adequately protect pursuant to Sections 361(1) and (2) of the Bankruptcy Code is only the value of the lien that secures the creditor's claim. 108 S.Ct. at 630. *See also, McCombs,* 88 B.R. at 266. Section 506(a) "limit[s] the secured status of a creditor (*i.e.*, the secured creditor's claim) to the lesser of the [allowed amount of the] claim or the value of the collateral." *McCombs*, 88 B.R. at 266. The law is clear that the preservation of the value of a secured creditor's lien is sufficient to provide adequate protection to a secured creditor when a debtor seeks to use cash collateral. *In re Triplett*, 87 B.R. 25 (Bankr. W.D.Tex. 1988). *See also In re Stein*, 19 B.R. 458 (Bankr. E.D.Pa. 1982). The *Stein* Court determined that the use of cash collateral was necessary to the continued operations of the debtor, and that the creditor's secured position could only be enhanced by the continued operation of the debtor's business. *See also, In re McCombs*, *supra*, where the court determined that the debtor's use of cash collateral for needed repairs, renovations and operating expenses eliminated the risk of diminution in the creditor's interest in the cash collateral and such use would more likely increase cash collateral.

Other courts have determined that a debtor's continued business operations can constitute the adequate protection of a secured creditor. *See Matter of Pursuit Athletic Footwear, Inc.,* 193 B.R. 713 (Bankr. D. Del. 1996); *In re Newark Airport/Hotel Ltd. Partnership*, 156 B.R. 444, 450 (Bankr. D.N.J. 1993); *In re Dynaco*, 162 B.R. 389, 394-5 (Bankr. D.N.H. 1993); *In re Immenhausen Corp.*, 164 B.R. 347, 352 (Bankr. M.D. Fla. 1994).

Additionally, in determining adequate protection, courts have stressed the importance of promoting a debtor's reorganization. In *In re O'Connor*, *supra*, the Tenth Circuit stated:

1

"In this case, Debtors, in the midst of a Chapter 11 proceeding, have proposed to deal with cash collateral for the purpose of enhancing the prospects of reorganization. This quest is the ultimate goal of Chapter 11. Hence, the Debtor's efforts are not only to be encouraged, but also their efforts during the administration of the proceeding are to be measured in light of that quest. Because the ultimate benefit to be achieved by a successful reorganization inures to all the creditors of the estate, a fair opportunity must be given to the Debtors to achieve that end. Thus, while interests of the secured creditor whose property rights are of concern to the court, the interests of all other creditors also have bearing upon the question of whether use of cash collateral shall be permitted during the early stages of administration."

808 F.2d at 1937.

Here, as reflected in the Budget, the payment of the expenses necessary for the Debtor to continue operating its business will adequately protect the Secured Creditors, because, by doing so, the Debtor will continue to generate revenue and will be able to preserve the going-concern value of its assets while they pursue a Chapter 11 proceeding. Most importantly, the Budget projects that, if the Debtor is allowed to use cash collateral and main maintain operations, the overall collateral value will increase over the period covered by the Budget from $1.121 million to $1.289 million.

Further, the use of cash collateral is critical to the Debtor's ability to maintain its business operations, continue to provide services and products to its customers, and preserve the value of its assets until it can consummate a Chapter 11 plan for the benefit of the Debtor's creditors. If the Debtor is not permitted to use cash collateral to maintain its business operations and preserve the going-concern value of its assets, the Debtor would be forced to cease operations, which would severely harm the Debtor's overall enterprise value, as well as the value of its inventory, which the Debtor would likely no longer be able to sell at a profit and would have to sell at liquidation values, all of which would harm the estate and its creditors, including the Secured Creditors. On the other hand, if the Debtor is authorized to use its cash collateral, it will be able to sustain its business operations, guarantee services to its customers, and safeguard the value of its assets throughout its Chapter 11 proceedings. Clearly, the use of cash collateral will only enhance the outcome of the Debtor's Chapter 11 reorganization plan.

Based on all of the foregoing, the Debtor submits that the requirements of Section 363(c)(2)(B) have been satisfied, because the Secured Creditors will be adequately protected by the Adequate Protection Liens and the Adequate Protection Administrative Claims, and because the Budget protects the Secured Creditors' collateral base from diminution in value. Therefore, the Debtor should be authorized to use cash collateral in accordance with the Budget, subject to the Permitted Variances, and the other terms and conditions set forth in the Orders.

### III.

### PROCEDURAL REQUIREMENTS REGARDING APPROVAL OF

### THE MOTION HAVE BEEN SATISFIED

Rule 4001(b) of the Bankruptcy Rules sets forth the procedural requirements for obtaining authority to use cash collateral. The Debtor submits that it has complied with these procedural requirements. First, the Motion must contain a copy of the proposed form of order granting the Motion, which has been done by attaching the proposed Interim Order as **Exhibit 1** hereto. Second, the Motion must provide a concise statement of the relief requested, which was done above. Third, the Motion is required to be served on any entity with an interest in the Debtor's cash collateral, any committee appointed or the twenty largest unsecured creditors if there is no committee, and on such other parties as the Court directs. Here, the Debtor has served the Motion and all supportive papers upon the UST, any Trustee appointed in the case, all of the Secured Creditors and their counsel (if known), the Debtor's twenty largest unsecured creditors (as no committee will be appointed in this Subchapter V case), and all parties who have requested special notice via overnight mail. Accordingly, the Motion complies with the procedural requirements of Bankruptcy Rule 4001(b)(1)(A)-(C).

In addition, in compliance with Bankruptcy Rule 4001(b)(1)(B) and Local Bankruptcy Rule 4001-2, the Debtor has filed concurrently herewith the mandatory Court-approved Form F4001-2 (*Statement Regarding Cash Collateral Or Debtor In Possession Financing*), which discloses whether the proposed Interim Order authorizing the Debtor's use of cash collateral on an interim basis, pending a Final Hearing, contains certain provisions. Accordingly, the Motion complies with the procedural requirements of Local Bankruptcy Rule 4001-2.

17

**IV.**

**THE WAIVER OF ANY APPLICABLE STAY IS APPROPRIATE**

For the reasons noted in the Motion, the Debtor will suffer immediate and irreparable harm if the Debtor is not able to pay the expenses set forth in the Budget, pending a Final Hearing on the Motion. Thus, the Debtor requires the terms of the Interim Order to become immediately effective to ensure that the Debtor will be able to use its cash collateral to pay such critical and immediate expenses.    Based on the foregoing, the Debtor requests that any applicable stay be waived to allow the Interim Order to become immediately effective.

**V.**

**CONCLUSION**

**WHEREFORE**, based on the foregoing, the Debtor respectfully requests that this Court:

(1)    grant the relief requested in the Motion on an interim basis;

(2)    enter the proposed form of the Interim Order attached hereto as **Exhibit 1**;

(3)    waive any applicable stay to allow the Interim Order to become immediately effective;

(4)    schedule the Final Hearing on the Motion no later than the twenty-first (21st) day following the entry of the Interim Order to consider entry of a Final Order granting the relief requested in the Motion on a final basis; and

(5)    grant such further relief as the Court deems just and proper.

Dated:  April 5, 2024                    BOISSON INC.

By:____/s/ Ron Bender_____
        RON BENDER
        TODD M. ARNOLD
        YIHAN SHE
    LEVENE, NEALE, BENDER, YOO
        & GOLUBCHIK L.L.P.
    Proposed Attorneys for Debtor and Debtor in Possession

18

## **DECLARATION OF SHEETAL AIYER**

I, Sheetal Aiyer, hereby declare as follows:

1.      I am over 18 years of age.  Except where otherwise stated, I have personal knowledge of the facts set forth below and, if called to testify, would and could competently testify thereto.

2.      I am the CEO and a member of the Board of Directors of Boisson Inc., the Chapter 11 debtor and debtor-in-possession in the above-captioned Chapter 11 bankruptcy case (the "Debtor").

3.      I make this Declaration in support of the Motion to which this Declaration is attached.  Unless otherwise stated, all capitalized terms herein have the meanings ascribed to them in the Motion.

4.      On April 4, 2024 (the "Petition Date"), the Debtor, filed a voluntary petition under Chapter 11 of the Bankruptcy Code.  The Debtor is a "debtor" as defined by Section 1182 of Subchapter V of Chapter 11 of the Bankruptcy Code and elected Subchapter V on its bankruptcy petition.

5.      I am informed that the United States Trustee (the "UST") has not yet appointed a Subchapter V Trustee.

6.      The Debtor continues to manage its financial affairs, operate its business, and administer its bankruptcy estate as a debtor in possession.

7.      In 2021, the Debtor was formed and launched in New York, aiming to create a unique, judgment-free space for consumers to explore an extensive array of non-alcoholic wines, beers, and spirits. With an ambitious expansion strategy, the Debtor opened 11 storefronts in major cities, including New York, Miami, Los Angeles, and San Francisco, amplified its digital presence through a growing e-commerce platform, and also launched a wholesale distribution channel.  The Debtor offers a vast portfolio, boasting over 125 brands of non-alcoholic wines, beers, spirits, aperitifs, and mixers, including brands owned by the Debtor. Additional information regarding the Debtor can be obtained at: https://boisson.co/.

8.    As the preeminent curator and leading go-to-market choice for non-alcoholic brands, the Debtor successfully cultivated a customer base exceeding 200,000, generating $20 million in Gross Merchandise Value (GMV) within just three years, with a repeat customer rate of 40% and an efficient Advertising Cost of Sales (ACOS) of 11%.

9.    As the sector's leading specialty omnichannel retailer, the Debtor excels in utilizing data analytics to tailor its offerings and predict emerging trends, ensuring its offerings remain at the storefront of consumer preferences and industry innovation.

10.    In 2023, the Debtor generated a combined revenue of $10 million from its retail and e-commerce operations, alongside more than $1 million in wholesale revenue and an additional $175,000 from Boisson-owned brands.

11.    Unfortunately, faced with escalating operational costs, particularly from retail operations at its current nine traditional brick and mortar locations, and a competitive landscape that strained its financial reserves, the Debtor became unable to pay its debts as they came due.

12.    In order to address its financial issues, the Debtor has begun to initiate a strategic pivot, whereby it will completely transition away from physical retail operations to focus instead on e-commerce and wholesale distribution channels for greater efficiency and sustainability.

13.    In consideration of the foregoing, and after considering the best interests of its creditors, the Debtor filed for bankruptcy protection on the Petition Date.  The bankruptcy case will afford the Debtor a breathing spell from its creditors as it concentrates its efforts on implementing the strategy outlined above to reorganize its financial affairs.  The contemplated strategic realignments are envisioned to lower overheads, improve margins, and position the Debtor for sustainable operation and future growth in the competitive landscape of non-alcoholic beverages.  I believe that once the Debtor has effectuated its reorganization it will be able to emerge from Chapter 11 as a leaner, focused, profitable business, which will benefit all creditors.

14.    As of the petition date, the Debtor's primary assets were comprised of (a) cash in the approximate amount of $80,000, (b) inventory, which can be sold for no less than $650,000, and (c) approximately $400,000 in accounts receivable, which are expected to be collected in

the ordinary course of business.  In addition, the Debtor owns intellectual property (including branded beverages), rolling stock, and goodwill that have substantial value.

15.    The Debtor is no longer at the premises located at 11762 San Vincente Boulevard, Los Angeles, California 90049.

16.    The Debtor is not seeking at this juncture to sell any property purportedly leased from Farnam or HYG.

17.    To the extent any inventory consigned by Ouiby is still in possession as of the Petition Date, at this juncture, the Debtor will treat the consigned inventory as not constituting property of the estate, and, therefore, the Debtor will pay proceeds to Ouiby net of any amounts owed to the Debtor per the agreements of the parties.

18.    I am informed that, based on a review of the UCC Summary/Financing Statements and the UCC Analysis above, it appears that Connect Ventures is the only creditor with a lien on the Debtor's cash collateral.

24.    As to Connect Ventures, pursuant to a Secured Convertible Promissory Note and Warrant Purchase Agreement, a Security Agreement, and related loan documents dated August 4, 2023 between the Debtor and various lenders (the "Connect Lenders") for which Connect Ventures serves as the collateral agent, the Debtor borrowed $5 million from the Connect Lenders secured by a first priority blanket lien on the Debtor's personal property assets not otherwise subject to a senior lien or lessor lien set forth in the UCC Analysis.  The Debtor currently owes the Connect Lenders $5 million.  Three of the Connect Lenders – Connect Ventures, Convivialité Ventures, and Scorpion Investments II, L.P. – hold seats on the Debtor's five-member Board of Directors; at present, Convivialité Ventures' seat is vacant.

25.    The Debtor has obtained consent from Connect Ventures to the use of cash collateral pursuant to the Budget, with Permitted Variances, as requested herein.  Connect Ventures' consent is set forth in the Consent Email attached hereto as **Exhibit 3**.

26.    Attached as **Exhibit 2** hereto is the Debtor's thirteen (13) week Budget, which sets forth all projected cash receipts and cash disbursements following the petition date.  As the

Budget shows, the use of the Debtor's cash collateral will be sufficient to meet the Debtor's immediate post-petition liquidity needs.

27.    The Debtor must have access and use of its cash to avoid immediate and irreparable harm to its business, enterprise value, and bankruptcy estate and the creditors thereof.  The use of cash collateral is essential to maintain operations, pay critical expenses like payroll, rent, and utilities, as well as to make required ordinary course payments enabling the Debtor to continue operations during its Chapter 11 reorganization to maximize recovery for all creditors, including the Secured Creditors. Without authority to use cash collateral per the Budget, the Debtor would be forced to cease operations, which would severely harm the Debtor's overall enterprise value, as well as the value of its inventory, which the Debtor would likely no longer be able to sell at a profit and would have to sell at liquidation values, all of which would harm the estate and its creditors.  The Budget reflects those expenses that the Debtor **must** pay in order to avoid the foregoing immediate and irreparable harm to its business and to this estate.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge.

Executed on 4th day of April 2024, at Houston, Texas .

_____
SHEETAL AIYER, Declarant

22

**<u>DECLARATION OF YIHAN SHE</u>**

I, Yihan She, hereby declare as follows:

1.    I am over 18 years of age.  Except where otherwise stated, I have personal knowledge of the facts set forth below and, if called to testify, would and could competently testify thereto.

2.    I am an associate of Levene, Neale, Bender, Yoo & Golubchik L.L.P., proposed bankruptcy counsel to Boisson, Inc., the Chapter 11 debtor and debtor in possession in the above-captioned, Chapter 11 bankruptcy case (the "<u>Debtor</u>").

3.    I make this Declaration in support of the Motion to which this Declaration is attached.  Unless otherwise stated, all capitalized terms herein have the meanings ascribed to them in the Motion.

4.    On April 4, 2024 (the "<u>Petition Date</u>"), the Debtor, filed a voluntary petition under Chapter 11 of the Bankruptcy Code.  The Debtor is a "debtor" as defined by Section 1182 of Subchapter V of Chapter 11 of the Bankruptcy Code and elected Subchapter V on its bankruptcy petition.

5.    On or about March 28, 2024, I obtained a certified search of UCC-1 financing statements recorded against the Debtor (the "<u>UCC Summary/Financing Statements</u>") from the Secretary of State of Delaware, where the Debtor was incorporated.  A true and correct copy of the UCC Summary/Financing Statements is attached hereto as **Exhibit 4**.  As can be seen from the UCC Summary/Financing Statements, there are five (5) Financing Statements recorded against the Debtor by (a) 11770 SVB, LLC ("<u>SVB</u>"), (b) Farnam Street Financial, Inc. ("<u>Farnam</u>"), (c) HYG Financial Services, Inc. ("<u>HYG</u>"), (d) Connect Ventures, and (v) Ouiby, Inc ("<u>Ouiby</u>") (collectively, the "<u>Secured Creditors</u>").

6.    A general summary of the Financing Statements recorded against the Debtor, including the names of the creditors, the numbers and dates of the UCC financing statements, and the scope of their purported collateral ("<u>UCC Analysis</u>") is as follows:

| Creditor | Number and Date | Collateral |
|---|---|---|
| SVB | 2022 3717790 (filed 5/3/22) | "All stock in trade and debtor's trader fixtures (which includes trade fixtures which are not attached to or integrated with improvements **to the 'premises'** (as defined below) but shall not include improvements to the premises made by debtor or fixtures, including trade fixtures, attached to or integrated with improvements to the premises), furniture, equipment and other personal property now or hereafter **located in the premises** and all proceeds therefrom. **'Premises' means those certain premises located at 11762 San Vincente Boulevard, Los Angeles, California 90049**, which premises are leased to debtor, as tenant, by secured party, as landlord, pursuant to that certain restaurant lease dated as of May 2, 2022." (emphasis added). |
| Farnam | 2022 8097271 (filed 9/28/22) | Equipment subject to Lease Agreement No. BO092622 between the Debtor and Farnam.

This is a lien to secure a purported lease and does not apply to any cash collateral, as the Debtor is not seeking to sell any equipment subject to the Farnam lease or to use the proceeds therefrom. |
| HYG | 2022 9961590 (filed 12/2/22) | "All of the equipment leased by HYG to the Debtor and all accessions, additions, replacements, and substitutions thereto and therefore, and all proceeds including insurance proceeds thereof."

This is a lien to secure a purported lease and does not apply to any cash collateral, as the Debtor is not seeking to sell any equipment subject to the HYG lease or to use the proceeds therefrom. |
| Connect Ventures | 2023 5382014 (filed 8/4/23) | All personal property assets. |
| Ouiby | 2024 1975810 (filed 3/26/24) | Consignment of specified inventory of non-alcoholic wines, spirits, cocktails and beverages from several brands (Leitz, Pentire, Kolonne Null, Lautus, Misty Cliffs, Thomson & Scott), along with any proceeds from the sale of that inventory. |

7.    The foregoing UCC Analysis is being provided for information purposes only and does not constitute an admission or legal opinion as to the validity, priority, or scope of any liens asserted by any creditor in this case.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge.

Executed on 4th day of April 2024, at Los Angeles, California.

YIHAN SHE, Declarant

25

# EXHIBIT "1"

RON BENDER (SBN 143364)
TODD M. ARNOLD (SBN 221868)
YIHAN SHE (SBN 348334)
LEVENE, NEALE, BENDER, YOO & GOLUBCHIK L.L.P.
2818 La Cienega Avenue
Los Angeles, California 90034
Telephone: (310) 229-1234
Facsimile: (310) 229-1244
Email: RB@LNBYG.COM; TMA@LNBYG.COM; YAS@LNBYG.COM

Proposed Attorneys for Debtor and Debtor in Possession

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

## LOS ANGELES DIVISION

| | |
|---|---|
| In re:<br><br>BOISSON INC.,<br><br>        Debtor and Debtor in Possession. | Case No.: 2:24-bk-12614-NB<br><br>Chapter 11 Case<br>Subchapter V<br><br>**INTERIM ORDER RE: DEBTOR'S EMERGENCY MOTION FOR ENTRY OF AN INTERIM ORDER: (I) AUTHORIZING THE DEBTOR TO USE CASH COLLATERAL; (II) GRANTING ADEQUATE PROTECTION; (III) SCHEDULING A FINAL HEARING; AND (IV) GRANTING RELATED RELIEF**<br><br>Hearing<br>  Date:<br>  Time:<br>  Location:  Courtroom 1545<br>              255 East Temple Street<br>              Los Angeles, California 90012 |

A hearing was held at the above-referenced date, time, and location for the Court to consider the *Debtor's Emergency Motion For Entry Of An Interim Order: (I) Authorizing The Debtor To Use Cash Collateral; (II) Granting Adequate Protection; (III) Scheduling A Final Hearing; And (IV) Granting Related Relief* (the "Motion")[1] [Dkt. __] of Boisson Inc., the Chapter 11 debtor and debtor in possession herein (the "Debtor").

Appearances at the hearing on the Motion were made as set forth on the record of the Court.

The Court, having considered the Motion and all of the pleadings filed by the Debtor in support of the Motion, all oppositions filed to the Motion (if any), the statements, arguments and representations of the parties made at the hearing on the Motion, and good cause appearing,

**HEREBY FINDS AS FOLLOWS:**

A.      This Court has jurisdiction over the Debtor's case, the Motion, and the parties and property affected thereby pursuant to 28 U.S.C. §§ 157(b) and 1334.  Consideration of the Motion constitutes a core proceeding as defined in 28 U.S.C. § 157(b)(2).  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

B.      Notice of the Motion, the relief requested therein, and the Interim Hearing on the Motion, was adequate and in compliance with applicable Federal Rules of Bankruptcy Procedure and Local Bankruptcy Rules, and as directed by the Court.

C.      The Debtor has an immediate need to use cash collateral to pay the expenses set forth in the Budget.  Payment of such expenses is necessary to enable the Debtor to avoid immediate and irreparable harm to the Debtor and its estate.

D.      The Debtor has requested immediate entry of this Interim Order pursuant to Bankruptcy Rule 4001(b)(2).  Absent granting the interim relief set forth in this Interim Order, the Debtor's estate will be immediately and irreparably harmed.

E.      Authorizing the Debtor to use cash collateral to pay the expenses set forth in the Budget is in the best interests of the Debtor's estate.

---

[1] Any capitalized term used herein which is not defined herein but which is defined in the Motion shall be deemed to have the same meaning as ascribed to such term in the Motion.

F.      Good cause has been shown for the entry of this Interim Order.

Based upon the foregoing findings and conclusions, and upon the record made before this Court at the Interim Hearing on the Motion, and good and sufficient cause appearing therefor, **THIS COURT HEREBY ORDERS, DETERMINES, AND DECREES AS FOLLOWS:**

(1)    The Motion is hereby granted in its entirety on the terms and conditions set forth in this Interim Order, with the foregoing findings incorporated herein by reference.  This Interim Order shall be valid and binding on all parties-in-interest and fully effective immediately upon its entry.

(2)    The Debtor is hereby authorized to use of cash collateral, as such term is defined in Section 363(a), in accordance with the Debtor's thirteen (13) week cash flow forecast (the "Budget") attached to the Motion as **Exhibit 2**, with the Debtor entitled to exceed weekly Budget disbursement amounts by 20% on a line-item basis and overall basis (the "Permitted Variances") and any unused Permitted Variances carrying forward to subsequent weeks.

(3)    The Secured Creditors are hereby granted adequate protection, on account of the Debtor's use of cash collateral, in the form of (a) valid, enforceable, non-avoidable and fully perfected replacement liens on, and security interests in, the assets of the Debtor, other than Avoidance Actions under Chapter 5 of the Bankruptcy Code and any recoveries thereon, with the same extent, validity, and priority as their respective pre-petition liens on pre-petition collateral and all post-petition proceeds obtained by the Debtor from such pre-petition collateral (*i.e.*, the Adequate Protection Liens), and (b) super-priority administrative expense claims with priority over any and all administrative expenses and claims asserted against the estate pursuant to Section 507(b) to the extent of any post-petition diminution in value in the Secured Creditors' respective interests in the Debtor's pre-petition collateral (*i.e.*, the "Adequate Protection Administrative Claims").

(4)    All banks holding or in possession of the Debtor's funds shall immediately release such funds to the Debtor to enable the Debtor to transfer and deposit such funds into its

debtor in possession bank accounts irrespective of any pre-petition agreements, including, without limitation, any deposit account control agreements.

(5)    A Final Hearing on the Motion shall be held on _____, 2024 at __:__ __.m. **(Pacific Time)** before this Court.  Any oppositions to the entry of a Final Order granting the Motion on a final basis must be filed with the Clerk of the Court and served on (a) proposed counsel to the Debtor, (b) the Secured Creditors (or their counsel, if known), (c) the Office of the United States Trustee, (d) any Subchapter V Trustee appointed in the case, and (e) any party that has requested special notice (the "Notice Parties") by no later than _____, 2024.  Any reply to any such opposition must be filed with the Clerk of the Court and served on the Notice Parties by no later than _____, 2024.  The Debtors shall provide notice of the Final Hearing and the foregoing deadlines by NEF and/or regular U.S. Mail to all of the Notice Parties by no later than _____, 2024.

**IT IS SO ORDERED.**

###

EXHIBIT "2"

| Week of | 4/8/2024 | 4/15/2024 | 4/22/2024 | 4/29/2024 | 5/6/2024 | 5/13/2024 | 5/20/2024 | 5/27/2024 | 6/3/2024 | 6/10/2024 | 6/17/2024 | 6/24/2024 | 7/1/2024 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Week of Plan | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 |
| WEEKNUM | 15 | 16 | 17 | 18 | 19 | 20 | 21 | 22 | 23 | 24 | 25 | 26 | 27 |
| Start | $ 37,633 | $ 56,630 | $ 83,386 | $ 90,597 | $ 33,108 | $ 26,142 | $ 48,672 | $ 63,202 | $ 85,732 | $ 40,521 | $ 64,658 | $ 97,147 | $ 121,635 |
| **Ins** | | | | | | | | | | | | | |
| Cash From Sales | $ 18,000 | $ 18,000 | $ 18,000 | $ 18,000 | $ 20,500 | $ 20,500 | $ 20,500 | $ 20,500 | $ 25,750 | $ 25,750 | $ 25,750 | $ 25,750 | 25,750 |
| AR | $ 35,000 | $ 35,000 | $ 35,000 | $ 35,000 | $ 40,000 | $ 40,000 | $ 40,000 | $ 40,000 | $ 45,000 | $ 45,000 | $ 45,000 | $ 45,000 | 45,000 |
| Other Inflows | $ 1,620 | $ 1,620 | $ 1,620 | $ 1,620 | $ 1,845 | $ 1,845 | $ 1,845 | $ 1,845 | $ 2,318 | $ 2,318 | $ 2,318 | $ 2,318 | 2,318 |
| Total Inflows | $ 54,620 | $ 54,620 | $ 54,620 | $ 54,620 | $ 62,345 | $ 62,345 | $ 62,345 | $ 62,345 | $ 73,068 | $ 73,068 | $ 73,068 | $ 73,068 | 73,068 |
| **Outs** | | | | | | | | | | | | | |
| Rent | $ - | $ - | $ - | $ 48,000 | $ - | $ - | $ - | $ - | $ 48,000 | $ - | $ - | $ - | 48,000 |
| Utilities Deposit | $ 7,000 | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | - |
| Contractors | $ 17,260 | $ 16,500 | $ 16,500 | $ 16,500 | $ 16,500 | $ 16,500 | $ 16,500 | $ 16,500 | $ 16,500 | $ 16,500 | $ 16,500 | $ 16,500 | 16,500 |
| Inventory | $ - | $ - | $ 20,000 | $ 20,000 | $ 20,000 | $ 20,000 | $ 20,000 | $ 20,000 | $ 20,000 | $ 20,000 | $ 20,000 | $ 20,000 | 20,000 |
| Shipping & Materials | $ 2,909 | $ 2,909 | $ 2,909 | $ 2,909 | $ 3,315 | $ 3,315 | $ 3,315 | $ 3,315 | $ 4,079 | $ 4,079 | $ 4,079 | $ 4,079 | 4,079 |
| Trade | $ - | $ - | $ - | $ 8,000 | $ 24,700 | $ 5,000 | $ - | $ 8,000 | $ - | $ 29,700 | $ - | $ 8,000 | 19,700 |
| AMEX | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | - |
| Other Outflows | $ 8,455 | $ 8,455 | $ - | $ - | $ 24,496 | $ - | $ - | $ - | $ - | $ 8,352 | $ - | $ - | 9,270 |
| Total Outflows | $ 35,624 | $ 27,864 | $ 47,409 | $ 112,109 | $ 69,311 | $ 39,815 | $ 47,815 | $ 39,815 | $ 118,279 | $ 48,931 | $ 40,579 | $ 48,579 | 117,549 |
| End | $ 56,630 | $ 83,386 | $ 90,597 | $ 33,108 | $ 26,142 | $ 48,672 | $ 63,202 | $ 85,732 | $ 40,521 | $ 64,658 | $ 97,147 | $ 121,635 | 77,154 |
| **Inventory Balance** | | | | | | | | | | | | | |
| Start | $ 651,722 | $ 641,222 | $ 630,422 | $ 619,622 | $ 628,822 | $ 638,022 | $ 662,222 | $ 669,922 | $ 677,622 | $ 685,322 | $ 689,872 | $ 694,422 | 698,972 |
| Change | $ (10,500) | $ (10,800) | $ (10,800) | $ 9,200 | $ 9,200 | $ 24,200 | $ 7,700 | $ 7,700 | $ 7,700 | $ 4,550 | $ 4,550 | $ 4,550 | 4,550 |
| End | $ 641,222 | $ 630,422 | $ 619,622 | $ 628,822 | $ 638,022 | $ 662,222 | $ 669,922 | $ 677,622 | $ 685,322 | $ 689,872 | $ 694,422 | $ 698,972 | 703,522 |
| **Accounts Receivable** | | | | | | | | | | | | | |
| Start | $ 418,648 | $ 423,648 | $ 428,648 | $ 433,648 | $ 438,648 | $ 443,648 | $ 448,648 | $ 453,648 | $ 458,648 | $ 468,648 | $ 478,648 | $ 488,648 | 498,648 |
| Change | $ 5,000 | $ 5,000 | $ 5,000 | $ 5,000 | $ 5,000 | $ 5,000 | $ 5,000 | $ 5,000 | $ 10,000 | $ 10,000 | $ 10,000 | $ 10,000 | 10,000 |
| End | $ 423,648 | $ 428,648 | $ 433,648 | $ 438,648 | $ 443,648 | $ 448,648 | $ 453,648 | $ 458,648 | $ 468,648 | $ 478,648 | $ 488,648 | $ 498,648 | 508,648 |
| Total Asset Value | $ 1,121,500 | $ 1,142,456 | $ 1,143,868 | $ 1,100,579 | $ 1,107,813 | $ 1,159,543 | $ 1,186,773 | $ 1,222,003 | $ 1,194,492 | $ 1,233,178 | $ 1,280,217 | $ 1,319,256 | $ 1,289,325 |

EXHIBIT 2 (Budget)

EXHIBIT "3"

**Todd M. Arnold**

---

**Subject:**                              FW: Cash collateral budget

---------- Forwarded message ---------
From: **Michael Blank** <michael.blank@caa.com>
Date: Thu, Apr 4, 2024 at 2:13 PM
Subject: Re: Cash collateral budget
To: Sheetal Aiyer <sheetal@boisson.nyc>, Stephanie Brecher <sbrecher@nea.com>

Hi Sheetal –

Thank you for sharing. Connect consents.

Please let us know if there's anything else you need from us.

Best,

Mike

---

**From:** Sheetal Aiyer <sheetal@boisson.nyc>
**Date:** Thursday, April 4, 2024 at 9:27 AM
**To:** Michael Blank <michael.blank@caa.com>, Stephanie Brecher <sbrecher@nea.com>
**Subject:** Cash collateral budget

*External Sender*

Mike

I'm writing to follow up on our conversation yesterday.  As you know, Boisson will be filing a bankruptcy case today.  We will be filing a motion to use cash collateral pursuant to the attached Budget, with Boisson entitled to exceed weekly Budget disbursement amounts by 20% on a line-item basis and overall basis (the "Permitted Variances") and any unused Permitted Variances carrying forward to subsequent weeks.  Can you please advise if Connect consents to the foregoing use of cash collateral?

Please respond as quickly as you can so we can get the filing completed today.


Thanks


--



**Sheetal Aiyer**

**CEO,**
**Boisson**

 Boisson

✉ sheetal@boisson.nyc

📍 177 Court Street, Brooklyn, NY 11201

 

This e-mail and any files transmitted with it are intended solely for the use of the individual or entity to whom they are addressed. If the reader of this e-mail is not the intended recipient or the employee or agent responsible for delivering the message to the intended recipient, you are hereby notified that any use dissemination, forwarding, printing or copying of this e-mail is strictly prohibited. CAA is committed to ensuring that clients are free to do their best work without experiencing harassment and want to ensure they have the relevant resources they need. Clients can go to https://www.caa.com/legal/harassment-guidelines-caa-clients to learn more about their rights, and how to report violations.

In performing services for you, we regularly receive, process and maintain certain personal information about you. For information about how Creative Artists Agency, LLC and its subsidiaries process such personal data, please see our Privacy Notice https://www.caa.com/legal/client-privacy-notice.

--



# Sheetal Aiyer

**CEO,**
**Boisson**

🌐 Boisson

✉ sheetal@boisson.nyc

📍 177 Court Street, Brooklyn, NY 11201

 

EXHIBIT "4"



# Delaware

*Page 1*

### The First State

CERTIFICATE

SEARCHED MARCH 28, 2024 AT 6:26 P.M.
FOR DEBTOR, BOISSON, INC.

| 1 OF 5 | FINANCING STATEMENT | 20223717790 |

EXPIRATION DATE: 05/03/2027

DEBTOR:        BOISSON, INC.

11762 SAN VINCENTE BOULEVARD       ADDED    05-03-22

LOS ANGELES, CA US 90049

SECURED:      11770 SVB, LLC

11777 SAN VINCENTE BOULEVARD,       ADDED    05-03-22

SUITE 550

LOS ANGELES, CA US 90049


### F I L I N G   H I S T O R Y

20223717790    FILED 05-03-22    AT 11:27 A.M.   FINANCING STATEMENT


| 2 OF 5 | LEASE | 20228097271 |

EXPIRATION DATE: 09/28/2027

DEBTOR:        BOISSON INC.

177 COURT ST                ADDED    09-28-22



Jeffrey W. Bullock, Secretary of State



# Delaware

*Page 2*

### The First State

BROOKLYN, NY US 11201

SECURED:    FARNAM STREET FINANCIAL, INC.

5850 OPUS PARKWAY                    ADDED    09-28-22

SUITE 240

MINNETONKA, MN US 55343


### F I L I N G   H I S T O R Y

20228097271    FILED 09-28-22    AT 11:11 A.M.    LEASE


3 OF 5            FINANCING STATEMENT            20229961590

EXPIRATION DATE: 12/02/2027

DEBTOR:    BOISSON INC.

177 COURT ST                    ADDED    12-02-22

BROOKLYN, NY US 11201

SECURED:    HYG FINANCIAL SERVICES, INC.

PO BOX 35701                    ADDED    12-02-22

BILLINGS, MT US 59107


### F I L I N G   H I S T O R Y



Jeffrey W. Bullock, Secretary of State

20256327657-UCC11
SR# 20241217742

Authentication: 203140122
Date: 03-28-24

You may verify this certificate online at corp.delaware.gov/authver.shtml

# Delaware

*Page 3*

## The First State

*20229961590     FILED 12-02-22     AT 11:14 A.M.    FINANCING STATEMENT*

     *4 OF 5          FINANCING STATEMENT                20235382014*

        *EXPIRATION DATE: 08/04/2028*
*DEBTOR:     BOISSON INC.*

    *177 COURT STREET                    ADDED    08-04-23*

    *BROOKLYN, NY US 11201*

*SECURED:    CONNECT VENTURES I, L.P., AS COLLATERAL AGENT*

    *1954 GREENSPRING DRIVE, SUITE 600    ADDED    08-04-23*

    *TIMONIUM, MD US 21093*

### F I L I N G   H I S T O R Y

*20235382014    FILED 08-04-23    AT 6:41 P.M.    FINANCING STATEMENT*

     *5 OF 5          FINANCING STATEMENT                20241975810*

        *EXPIRATION DATE: 03/26/2029*
*DEBTOR:     BOISSON INC.*

    *251 LITTLE FALLS DRIVE              ADDED    03-26-24*

    *WILMINGTON, DE US 19808*



Jeffrey W. Bullock, Secretary of State

# Delaware

*Page 4*

## The First State

SECURED:      OUIBY, INC.

             PO BOX 21584                    ADDED    03-26-24

             BOULDER, CO US 80308


### F I L I N G   H I S T O R Y

20241975810     FILED 03-26-24    AT 7:31 A.M.    FINANCING STATEMENT


### E N D   O F   F I L I N G   H I S T O R Y

THE UNDERSIGNED FILING OFFICER HEREBY CERTIFIES THAT THE ABOVE
LISTING IS A RECORD OF ALL PRESENTLY EFFECTIVE FINANCING STATEMENTS,
LAPSED FINANCING STATEMENTS, FEDERAL TAX LIENS AND UTILITY SECURITY
INSTRUMENTS FILED IN THIS OFFICE WHICH NAME THE ABOVE DEBTOR, BOISSON,
INC. AS OF MARCH 18, 2024 AT 11:59 P.M.



Jeffrey W. Bullock, Secretary of State

## UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS

| | |
|---|---|
| **A. NAME & PHONE OF CONTACT AT FILER** (optional)<br>RENEE LUKE (845) 425-0077 | |
| **B. E-MAIL CONTACT AT FILER** (optional)<br>SEARCHES@VCORPSERVICES.COM | |
| **C. SEND ACKNOWLEDGMENT TO:**  (Name and Address)<br><br>VCORP SERVICES, LLC<br>25 ROBERT PITT DRIVE, SUITE 204<br>MONSEY, NY 10952<br>US | |

Delaware Department of State
U.C.C. Filing Section
Filed: 11:27 AM 05/03/2022
U.C.C. Initial Filing No: 2022 3717790

Service Request No:   20221743801

**THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY**

**1. DEBTOR'S NAME:** Provide only one Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| | | | | | |
|---|---|---|---|---|---|
| **1a. ORGANIZATION'S NAME**<br>BOISSON, INC. | | | | | |
| **1b. INDIVIDUAL'S SURNAME** | FIRST PERSONAL NAME | | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| **1c. MAILING ADDRESS**<br>11762 SAN VINCENTE BOULEVARD | CITY<br>LOS ANGELES | STATE<br>CA | POSTAL CODE<br>90049 | | COUNTRY<br>US |

**2. DEBTOR'S NAME:** Provide only one Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| | | | | | |
|---|---|---|---|---|---|
| **2a. ORGANIZATION'S NAME** | | | | | |
| **2b. INDIVIDUAL'S SURNAME** | FIRST PERSONAL NAME | | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| **2c. MAILING ADDRESS** | CITY | STATE | POSTAL CODE | | COUNTRY |

**3. SECURED PARTY'S NAME** (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY): Provide only one Secured Party name (3a or 3b)

| | | | | | |
|---|---|---|---|---|---|
| **3a. ORGANIZATION'S NAME**<br>11770 SVB, LLC | | | | | |
| **3b. INDIVIDUAL'S SURNAME** | FIRST PERSONAL NAME | | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| **3c. MAILING ADDRESS**<br>11777 SAN VINCENTE BOULEVARD,, SUITE 550 | CITY<br>LOS ANGELES | STATE<br>CA | POSTAL CODE<br>90049 | | COUNTRY<br>US |

**4. COLLATERAL:** This financing statement covers the following collateral:
ALL STOCK IN TRADE AND DEBTOR'S TRADE FIXTURES (WHICH INCLUDES TRADE FIXTURES WHICH ARE  NOT ATTACHED TO OR INTEGRATED WITH IMPROVEMENTS TO THE "PREMISES" (AS DEFINED BELOW)  BUT SHALL NOT INCLUDE IMPROVEMENTS TO THE PREMISES MADE BY DEBTOR OR FIXTURES,  INCLUDING TRADE FIXTURES, ATTACHED TO OR INTEGRATED WITH IMPROVEMENTS TO THE PREMISES),  FURNITURE, EQUIPMENT AND OTHER PERSONAL PROPERTY NOW OR HEREAFTER LOCATED IN THE PREMISES AND ALL PROCEEDS THEREFROM. "PREMISES" MEANS THOSE CERTAIN PREMISES LOCATED AT 11762 SAN VINCENTE BOULEVARD, LOS ANGELES, CALIFORNIA 90049, WHICH PREMISES ARE LEASED TO DEBTOR, AS TENANT, BY SECURED PARTY, AS LANDLORD, PURSUANT TO THAT CERTAIN RESTAURANT LEASE DATED AS OF MAY 2, 2022.

**5.** Check only if applicable and check only one box: Collateral is ☐ held in a Trust (see UCC1Ad, item 17 and Instructions) ☐ being administered by a Decedent's Personal Representative

**6a.** Check only if applicable and check only one box:  ☐ Public-Finance Transaction  ☐ Manufactured-Home Transaction  ☐ A Debtor is a Transmitting Utility
**6b.** Check only if applicable and check only one box:  ☐ Agricultural Lien  ☐ Non-UCC Filing

**7. ALTERNATIVE DESIGNATION** (if applicable):  ☐ Lessee/Lessor  ☐ Consignee/Consignor  ☐ Seller/Buyer  ☐ Bailee/Bailor  ☐ Licensee/Licensor

**8. OPTIONAL FILER REFERENCE DATA:**

International Association of Commercial Administrators

**FILING OFFICE COPY** — UCC FINANCING STATEMENT (Form UCC1) (Rev. 04/20/11)

# UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS

| A. NAME & PHONE OF CONTACT AT FILER (optional) |
|---|
| STEVE MORGAN  (952) 908-0850 |

**B. E-MAIL CONTACT AT FILER** (optional)
RJENSEN@FARNAMSTREET.NET

**C. SEND ACKNOWLEDGMENT TO:** (Name and Address)

FARNAM STREET FINANCIAL, INC.

5850 OPUS PARKWAY

SUITE 240

MINNETONKA, MN 55343

**Delaware Department of State**
**U.C.C. Filing Section**
**Filed: 11:11 AM 09/28/2022**
**U.C.C. Initial Filing No: 2022 8097271**

**Service Request No:  20223638970**

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. **DEBTOR'S NAME:** Provide only one Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| | 1a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|---|
| OR | BOISSON INC. | | | | |
| | 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 177 COURT ST | BROOKLYN | NY | 11201 | US |

2. **DEBTOR'S NAME:** Provide only one Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| | 2a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|---|
| OR | | | | | |
| | 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |

3. **SECURED PARTY'S NAME** (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY): Provide only one Secured Party name (3a or 3b)

| | 3a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|---|
| OR | FARNAM STREET FINANCIAL, INC. | | | | |
| | 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 5850 OPUS PARKWAY, SUITE 240 | MINNETONKA | MN | 55343 | US |

4. **COLLATERAL:** This financing statement covers the following collateral:
See Attached Addendum No. 1  Lease Agreement No. BO092622
Collateral Description - please see attached

5. Check only if applicable and check only one box: Collateral is ☐ held in a Trust (see UCC1Ad, item 17 and Instructions) ☐ being administered by a Decedent's Personal Representative

| 6a. Check only if applicable and check only one box: | 6b. Check only if applicable and check only one box: |
|---|---|
| ☐ Public-Finance Transaction  ☐ Manufactured-Home Transaction  ☐ A Debtor is a Transmitting Utility | ☐ Agricultural Lien  ☐ Non-UCC Filing |

7. ALTERNATIVE DESIGNATION (if applicable): ☑ Lessee/Lessor ☐ Consignee/Consignor ☐ Seller/Buyer ☐ Bailee/Bailor ☐ Licensee/Licensor

8. OPTIONAL FILER REFERENCE DATA:
BO092622

FILING OFFICE COPY — UCC FINANCING STATEMENT (Form UCC1) (Rev. 04/20/11)

International Association of Commercial Administrators

**ADDENDUM NO. 1**

This transaction is a true lease and is not intended by the parties as a secured transaction. Filing is only intended to make the true lease a matter of public record. Farnam Street Financial, Inc. is the owner of all the equipment contained on this filing and any and all other equipment now or hereafter the subject of any lease agreement or lease schedule by and between the parties and all accessories, attachments, additions, and any substitutions and/or replacement of the equipment contained on this filing or any lease agreement or lease schedule between the parties. The lessee has no rights, express or implied, to sell, exchange, encumber, or otherwise dispose of any equipment contained on this filing or any lease agreement or lease schedule by and between the parties. The parties agree that this financing statement covers any and all equipment now or hereafter the subject of any lease agreement or lease schedule by and between the parties, including, but not limited to equipment contained on or subject to Lease Agreement Number BO092622 or any lease schedule executed pursuant thereto, together with all substitutions, replacements, accessions, process, rent, revenue, insurance, and proceeds related to the equipment contained on this filing or any lease agreement or lease schedule by and between the parties.

**Every Term is Agreed to and Accepted:**
**FARNAM STREET FINANCIAL, INC.**
**"LESSOR"**

By: _Steven Morgan_

Print Name: Steve Morgan

Title: President

Date: Sep 27, 2022

**Every Term is Agreed to and Accepted:**
**BOISSON INC.**
**"LESSEE"**

By: _Alexander Hudson_
Alexander Hudson (Sep 27, 2022 13:46 EDT)

Print Name: Alexander Hudson

Title: Chief Operating Officer

Date: Sep 27, 2022

# BO092622 Lease Documents

Final Audit Report                                                                                    2022-09-27

| | |
|---|---|
| Created: | 2022-09-26 |
| By: | Martha Hartfiel (mhartfiel@farnamstreet.net) |
| Status: | Signed |
| Transaction ID: | CBJCHBCAABAAC1mZUgceCeOKFeBqoRwBY5Xz2ypV0zcM |

## "BO092622 Lease Documents" History

Document created by Martha Hartfiel (mhartfiel@farnamstreet.net)
2022-09-26 - 7:05:50 PM GMT- IP address: 65.141.55.34

Document emailed to alex@boisson.nyc for signature
2022-09-26 - 7:11:45 PM GMT

Email viewed by alex@boisson.nyc
2022-09-27 - 3:51:30 PM GMT- IP address: 71.167.92.127

Signer alex@boisson.nyc entered name at signing as Alexander Hudson
2022-09-27 - 5:46:39 PM GMT- IP address: 71.167.92.127

Document e-signed by Alexander Hudson (alex@boisson.nyc)
Signature Date: 2022-09-27 - 5:46:41 PM GMT - Time Source: server- IP address: 71.167.92.127

Document emailed to Steve Morgan (smorgan@farnamstreet.net) for signature
2022-09-27 - 5:46:43 PM GMT

Email viewed by Steve Morgan (smorgan@farnamstreet.net)
2022-09-27 - 7:38:22 PM GMT- IP address: 65.141.55.34

Document e-signed by Steve Morgan (smorgan@farnamstreet.net)
Signature Date: 2022-09-27 - 7:38:55 PM GMT - Time Source: server- IP address: 65.141.55.34

Agreement completed.
2022-09-27 - 7:38:55 PM GMT

Adobe Acrobat Sign

## UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS

| A. NAME & PHONE OF CONTACT AT FILER (optional) |
|---|
| CSC 800-858-5294 |

| B. E-MAIL CONTACT AT FILER (optional) |
|---|
| FILINGDEPT@CSCINFO.COM |

C. SEND ACKNOWLEDGMENT TO:   (Name and Address)

801 ADLAI STEVENSON DR [244945189]

SPRINGFIELD, IL 62703

US

**Delaware Department of State**
**U.C.C. Filing Section**
**Filed: 11:14 AM 12/02/2022**
**U.C.C. Initial Filing No: 2022 9961590**

Service Request No:   20224157958

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. **DEBTOR'S NAME:**  Provide only one Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 1a. ORGANIZATION'S NAME | | | | | |
|---|---|---|---|---|---|
| BOISSON INC. | | | | | |
| 1b. INDIVIDUAL'S SURNAME | | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| 1c. MAILING ADDRESS | | CITY | STATE | POSTAL CODE | COUNTRY |
| 177 COURT ST | | BROOKLYN | NY | 11201 | US |

2. **DEBTOR'S NAME:**  Provide only one Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 2a. ORGANIZATION'S NAME | | | | | |
|---|---|---|---|---|---|
| 2b. INDIVIDUAL'S SURNAME | | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| 2c. MAILING ADDRESS | | CITY | STATE | POSTAL CODE | COUNTRY |

3. **SECURED PARTY'S NAME** (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY):  Provide only one Secured Party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | | | |
|---|---|---|---|---|---|
| EYG FINANCIAL SERVICES, INC. | | | | | |
| 3b. INDIVIDUAL'S SURNAME | | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| 3c. MAILING ADDRESS | | CITY | STATE | POSTAL CODE | COUNTRY |
| PO BOX 35701 | | BILLINGS | MT | 59107 | US |

4. **COLLATERAL:**  This financing statement covers the following collateral:
**All of the equipment now or hereafter leased by Lessor to Lessee; and all accessions, additions, replacements, and  substitutions thereto and therefore, and all proceeds including insurance proceeds thereof.**

5. Check only if applicable and check only one box: Collateral is ☐ held in a Trust (see UCC1Ad, item 17 and Instructions)  ☐ being administered by a Decedent's Personal Representative

6a. Check only if applicable and check only one box:
☐ Public-Finance Transaction  ☐ Manufactured-Home Transaction  ☐ A Debtor is a Transmitting Utility

6b. Check only if applicable and check only one box:
☐ Agricultural Lien  ☐ Non-UCC Filing

7. ALTERNATIVE DESIGNATION (if applicable): ☑ Lessee/Lessor  ☐ Consignee/Consignor  ☐ Seller/Buyer  ☐ Bailee/Bailor  ☐ Licensee/Licensor

8. OPTIONAL FILER REFERENCE DATA:
400-0006602-000

FILING OFFICE COPY — UCC FINANCING STATEMENT (Form UCC1) (Rev. 04/20/11)

International Association of Commercial Administrators

# UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS

| A. NAME & PHONE OF CONTACT AT FILER (optional) |
|---|
| WK LIEN SOLUTIONS 800-331-3282 |

| B. E-MAIL CONTACT AT FILER (optional) |
|---|
| UCCFILINGRETURN@WOLTERSKLUWER.COM |

C. SEND ACKNOWLEDGMENT TO:  (Name and Address)

P.O. BOX 29071

GLENDALE, CA 91209-9071

US

**Delaware Department of State**
**U.C.C. Filing Section**
**Filed: 06:41 PM 08/04/2023**
**U.C.C. Initial Filing No: 2023 5382014**

**Service Request No:  20233174381**

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. **DEBTOR'S NAME:**  Provide only one Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 1a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| BOISSON INC. | | | | |
| 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 177 COURT STREET | BROOKLYN | NY | 11201 | US |

2. **DEBTOR'S NAME:**  Provide only one Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 2a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |

3. **SECURED PARTY'S NAME** (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY):  Provide only one Secured Party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| CONNECT VENTURES I, L.P., AS COLLATERAL AGENT | | | | |
| 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 1954 GREENSPRING DRIVE, SUITE 600 | TIMONIUM | MD | 21093 | US |

4. COLLATERAL:  This financing statement covers the following collateral:
**Collateral Description - please see attached**

5. Check only if applicable and check only one box: Collateral is ☐ held in a Trust (see UCC1Ad, item 17 and Instructions) ☐ being administered by a Decedent's Personal Representative

6a. Check only if applicable and check only one box:
☐ Public-Finance Transaction ☐ Manufactured-Home Transaction ☐ A Debtor is a Transmitting Utility

6b. Check only if applicable and check only one box:
☐ Agricultural Lien ☐ Non-UCC Filing

7. ALTERNATIVE DESIGNATION (if applicable): ☐ Lessee/Lessor ☐ Consignee/Consignor ☐ Seller/Buyer ☐ Bailee/Bailor ☐ Licensee/Licensor

8. OPTIONAL FILER REFERENCE DATA:
DE-0-94381293-67190887

FILING OFFICE COPY — UCC FINANCING STATEMENT (Form UCC1) (Rev. 04/20/11)    International Association of Commercial Administrators

**See Exhibit A attached hereto and by this reference incorporated herein for a description of the Collateral.**

## EXHIBIT A TO UCC-1 FINANCING STATEMENT

**DEBTOR:**          BOISSON INC.

**SECURED PARTY:**          CONNECT VENTURES I, L.P., AS COLLATERAL AGENT

All of the Debtor's right, title and interest in and to the following personal property (the "Collateral"):

All Goods, Accounts, Equipment, Inventory, contract rights or rights to payment of money, leases, license agreements, franchise agreements, General Intangibles (including intellectual property), commercial tort claims, Documents, Instruments, Chattel Paper (whether tangible or electronic), cash, Deposit Accounts, certificates of deposit, fixtures, Letter-of-Credit Rights, Securities, Securities Accounts, Securities Entitlements and all other Investment Property, Supporting Obligations and Financial Assets, whether now owned or hereafter acquired, wherever located, and all of the Debtor's books and records relating to the foregoing, and any and all rights, rights and interests in any of the above and all substitutions for, additions, attachments, accessories, accessions and improvements to and replacements, products, proceeds and insurance proceeds of any or all of the foregoing.

Notwithstanding the foregoing, the Collateral does not include (a) any interest of the Debtor as a lessee or sublessee under a real property lease; (b) any rights or interest in any contract, lease, permit, license, or license agreement covering real or personal property, or in any equipment or property subject to a purchase money security interest, capitalized lease obligation or similar arrangement, if under the terms of such contract, lease, permit, license, or license agreement or purchase money arrangement, capitalized lease obligation or similar arrangement, or applicable law with respect thereto, the grant of a security interest or lien therein is prohibited or restricted as a matter of law or under the terms of such contract, lease, permit, license, or license agreement, or would invalidate any such contract, lease, permit, license or license agreement, and such prohibition or restriction has not been waived or the consent of the other party to such contract, lease, permit, license, or license agreement has not been obtained; and (c) any United States intent-to-use trademark or service mark applications to the extent that, and solely during the period in which, the grant of a security interest therein would impair the validity or enforceability of a registration issuing from such intent-to-use trademark or service mark applications under applicable federal law.

Terms in this Exhibit not otherwise defined shall have the meanings set forth in the Uniform Commercial Code as the same is, from time to time, in effect in the State of Delaware (the "UCC"; provided, however, that, in the event that, by reason of mandatory provisions of any applicable law, any of the attachment, perfection, or priority of the Collateral Agent's security interest in any Collateral is governed by the Uniform Commercial Code of a jurisdiction other than the State of Delaware, "UCC" shall mean the Uniform Commercial Code as in effect in such other jurisdiction for purpose of the provisions hereof relating to such attachment, perfection, or priority and for purpose of the definitions related to or otherwise used in such provisions).

## UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS

| | |
|---|---|
| **A. NAME & PHONE OF CONTACT AT FILER (optional)**<br>ONLINE DEPT. 888-507-4593 | |
| **B. E-MAIL CONTACT AT FILER (optional)**<br>ONLINE@FICOSO.COM | **Delaware Department of State**<br>**U.C.C. Filing Section**<br>**Filed: 07:31 AM 03/26/2024**<br>**U.C.C. Initial Filing No: 2024 1975810** |
| **C. SEND ACKNOWLEDGMENT TO:  (Name and Address)** | **Service Request No:  20241162692** |

**THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY**

**1. DEBTOR'S NAME:** Provide only one Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 1a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| BOISSON INC. | | | | |
| 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 251 LITTLE FALLS DRIVE | WILMINGTON | DE | 19808 | US |

**2. DEBTOR'S NAME:** Provide only one Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 2a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |

**3. SECURED PARTY'S NAME** (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY): Provide only one Secured Party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| OUIBY, INC. | | | | |
| 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| PO BOX 21584 | BOULDER | CO | 80308 | US |

**4. COLLATERAL:** This financing statement covers the following collateral:

**This filing shall cover the following consignment inventory and proceeds from the same    Leitz - Eins Zwei Zero Sparkling Non-Alcoholic Riesling Can (12 oz.) 2,907 Units  Pentire - Pentire Adrift & Tonic - Non-Alcoholic Can (12 oz.) 612 Units  Pentire - Pentire Margarita - Pre-Mixed Non-Alcoholic Cocktail (200 ml) 459 Units  Pentire Seaward & Tonic Non-Alcoholic Can (12 oz.) 459 Units  Leitz - Eins Zwei Zero - Non-Alcoholic Sparkling Rose Can (250ml) 3,672 Units  Kolonne Null - Cuve Blanc Sparkling 375ml- Non-Alcoholic Wine 1,377 Units  Kolonne Null - Riesling White Wine 2022 750ml- Non-Alcoholic Wine 918 Units  Leitz Non-Alcoholic Eins Zwei Chardonnay (750ml | 25.4oz)AND Leitz - Eins Zwei Zero Riesling Non-Alcoholic White Wine (750 ml/25.4oz) 5,661 Units  Leitz X Boisson Blanc Non-Alcoholic Wine (750ml | 25.4oz) 1,989 Units  Leitz - Eins Zwei Zero Non-Alcoholic Sparkling Blanc De Blancs Wine (750ml | 25.4oz) 765 Units  Kolonne Null Cuve Rouge No. 02 Non-Alcoholic Red Wine (750ml | 25.4oz) 918 Units  Pentire - Pentire Margarita - Pre-Mixed Non-Alcoholic Cocktail (200ml) AND Pentire - Adrift - Non-Alcoholic Distilled Spirit 200ml 765 Units  Kolonne Null Cuve Rouge N03 Edition Le Grand Verdus Non-Alcoholic Wine (750ml | 25.4oz) AND Kolonne Null - Cuve Blanc Sparkling 750ml- Non-Alcoholic Wine 2,601 Units  Leitz NV Zero Point Five Non-Alcoholic Pinot Noir (750ml | 25.4oz) AND Kolonne Null - Ros Sparkling 2021 750ml- Non-Alcoholic Wine 6,426 Units  Leitz - Eins Zwei Zero Sparkling Riesling**

**5.** Check only if applicable and check only one box: Collateral is ☐ held in a Trust (see UCC1Ad, item 17 and Instructions) ☐ being administered by a Decedent's Personal Representative

**6a.** Check only if applicable and check only one box:  ☐ Public-Finance Transaction  ☐ Manufactured-Home Transaction  ☐ A Debtor is a Transmitting Utility  **6b.** Check only if applicable and check only one box:  ☐ Agricultural Lien  ☐ Non-UCC Filing

**7. ALTERNATIVE DESIGNATION (if applicable):** ☐ Lessee/Lessor  ☑ Consignee/Consignor  ☐ Seller/Buyer  ☐ Bailee/Bailor  ☐ Licensee/Licensor

**8. OPTIONAL FILER REFERENCE DATA:**
[UCC1-1342629] UCC1 - 5965

**FILING OFFICE COPY — UCC FINANCING STATEMENT (Form UCC1) (Rev. 04/20/11)**       International Association of Commercial Administrators

# UCC FINANCING STATEMENT **ADDENDUM**

FOLLOW INSTRUCTIONS

**9. NAME OF FIRST DEBTOR:** Same as line 1a or 1b on Financing Statement; if line 1b was left blank
because Individual Debtor name did not fit, check here ☐

| 9a. ORGANIZATION'S NAME |
|---|
| |

OR

| 9b. INDIVIDUAL'S SURNAME |
|---|
| |
| FIRST PERSONAL NAME |
| ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |

**THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY**

**10. DEBTOR'S NAME:** Provide (10a or 10b) only <u>one</u> additional Debtor name or Debtor name that did not fit in line 1b or 2b of the Financing Statement (Form UCC1) (use exact, full name;
do not omit, modify, or abbreviate any part of the Debtor's name) and enter the mailing address in line 10c

| 10a. ORGANIZATION'S NAME |
|---|
| |

OR

| 10b. INDIVIDUAL'S SURNAME | | | |
|---|---|---|---|
| INDIVIDUAL'S FIRST PERSONAL NAME | | | |
| INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S) | | | SUFFIX |

| 10c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | | | | |

**11.** ☐ **ADDITIONAL SECURED PARTY'S NAME** or ☐ **ASSIGNOR SECURED PARTY'S NAME:** Provide only <u>one</u> name (11a or 11b)

| 11a. ORGANIZATION'S NAME |
|---|
| |

OR

| 11b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| | | | |

| 11c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | | | | |

**12. ADDITIONAL SPACE FOR ITEM 4 (Collateral)**
Non-Alcoholic White Wine( 750ml | 25.4oz) AND Leitz - Eins Zwei Zero Sparkling Rose Non-Alcoholic
Wine (750ml | 25.4oz) 3,519 Units  Lautus Savvy Red - Non-Alcoholic Wine (750ml | 25.4oz) 1,989 Units
Lautus Sauvignon Blanc - Non-Alcoholic Wine (750ml | 25.4oz) 1,530 Units  Misty Cliffs Non-Alcoholic
Sauvignon Blanc (750 ml/25.4 oz.) AND Lautus - Lautus Chardonnay - Non-Alcoholic Wine (750 ml) AND
Misty Cliffs Non-Alcoholic Rose (750 ml/25.4 oz) 2,754 Units  Thomson & Scott Noughty Alcohol-Free
Sparkling Chardonnay (750ml) AND Thomson & Scott Noughty Alcohol-Free Sparkling Rose (750 ml) 8,568
Units  Thomson & Scott - Noughty Alcohol-Free Blanc (750 ml) AND Thomson & Scott Noughty Rouge (750
ml) 5,508 Units  Lautus Non-Alcoholic Sparkling White Wine (750ml | 25.4oz) AND Kolonne Null Non-
Alcoholic Session No. 05 Silvaner 2021 (750ml |

| **13.** ☐ This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS  (if applicable) | **14.** This FINANCING STATEMENT: ☐ covers timber to be cut   ☐ covers as-extracted collateral   ☐ is filed as a fixture filing |
|---|---|
| **15.** Name and address of a RECORD OWNER of real estate described in item 16 (if Debtor does not have a record interest): | **16.** Description of real estate: |
| | |

**17. MISCELLANEOUS:**

International Association of Commercial Administrators
**FILING OFFICE COPY** — UCC FINANCING STATEMENT ADDENDUM (Form UCC1Ad) (Rev. 04/20/11)

# UCC FINANCING STATEMENT **ADDENDUM**
FOLLOW INSTRUCTIONS

**9. NAME OF FIRST DEBTOR:** Same as line 1a or 1b on Financing Statement; if line 1b was left blank
because Individual Debtor name did not fit, check here ☐

OR

9a. ORGANIZATION'S NAME

9b. INDIVIDUAL'S SURNAME

FIRST PERSONAL NAME

ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX

**THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY**

**10. DEBTOR'S NAME:** Provide (10a or 10b) only <u>one</u> additional Debtor name or Debtor name that did not fit in line 1b or 2b of the Financing Statement (Form UCC1) (use exact, full name;
do not omit, modify, or abbreviate any part of the Debtor's name) and enter the mailing address in line 10c

OR

10a. ORGANIZATION'S NAME

10b. INDIVIDUAL'S SURNAME

INDIVIDUAL'S FIRST PERSONAL NAME

INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX

| 10c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|

**11.** ☐ **ADDITIONAL SECURED PARTY'S NAME** <u>or</u> ☐ **ASSIGNOR SECURED PARTY'S NAME:** Provide only <u>one</u> name (11a or 11b)

OR

11a. ORGANIZATION'S NAME

| 11b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|

| 11c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|

**12. ADDITIONAL SPACE FOR ITEM 4 (Collateral):**
**25.4oz) 1,071 Units   Pentire - Non-Alcoholic Distilled Spirit (Adrift, Seaward)(700ml | 23.7oz) AND
Pentire - Coastal Spritz - Non-Alcoholic Aparitf - 700 ml Bottle 1,989 Units   Lautus Non-Alcoholic
Wine Savvy Red (4 Pack)(4 x 250ml | 4 x 8.45oz) AND Lautus Non-Alcoholic Wine (Mixed 4 Pack)(4 x
250ml | 4 x 8.45oz) 1,071 Units   Kolonne Null Tasting Bundle (all sizes)(all items) 153 Units**

**13.** ☐ This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS  (if applicable) | **14.** This FINANCING STATEMENT:

☐ covers timber to be cut    ☐ covers as-extracted collateral    ☐ is filed as a fixture filing

**15.** Name and address of a RECORD OWNER of real estate described in item 16 (if Debtor does not have a record interest): | **16.** Description of real estate:

**17. MISCELLANEOUS:**

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:
2818 La Cienega Avenue, Los Angeles, California 90034

A true and correct copy of the foregoing document entitled (*specify*): **DEBTOR'S EMERGENCY MOTION FOR ENTRY OF AN INTERIM ORDER: (I) AUTHORIZING THE DEBTOR TO USE CASH COLLATERAL; (II) GRANTING ADEQUATE PROTECTION; (III) SCHEDULING A FINAL HEARING; AND (IV) GRANTING RELATED RELIEF; MEMORANDUM OF POINTS AND AUTHORITIES AND DECLARATIONS IN SUPPORT THEREOF** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) **April 5, 2024**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- **Todd M Arnold    tma@lnbyg.com**
- **Ron Bender    rb@lnbyg.com**
- **Dare Law    dare.law@usdoj.gov, ron.maroko@usdoj.gov**
- **United States Trustee (LA)    ustpregion16.la.ecf@usdoj.gov**

**2. SERVED BY UNITED STATES MAIL**: On (*date*) **April 5, 2024**, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) **April 5, 2024**, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☒ Service information **BY OVERNIGHT MAIL** continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| April 5, 2024 | Lourdes Cruz | /s/ Lourdes Cruz |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                                 **F 9013-3.1.PROOF.SERVICE**

In re Boisson Inc.
File No. 10414
Debtor, UST, RSN, 20 Largest and Secured
**SERVED BY OVERNIGHT MAIL**

Debtor
Boisson Inc.
1421 East 15th Street
Los Angeles, CA 90021

Dare Law
Office of the United States Trustee
915 Wilshire Blvd., Suite 1850
Los Angeles, CA 90017

## 20 LARGEST UNSECURED CREDITORS

Almave
Attn: Officer or Managing/General Agent
12 E 49th St., Ste 10-25
New York, NY 10017

American Express
Attn: Officer or Managing/General Agent
200 Vesey Street
New York, NY 10285

Constellation Real Estate Corp
Attn: Officer or Managing/General Agent
27 Smith Street
Brooklyn, NY 11201

French Bloom SAS
Attn: Officer or Managing/General Agent
80, rue de Miromesnil
Paris France  75008

Giffard
Attn: Officer or Managing/General Agent
3200 1st Avenue S., A200
Seattle, WA 98134

Golden Gate Selections
Attn: Officer or Managing/General Agent
2 Mallard Rd
Belvedere, CA 94920

Kolonne Null GmbH
Attn: Officer or Managing/General Agent
Crellestrabe 12
Berlin Germany 10827

La Metro 3 Lp
Attn: Officer or Managing/General Agent
1005 S. Central Ave
Los Angeles, CA 90021

Orrick, Herrington & Sutcliffe LLP
Attn: Officer or Managing/General Agent
2121 Main Street
Wheeling, WV 26003

PayPal Working Capital
Attn: Officer or Managing/General Agent
2211 North First Street
San Jose, CA 95131

Pttow Llc
Attn: Officer or Managing/General Agent
3921 Alton Road, Suite 349
Miami Beach, FL 33140

Ramp.com
Attn: Officer or Managing/General Agent
28 West 23rd Street, Floor 2
New York, NY 10010

Red Krypton Inc.
Attn: Officer or Managing/General Agent
101 Crawfords Corner Road
Holmdel, NJ 07733

RO Sales and Distribution Services
(Pacific Highway Wines & Spirits)
Attn: Officer or Managing/General Agent
7820 Thorndike Road
Greensboro, NC 27409

Schatzi Wines, LLC
Attn: Officer or Managing/General Agent
822 Salisbury Turnpike
Milan, NY 12571

Synergy General Contracting LLC
Attn: Officer or Managing/General Agent
14395 SW 139th Court
Suite 101
Miami, FL 33186

The Pathfinder
Attn: Officer or Managing/General Agent
2420 4th Avenue
PO Box 24990
Seatte, WA 09814

The Zero Proof LLC
Attn: Officer or Managing/General Agent
(Sean Goldsmith)
820 Highland Terrace Northeast
Atlanta, GA 30306

Three Spirit Drinks Ltd
Attn: Officer or Managing/General Agent
121 Varick Street, 3rd Floor
New York, NY 10013

VOS Selections
Attn: Officer or Managing/General Agent
555 8th Avenue, Suite 1209
New York, NY 10018

## SECURED CREDITORS

11770 SVB, LLC
Attn: CLIFFORD GOLDSTEIN, MANAGER
11777 SAN VINCENTE BLVD., SUITE 550
LOS ANGELES, CA 90049

CONNECT VENTURES I, L.P., AS
COLLATERALAGENT
Attn: Louis Citron, Chief Legal Officer
1954 GREENSPRING DRIVE, SUITE 600
TIMONIUM, MD 21093

FARNAM STREET FINANCIAL, INC.
Attn: Steve Morgan, President
5850 OPUS PARKWAY, SUITE 240
MINNETONKA, MN 55343

HYG FINANCIAL SERVICES, INC.
Attn: MAMTA SHORI, CEO
PO BOX 35701
BILLINGS, MT 59107

OUIBY, INC.
Attn: Killion Jackson
PO BOX 21584
Boulder, CO 80308