RON BENDER (SBN 143364)
TODD M. ARNOLD (SBN 221868)
YIHAN SHE (SBN 348334)
LEVENE, NEALE, BENDER, YOO & GOLUBCHIK L.L.P.
2818 La Cienega Avenue
Los Angeles, California 90034
Telephone: (310) 229-1234
Facsimile: (310) 229-1244
Email: RB@LNBYG.COM; TMA@LNBYG.COM; YAS@LNBYG.COM

Attorneys for Debtor and Debtor in Possession

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

## LOS ANGELES DIVISION

| | |
|---|---|
| In re:<br><br>BOISSON INC.,<br><br>    Debtor and Debtor in Possession. | Case No.: 2:24-bk-12614-NB<br><br>Chapter 11 Case<br>Subchapter V<br><br>**DEBTOR'S CHAPTER 11, SUBCHAPTER V, PLAN OF REORGANIZATION, DATED JULY 5, 2024**<br><br>Hearing<br>  Date:     TBD[1]<br>  Time:     TBD<br>  Location:  Courtroom 1545<br>          255 East Temple Street<br>          Los Angeles, California 90012<br>          **[In Person or Via ZoomGov]** |

---

[1] A Chapter 11 Case and Plan Status Conference is set for July 16, 2024, at 2:00 p.m., at the above referenced location. The Debtor will give notice of any Plan confirmation related dates and deadlines if and when directed by the Court.

1

# I.    **INTRODUCTION**

Boisson Inc. is the debtor and debtor in possession (the "Debtor") in the above-captioned Chapter 11, Subchapter V, bankruptcy case (the "Bankruptcy Case").   The Debtor filed a voluntary petition under Chapter 11 of 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code")[2] and elected Subchapter V on April 4, 2024 (the "Petition Date").   The Debtor is managing its affairs and administering its estate as a debtor in possession pursuant to Sections 1182(2) and 1184. The United States Trustee (the "UST") appointed Caroline Djang as the Subchapter V trustee (the "Trustee") pursuant to Section 1183(a).

Chapter 11, Subchapter V allows the Debtor (and only the Debtor) to propose a plan. **This document is a reorganization plan (as may be amended, modified or supplemented, the "Plan") proposed by the Debtor.**  It includes (1) a brief history of the business operations of the Debtor, (2) a liquidation analysis, and (3) projections with respect to the ability of the Debtor to make payments under the Plan. This information is provided to help you understand the Plan and to decide whether to vote to accept or reject the Plan or otherwise file objections.

This Plan is being proposed consistent with the terms (the "Plan Terms") (1) set forth in the *Secured Convertible Note And Credit Agreement And Agreement For Funding Of Plan Of Reorganization* (the "Loan Agreement") entered into between the Debtor, Delaney Family Limited Liability Limited Partnership or its designee (the "Lender"), and Connect Ventures I, L.P. ("Connect" and together with the Debtor and the Lender, the "Consenting Parties"), as collateral agent for itself and the holders (the "Prepetition Noteholders") of the prepetition secured convertible notes (the "Prepetition Secured Notes") in the aggregate principal amount of $5 million issued by the Debtor pursuant to that certain Secured Convertible Promissory Note and Warrant Purchase Agreement, dated as of August 4, 2023 (the "Prepetition Purchase Agreement") and (2) described in the *Debtor's Motion For Entry Of An Order: (1) Authorizing*

---

[2] Unless otherwise stated, all Section references herein are to the Bankruptcy Code.

*Debtor To Obtain Postpetition Financing, (2) Granting Liens And Providing Superpriority Administrative Expense Claims, (3) Granting Adequate Protection, (4) Modifying Automatic Stay, And (5) Granting Related Relief* (the "Loan Motion") [Dkt. 126], to which the Loan Agreement was attached as **Exhibit "2,"** and which Loan Motion was granted pursuant to an order of the Court (the "Loan Order") [Dkt. 138].[3]

The effective date (the "Effective Date") of the Plan shall be the first day after the Court enters an order (the "Confirmation Order") confirming the Plan and all of the following conditions have been satisfied or waived as specified below:

(1)    (a) The Loan Agreement shall not have been terminated in accordance with its terms and shall remain in full force and effect, and (b) there shall not be any event, occurrence, or condition that would after the expiration of any applicable notice or cure period permit any of the Consenting Parties to terminate the Loan Agreement in accordance with its terms where the applicable Consenting Parties have actually given notice of such event, occurrence, or condition;

(2)    There shall not have been instituted nor shall there be pending any action, proceeding, application, claim, counterclaim, or formal or informal investigation before or by any court, governmental, regulatory, or administrative agency or instrumentality in connection with the Plan that, in the reasonable judgment of any of the Consenting Parties would prohibit, prevent, or restrict consummation of the Plan and the transactions contemplated hereby.

(3)    all documents, instruments, and agreements to be executed in connection with the Plan, including the Definitive Documents,[4] shall (a) have been executed and delivered by all parties to such documents, instructions, and agreements, (b) be in form and substance consistent with the Loan Agreement and consent rights thereunder, and (c) be in full force and effect, any conditions precedent related thereto or contained therein shall have been satisfied prior to or contemporaneously with the occurrence of the Effective Date or otherwise waived in accordance

---

[3] Capitalized terms not otherwise defined herein have the meanings ascribed to them in the Loan Agreement, Loan Motion, and/or Loan Order.

[4] "Definitive Documents" means the Plan, and solicitation materials, the Confirmation Order, the New Governance Documents, and any other material exhibits, schedules, amendments, modifications, supplements, appendices, or other documents, motions, pleadings, and/or agreements relating to any of the foregoing.

with the terms thereof.

(4)    The New Governance Documents[5] shall (a) have been executed, delivered, acknowledged, filed, and/or effectuated, as applicable, with the applicable authorities in the relevant jurisdictions, (b) be in form and substance consistent with the Loan Agreement and the consent rights thereunder, and (c) be in full force and effect, and any conditions precedent related thereto or contained therein shall have been satisfied prior to or contemporaneously with the occurrence of the Effective Date or otherwise waived in accordance with the terms thereof.

(5)    The Bankruptcy Court shall have entered the Confirmation Order, which order shall (a) be in form and substance consistent with the Loan Agreement and the consent rights thereunder and (b) be a Final Order.[6]

(6)    The New Equity[7] to be issued and/or delivered on the Effective Date pursuant to the Plan shall have been validly issued by the Reorganized Debtor, as applicable, shall be fully paid and non-assessable, and shall be free and clear of all taxes, liens, and other encumbrances, preemptive rights, rights of first refusal, subscription rights, and similar rights, except for any restrictions on transfers as may be imposed by applicable securities laws or the applicable New Governance Documents.

---

[5] "New Governance Documents" means the organizational and governance documents for the Reorganized Debtor in form and substance acceptable to Lender and Connect, including, without limitation, certificate of incorporation and bylaws, which shall be consistent with the Plan and the Loan Agreement, which shall (a) set forth the re-capitalization of the Reorganized Debtor and the rights of the shareholders of the Reorganized Debtor (including as they relate to the holders of New Common Stock and New Preferred Stock) and (b) at a minimum, provide that the Prepetition Noteholders will have the right to receive annual and quarterly financial statements, and such other information relating to the business and affairs of the Reorganized Debtor as they may from time-to-time reasonably request.

[6] "Final Order" means an order or judgment of the Bankruptcy Court or other applicable court as to which the time to appeal, petition for certiorari, or move for reargument or rehearing has expired and as to which no appeal, petition for certiorari, or other proceedings for reargument or rehearing shall then be pending; or as to which any right to appeal, reargue, rehear, or petition for certiorari shall have been waived in writing in form and substance satisfactory to the Debtor prior to the Effective Date, or the Reorganized Debtor after the Effective Date, respectively, or, in the event that an appeal, writ of certiorari, reargument or rehearing thereof has been sought, such order or judgment of the Bankruptcy Court or other applicable court shall have been affirmed by the highest court to which such order or judgment was appealed or from which reargument or rehearing was sought, or certiorari shall have been denied, and the time to take any further appeal, petition for certiorari or move for reargument or rehearing shall have expired.

[7] "New Equity" means, collectively, the new Preferred Stock and new Common Stock to be issued pursuant to this Plan.

4

(7)    The Debtor shall have otherwise substantially consummated the transactions contemplated by this Plan in a manner consistent in all respects with the Loan Agreement and this Plan and to the extent not otherwise addressed herein, all actions, documents, and agreements necessary to implement and consummate such transactions shall have been effected and executed (or deemed executed), and shall be in form and substance consistent with the Loan Agreement and the consent rights thereunder.

The conditions precedent numbered above can be waived by the Debtor, with the written consent of the Lender and Connect, provided that, such parties may not waive the condition that the Confirmation Order be unstayed.  The Debtor, following the Effective Date, shall be referred to as the "Reorganized Debtor."

## II.    <u>OTHER DEFINED TERMS</u>

In addition to the terms defined above, as used herein, the following terms have the respective meanings specified below (such meanings to be equally applicable to both the singular and plural, and masculine and feminine forms of the terms defined):

1.    "Administrative Claim" means any Claim for any cost or expense of administration of the Bankruptcy Case under Sections 503(b) and 507(a)(1), including, without limitation, any actual and necessary post-petition expenses of preserving the Estate, any actual and necessary post-petition expenses of administering and liquidating the Estate, all compensation or reimbursement of expenses to the extent allowed by the Bankruptcy Court under Sections 330, 331, 363 or 503, and any fees or charges assessed against the Estate under 28 U.S.C. § 1930.

2.    "Allowed" means with respect to any Claim or Equity Interest: (a) a Claim that was listed in the Debtor's Schedules and that was not listed as contingent, unliquidated, or disputed and that is not otherwise a Disputed Claim; (b) a Claim or Equity Interest that is evidenced by a proof of Claim or proof of Equity Interest, as applicable, filed by the applicable Claims Bar Date or Governmental Unit Bar Date (or for which Claim or Equity Interest under the Plan, the Bankruptcy Code, the Bankruptcy Rules, or a Final Order of the Bankruptcy

Court, a Proof of Claim is not required to be filed) and is not a Disputed Claim; (c) a Claim or Equity Interest allowed pursuant to the Plan or a Final Order of the Bankruptcy Court. **Any Claim or Equity Interest that has been or is hereafter listed in the Schedules as contingent, unliquidated, or disputed, and for which no Proof of Claim or Proof of Equity Interest is or has been timely filed shall be expunged without further action by the Debtor and without further notice to any party or action, approval, or order of the Bankruptcy Court. Any portion of a Claim that is satisfied or released during the Chapter 11 Cases is not an Allowed Claim.**

3.      "Bankruptcy Rules" means, collectively, (a) the Federal Rules of Bankruptcy Procedure ("FRBP"), as amended from time to time, as applicable to the Bankruptcy Case, and (b) the Local Bankruptcy Rules (the "LBR") applicable to cases pending before the Bankruptcy Court, as now in effect or hereafter amended.

4.      "Claim" means (a) any right to payment from the Debtor's Estate, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured, or (b) any right to an equitable remedy for breach of performance if such breach gives rise to a right of payment from the Debtor's Estate, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

5.      "Claims Bar Date" means June 13, 2024, which is the general deadline set by the Bankruptcy Code for filing proofs of claim for any Claims against the Debtor that arose prior to the Petition Date and not otherwise subject to the Governmental Unit Bar Date.

6.      "Claims Objection Deadline" means 180 days after the Effective Date, unless extended prior to the expiration thereof by an order of the Bankruptcy Court.

7.      "Class" means one of the Classes of Claims or Classes of Interests designated in the Plan.

8.      "Disputed Claim" means any Claim (a) as to which a Proof of Claim or an Administrative Claim has been filed and the dollar amount of such Claim is not specified in a

fixed amount or (b) as to which the Debtor or any other party in interest has interposed a timely objection or request for estimation in accordance with the Bankruptcy Code, the Bankruptcy Rules, the Plan and/or any order of the Bankruptcy Court, which objection or request for estimation has not been withdrawn or determined by a Final Order.

9.    "Equity Interest" means any ownership and/or equity interest in the Debtor.

10.    "Estate" means the Debtor's estate created by Section 541(a) upon the Petition Date.

11.    "General Unsecured Claim" means any Claim that is not a Secured Claim, an Administrative Claim, a Priority Tax Claim, or an Other Priority Claim.  General Unsecured Claims include, without limitation, unsecured Claims arising from the rejection of executory contracts and unexpired leases.

12.    "Governmental Unit Bar Date" means October 1, 2024, which is the deadline set by the Bankruptcy Code for filing proofs of claim on behalf of any governmental unit, as defined in Section 101(27), for any Claims against the Debtor that arose prior to the Petition Date.

13.    "Holder" means an Entity that is the beneficial holder of a Claim or an Equity Interest, as applicable. "Hold" and "Held" shall have the correlative meanings.

14.    "Other Priority Claim" means any Claim accorded priority in right of payment under section 507(a) of the Bankruptcy Code, other than an Administrative Claim or Priority Tax Claim.

15.    "Priority Tax Claim" means a Claim of a governmental unit of the kind specified in Section 507(a)(8).

16.    "Schedules" means the schedules of assets and liabilities, list of equity security holders, and statement of financial affairs filed by the Debtor as required by the Bankruptcy Code and Bankruptcy Rules, as amended.

17.    "Secured Claim" means a Claim against the Debtor to the extent of the value, as determined by the Bankruptcy Court pursuant to Section 506(a), of any interest in property of the Debtor's Estate securing such Claim.

### III.    STATUTORY PLAN DISCLOSURES

Section 1190(1) requires that a Subchapter V plan include: (1) a brief history of the business operations of the Debtor, (2) overview of current assets and restructuring plan, (3) a liquidation analysis, and (4) projections with respect to payments available to creditors under the Plan.  11 U.S.C. § 1190(1).

### A.    BRIEF HISTORY OF THE BUSINESS OPERATIONS OF THE DEBTOR.

1.    In 2021, the Debtor (a) was formed as a Delaware corporation and (b) launched in New York, aiming to create a unique, judgment-free space for consumers to explore an extensive array of non-alcoholic wines, beers, and spirits.  With an ambitious expansion strategy, the Debtor opened 11 storefronts in major cities, including New York, Miami, Los Angeles, and San Francisco, amplified its digital presence through a growing e-commerce platform, and also launched a wholesale distribution channel.  The Debtor offers a vast portfolio, boasting over 125 brands of non-alcoholic wines, beers, spirits, aperitifs, and mixers, including brands owned by the Debtor.  Additional information regarding the Debtor can be obtained at: https://boisson.com/.

2.    As the preeminent curator and leading go-to-market choice for non-alcoholic brands, the Debtor successfully cultivated a customer base exceeding 200,000, generating $20 million in Gross Merchandise Value (GMV) within just three years, with a repeat customer rate of 40% and an efficient Advertising Cost of Sales (ACOS) of 11%.

3.    As the sector's leading specialty omnichannel retailer, the Debtor excels in utilizing data analytics to tailor its offerings and predict emerging trends, ensuring its offerings remain at the storefront of consumer preferences and industry innovation.

4.    In 2023, the Debtor generated a combined revenue of $10 million from its retail and e-commerce operations, alongside more than $1 million in wholesale revenue and an additional $175,000 from Boisson-owned brands.

5.      Unfortunately, faced with escalating operational costs, particularly from retail operations at its nine traditional brick and mortar locations, and a competitive landscape that strained its financial reserves, the Debtor became unable to pay its debts as they came due.

6.      In order to address its financial issues, before the Petition Date and continuing thereafter, the Debtor pursued a strategic pivot, whereby it would (a) completely transition away from physical retail operations to focus instead on e-commerce and wholesale distribution channels for greater efficiency and sustainability, and (b) in connection with ongoing e-commerce and wholesale operations, utilize one or more third-party logistics providers so that the Debtor could reject leases for warehouses and eliminate traditional real property rent costs. The foregoing strategic realignments were envisioned to lower overheads, improve margins, and position the Debtor for sustainable operation and future growth in the competitive landscape of non-alcoholic beverages.

7.      In consideration of the foregoing, and after considering the best interests of its creditors, the Debtor filed for bankruptcy protection under Subchapter V of the Bankruptcy Code on the Petition Date.  The Bankruptcy Case was intended to afford the Debtor a breathing spell from its creditors as it concentrated its efforts on implementing the strategy outlined above and formulating a means for exiting bankruptcy via a liquidating or reorganization plan.

**B.      THE DEBTOR'S ASSETS, THE PRIOR DIP LOAN, AND ALLEGED SECURED CREDITORS.**

8.      The Debtor's current assets (the "Assets"), which are described in detail and listed with values in the liquidation analysis (the "Liquidation Analysis") attached hereto as **Exhibit "1,"** are primarily comprised of (a) cash, (b) inventory, (c) accounts receivable, (d) minority interests in unaffiliated entities, (e) intellectual property (including branded beverages), (f) a customer list and goodwill, and (g) an accrued net operating loss.

9.      The Debtor obtained a certified search of UCC-1 financing statements recorded against the Debtor (the "UCC Summary/Financing Statements") from the Secretary of State of Delaware, where the Debtor was incorporated.   A true and correct copy of the UCC Summary/Financing Statements is attached hereto as **Exhibit "2**."  As can be seen from the

UCC Summary/Financing Statements, as of the Petition Date, there are five (5) Financing Statements recorded against the Debtor by (a) 11770 SVB, LLC ("SVB"), (b) Farnam Street Financial, Inc. ("Farnam"), (c) HYG Financial Services, Inc. ("HYG"), (d) Connect, and (v) Ouiby, Inc ("Ouiby") (collectively, the "Secured Creditors").

10.    A general summary of the Financing Statements recorded against the Debtor, including the names of the creditors, the numbers and dates of the UCC financing statements, and the scope of their purported collateral ("UCC Analysis")[8] is as follows:

| Creditor | Number and Date | Collateral |
| --- | --- | --- |
| SVB | 2022 3717790 (filed 5/3/22) | "All stock in trade and debtor's trader fixtures (which includes trade fixtures which are not attached to or integrated with improvements **to the 'premises**' (as defined below) but shall not include improvements to the premises made by debtor or fixtures, including trade fixtures, attached to or integrated with improvements to the premises), furniture, equipment and other personal property now or hereafter **located in the premises** and all proceeds therefrom. **'Premises' means those certain premises located at 11762 San Vincente Boulevard, Los Angeles, California 90049**, which premises are leased to debtor, as tenant, by secured party, as landlord, pursuant to that certain restaurant lease dated as of May 2, 2022." (emphasis added).<br><br>The Debtor is no longer at this premises and has no property at the premises that would secure any claim of SVB. |
| Farnam | 2022 8097271 (filed 9/28/22) | Equipment subject to Lease Agreement No. BO092622 between the Debtor and Farnam.<br><br>This is a lien to secure a purported lease of personal property, and the Debtor surrendered and/or abandoned the personal property, so there is no estate property to secure any claim of Farnam. |
| HYG | 2022 9961590 (filed 12/2/22) | "All of the equipment leased by HYG to the Debtor and all accessions, additions, replacements, and substitutions thereto and therefore, and all proceeds including insurance proceeds thereof."<br><br>This is a lien to secure a purported lease.  The Debtor rejected this lease per a stipulation and order of the Court, which also |

---

[8] The following UCC Analysis is being provided for information purposes only and does not constitute an admission or legal opinion as to the validity, priority, or scope of any liens asserted by any creditor in this case.  As set forth in the UCC Analysis, various assets, including stock in trade, trade fixtures, equipment, personal property assets, and consignment inventor, may constitute the collateral secured by the Secured Creditors.

| Creditor | Number and Date | Collateral |
|---|---|---|
|  |  | included a waiver of claims. [*See* Dkts. 75 and 77.] |
| Connect | 2023 5382014 (filed 8/4/23) | All personal property assets. |
| Ouiby | 2024 1975810 (filed 3/26/24) | Consignment of specified inventory of non-alcoholic wines, spirits, cocktails and beverages from several brands (Leitz, Pentire, Kolonne Null, Lautus, Misty Cliffs, Thomson & Scott), along with any proceeds from the sale of that inventory.<br><br>The Debtor has no inventory consigned to it by Ouiby. |

11.     Based on a review of the UCC Summary/Financing Statements and the UCC Analysis above, it appears that, soon after the Petition Date, Connect was the only creditor with a lien on the Debtor's Assets, provided that, as discussed below, the Lender now has first position liens on substantially all of the Debtor's assets to secure the two postpetition DIP Loans the Lender made to the Debtor.

12.     As to Connect, pursuant to the Prepetition Purchase Agreement, the Prepetition Security Agreement, and related loan documents dated as of August 4, 2023 between the Debtor and the Prepetition Noteholders, which include Connect and for which Connect serves as the collateral agent, the Debtor issued the Prepetition Secured Notes to the Prepetition Noteholders in the aggregate principal amount of $5 million.  Prior to the Prior DIP Loan and Second DIP Loan, the Prepetition Secured Notes were secured by a first priority lien on all or substantially all of the Debtor's personal property assets not otherwise subject to a senior lien or lessor lien set forth in the UCC Analysis.  On account of their Prepetition Secured Notes, the Debtor currently owes the Prepetition Noteholders approximately $5.198 million, comprised of $5 million for the principal loan amount, plus approximately $198,000 in accrued unpaid prepetition interest.[9]  Three of the Prepetition Noteholders – Connect, Convivialité Ventures, and Scorpion Investments II, L.P. – held seats on the Debtor's five-member Board of Directors; at present, Connect's and Convivialité Ventures' seats are vacant.

---

[9] *See* Proof of Claim 46-1 filed by Connect on behalf of itself and the other Prepetition Noteholders.  The Debtor requests that the Court take judicial notice of Proof of Claim 46-1 pursuant to Fed. R. Evid. 201.

13.     Connect as collateral agent for itself and the other Prepetition Noteholders, previously consented to the Debtor's use of cash collateral. [*See* Dkts. 7, 25, 78.]

14.     After the Petition Date, on May 17, 2024, the Debtor filed a motion (the "<u>Prior DIP Motion</u>") [Dkt. 88] to obtain the debtor-in-possession financing in the amount of $455,177.60 (the "<u>Prior DIP Loan</u>") from Studio Beverage Group, Inc. ("SBG") secured by a lien on substantially all of the Debtor's assets (the "Prior DIP Lien").  On May 21, 2024, the Court entered its order (the "<u>Prior DIP Order</u>") [Dkt. 100] granting the Prior DIP Motion and the relief requested therein, including the grant of the Prior DIP Lien in favor of SBG to secure the Prior DIP Loan.

15.     As set forth in the Prior DIP Motion and Prior DIP Order, in connection with the Prior DIP Loan, Connect, as collateral agent for itself and the other Prepetition Noteholders, consented to the subordination of its lien securing the Debtor's Obligations for the Prepetition Secured Debt to the Prior DIP Lien securing the Debtor's Obligations under the Prior DIP Loan.

16.     After the Prior DIP Loan was made, SBG assigned its interests in the Prior DIP Loan and the Prior DIP Lien to the Lender.

17.     As discussed below, pursuant to the Loan Agreement, Connect is not a lender under the Loan Agreement, but, as collateral agent for itself and the other Prepetition Noteholders, is a party to the Loan Agreement and thereby consented to the subordination of its lien securing the Debtor's Obligations for the Prepetition Secured Debt to the Second DIP Lien in favor of the Lender to secure the Second DIP Loan.

## C.     <u>THE DEBTOR'S PRIOR AND CURRENT EXIT STRATEGIES AND EFFORTS TO IMPLEMENT THEM.</u>

18.     Since the outset of this Bankruptcy Case, in pleadings filed with the Court, the Debtor indicated that it was "pursuing multiple potential avenues of reorganization, including (a) the aforementioned new operational model whereby the Debtor's traditional brick and mortar retail operations are being discontinued so that the Debtor can focus on its online and wholesale operations, which may generate enough disposable income to fund a plan, (b) a potential sale of

the Debtor or substantially all of its Assets, which funds would be used to fund a plan, and (c) a capital infusion via a debtor in possession loan and/or equity contributions/investment, which would be used to fund a plan [*see*, *e.g.*, Dkts. 103, at ¶ 11 and 109, at ¶ 12].

19.     After the Petition Date, consistent with the Debtor's goal to reduce costs and increase profitability, the Debtor (a) rejected all of its real property leases [*see* Dkts. 19, 43, 60 and 87], (b) engaged a third-party logistic provider to meet the Debtor's storage and fulfillment needs, (c) rejected a forklift lease [*see* Dkts. 75 and 77], (d) abandoned personal property of inconsequential value that was burdensome to the estate [*see* Dkts. 81 and 96], and (e) stipulated to relief from stay to enable the Debtor to surrender all other vehicles [*see* Dkts. 121 and 122].

20.     At the same time that the Debtor was effectuating its operational pivot, the Debtor pursued a sale of substantially all of its Assets.  On April 25, 2024, the Debtor filed an application (the "Employment Application") [Dkt. 45] to employ Resolution Financial Advisors LLC ("Resolution") as the Debtor's financial advisor and sales agent in connection with, *inter alia*, efforts to market and potentially sell substantially all of the Debtor's Assets (*i.e.*, one of the options for funding an exit from bankruptcy set forth above).  On May 3, 2024, the Court entered an order [Dkt. 62] approving the Employment Application.

21.     After extensive consultation with the Debtor's well-regarded and experienced sales agent in Resolution, whose qualifications are set forth in its Employment Application and not repeated here, the Debtor and Resolution agreed that certain bidding procedures (the "Bidding Procedures") would provide the optimal timetable in order to achieve the highest and best price at an auction (the "Auction") to be conducted for the Debtor's Assets.

22.     On May 14, 2024, the Debtor filed its motion (the "Bidding Procedures Motion") [Dkt. 80] seeking, *inter alia*, approval of the Bidding Procedures, which were attached to the Bidding Procedures Motion as **Exhibit "1."**  On May 29, 2024, the Court entered an order (the "Bidding Procedures Order") [Dkt. 103] granting the Bidding Procedures Motion and approving the Bidding Procedures and dates and deadlines included therein (the "Dates and Deadlines").

23.     After the entry of the Bidding Procedures Order, Resolution marketed the Assets for sale consistent with the efforts outlined in the Bidding Procedures Motion to the best of its

ability under the circumstances.  The marketing efforts undertaken by Resolution regarding the Auction of the Debtor's Assets, resulted in the identification of 53 Potential Bidders (as defined in the Bidding Procedures Motion) in addition to 26 provided by the Debtor for a total of 79 potential bidders, eight of which signed non-disclosure agreements, which was a prerequisite to accessing all information in the data room that Resolution established in connection with due diligence to be conducted by Potential Bidders.  There were also seven other Potential Bidders that did not sign non-disclosure agreements that were reviewing limited information because they were interested in pursuing a purchase of only a small portion of the Assets offered for sale.

24.    Consistent with the Dates and Deadlines set by the Bid Procedures Order, on June 4, 2024, the Debtor filed its motion to sell substantially all of its Assets (the "Sale Motion") [Dkt.  109] and set it for hearing on June 25, 2024.  In the Sale Motion, the Debtor stated that:

> **The Debtor may soon have agreed terms for a debtor in possession loan/equity contribution tied to agreed plan terms (the "Loan/Plan Transaction"), all subject to Court approval.  In the event the Debtor reaches agreement on such terms, the Debtor will likely withdraw the Motion and from its current efforts to sell the Assets, all without prejudice to resuming such efforts, because, assuming the current proposed terms of the Loan/Plan Transaction are agreed to, then the Debtor believes that pursuing the Loan/Plan Transaction would serve the best interests of the Debtor's estate and the creditors thereof.**  However, unless and until the Debtor has agreed, binding terms for a Loan/Plan Transaction, the sale of the Purchased Assets pursuant to the Motion is in the best interests of the Debtor's estate and the creditors thereof, because the Debtor does not currently have access to sufficient working capital to operate the business at a profit in the long-term, including the generation of funds sufficient to service the Connect Lenders' secured debt.

Sale Motion [Dkt. 109], ¶ 12, n.4 (emphasis added).

25.    Based on a number of factors, including (a) the value of the Debtor's Assets set forth in the Debtor's Schedules (as amended) [Dkts. 52 and 63], (b) the rejection of all real property and personal property leases and the surrender and/or abandonment of other personal property, (c) the remaining Assets that could be sold, and (d) the relatively low interest in the

14

Assets offered for sale, the Debtor and Resolution concluded that an Auction of the Assets would not even come close to generating the more than $6.153 million in proceeds that would be required to pay Connect's approximately $5.2 million Prepetition Secured Debt and the Lender's approximately $955,177 in postpetition secured debt for the DIP Loans in full. Accordingly, the Debtor determined in its business judgment to withdraw the Sale Motion and cancel the hearing.  [Dkt 123].

**D.** **EFFORTS TO OBTAIN A SECOND DIP LOAN, THE TERMS OF THE SECOND DIP LOAN, THE NEED FOR, AND BENEFIT FROM, THE SECOND DIP LOAN, AND APPROVAL OF THE SECOND DIP LOAN.**

26. After over a month of arm's-length, and good faith negotiations among the Debtor, SBG (the predecessor in interest and a party affiliated to the Lender), the Lender, and Connect, (a) on June 5, 2024 (*i.e.*, one day after the Sale Motion was filed), the parties signed a non-binding Indication of Interest (this "IOI") regarding the Loan/Plan Transaction, and (b) on June 19, 2024, consistent with the IOI, the parties signed the Loan Agreement for the Second DIP Loan, a true and correct copy of which was attached as **Exhibit "2"** to the Loan Motion.

27. Thereafter, as required by the Loan Agreement, the Debtor (a) filed a notice of voluntary dismissal, without prejudice, of the Sale Motion so that it could focus on the Loan/Plan Transaction under the Loan Agreement [Dkt. 123] and (b) filed its Loan Motion to approve the Second DIP Loan [Dkt. 126], to which the Loan Agreement was attached as **Exhibit "2,"** and which Loan Motion was granted pursuant to the Court's Loan Order entered on July 1, 2024 [Dkt. 138].

28. As set forth in the Loan Motion, the Debtor entered into the Loan Agreement and sought approval of the Loan Agreement, because the Debtor believed (and still believes) that (a) the Loan Terms for the Second DIP Loan, which are set forth in the Loan Motion and not repeated here, are fair and reasonable and (b) entering into the Loan Agreement, obtaining the Second DIP Loan, and pursuing confirmation of the Plan outlined in the Loan Agreement, which the Debtor is seeking to do pursuant to the instant Plan, is in the overwhelming best interests of the Debtor's estate and the creditors thereof.  As discussed above, the Debtor was

pursuing a sale of substantially all of its Assets. However, the Debtor does not believe that a sale of such assets would even come close to generating the more than $6.153 million in proceeds that would be required to pay Connect's approximately $5.2 million Prepetition Secured Debt and the Lender's approximately $955,177 in postpetition secured debt for the DIP Loans in full. Thus, in a sale scenario, the Debtor does not believe that there would be any funds to make distributions to the Holders of Allowed Administrative Claims, Allowed Priority Tax Clam, Allowed Other Priority Claims, and Allowed General Unsecured Claims. Further, as can be seen from the Budget attached to the Loan Motion as **Exhibit "A"** to the Loan Agreement, and which is attached hereto as **Exhibit "3"** as the projections for the Plan (the "Plan Projections"), without the Second DIP Loan, the Debtor would not have had sufficient funds to maintain operations. On the other hand, the Second DIP Loan and this related Plan provide a means to fund continued operations, convert the Prepetition Secured Debt (as well as the Obligations for both DIP Loans from the Lender) into new stock, to pay allowed administrative and priority claims in full, and to make a material distribution to the holders of Allowed General Unsecured Claims.

29. By the end of July 2024, in addition to the $455,177.60 previously borrowed from the Lender under the Prior DIP Loan, the Debtor is projected to have borrowed an additional $500,000 from the Lender under the Second DIP Loan, provided that the Debtor may borrow more before or after July 5, 2024 under the Second DIP Loan if required conditions for additional borrowing are met.

**E.    OVERVIEW OF THE DEBTOR'S CURRENT ASSETS AND RESTRUCTURING PLAN.**

30. As discussed in Section III.B., *supra*, the Debtor's current Assets are (a) described in detail and listed with values in the Liquidation Analysis attached hereto as **Exhibit "1"** and (b) primarily comprised of (i) cash, (ii) inventory, (iii) accounts receivable, (iv) minority interests in unaffiliated entities, (v) intellectual property (including branded beverages), (vi) a customer list and goodwill, and (vii) an accrued net operating loss.

16

31.     As discussed herein and in the Liquidation Analysis, under this Plan, and consistent with the Loan Agreement, (a) with Connect's consent, the approximately $5.2 million in Prepetition Secured Debt held by Connect and the other Prepetition Noteholders will be converted into new stock in the Reorganized Debtor, which will satisfy the Prepetition Secured Debt in full and (b) the Lender will convert its secured debt and provide Equity Capital[10] sufficient to (i) pay Holders of Allowed Administrative Claims, Allowed Other Priority Claims, and Allowed Priority Tax Claims in full on the Effective Date, (ii) pay Holders of Allowed General Unsecured Claims the lesser of 10% of their Allowed general unsecured claim and their pro rata share of $325,000 made available to the Holders of Allowed General Unsecured Claims on the Effective Date, and (iii) fund operating capital needs consistent with the Plan.  Therefore, as set forth in the Liquidation Analysis, in the Chapter 11 scenario, while certain assets do have listed values, payments on Allowed Claims will be made from cash on hand and from the Equity Capital to be provided by the Lender pursuant to the Loan Agreement.

**F.      LIQUIDATION ANALYSIS.**

32.     One confirmation requirement is the "Best Interest Test," which requires a liquidation analysis.  Under the Best Interest Test, if a Holder of a Claim or Interest is in an impaired Class and that Holder of a Claim or Interest does not vote to accept the Plan, then such Holder must receive or retain under the Plan property of a value not less than the amount that

---

[10] In the Loan Agreement, the Equity Capital to be provided by the Lender is described as follows:

The Plan shall provide for the Lender to provide an aggregate amount of up to $3,000,000 in Equity Capital comprised of:

(a)      the Plan Contribution in the amount of $1,500,000 to be contributed on the "effective date" of the Plan (which, as provided in the Plan cannot occur if, among other things, a Default has occurred under this Agreement that has not been cured or waived by the Lender and Connect) (the "Plan Effective Date") [the Effective Date herein] in the form of the conversion of all amounts owed under the Prior DIP Loan (if any) and the Second DIP Loan, including for interest, fees, and other charges, plus cash in the amount necessary to bring the total to $1,500,000, and

(b)     up to $1,500,000 of Equity Capital to be provided by the Lender (in its sole and absolute discretion) to the Reorganized Debtor after the Plan Effective Date in amounts and on the dates as determined by the Board of Directors of the Reorganized Debtor ("Post-Confirmation Board") as needed to support the working capital needs of the Reorganized Debtor and to enable the Reorganized Debtor to timely meet its payment obligations under the Plan; notwithstanding any other provision hereof, if the Borrower confirms a Plan consistent with the requirements of this Agreement, the Lender shall be obligated to provide sufficient Equity Capital to make the payments required under the Plan on, or soon after the Plan Effective Date.

such Holder would receive or retain if the Debtor were liquidated under Chapter 7 of the Bankruptcy Code.  The impaired classes under the Plan consist of Classes 1, 2, 4, and 5.  The Debtor must therefore satisfy the "best interest of creditors test" with respect to members of these Classes that do not vote to accept the Plan.

33.    In a Chapter 7 case, the debtor's assets are usually sold by a Chapter 7 trustee and the proceeds distributed to creditor in a specific statutory priority.  For the Court to be able to confirm the Plan, the Court must find that all Holders of Allowed Claims and Interest who do not accept the Plan will receive at least as much under the Plan as such Holders would receive under a Chapter 7 liquidation of the Debtor.  The Debtor maintains that this requirement is clearly met.

34.    Attached as **Exhibit "1"** hereto, in balance sheet format, is a demonstration of the Liquidation Analysis in a hypothetical Chapter 7 case as of July 5, 2024 (which is not expected to change in the time leading up to an Effective Date) if the Bankruptcy Case were to be converted to Chapter 7 instead of the Chapter 11 plan being confirmed.  As shown in **Exhibit "1,"** all Holders of Allowed Claims and Interests will receive as much or more under the Plan as they would receive under a Chapter 7 liquidation of the Debtor.  *See*, **Exhibit "1."**

35.    More specifically, as discussed herein and set forth in the Liquidation Analysis, (a) in a hypothetical liquidation, (i) the secured creditors (the Lender and Connect) would not be paid in full, and (ii) **there would be no distributions to the Holders of Allowed Administrative Claims, Allowed Other Priority Claims, Allowed Priority Tax Claims, and Allowed General Unsecured Claims, _but_** (b) under the Plan, (i) the Holders of Allowed Secured Claims (the Lender and Connect) will have their obligations satisfied, in full, via consensual conversion of their Allowed Secured Claims into newly issued stock in the Reorganized Debtor, (ii) Allowed Administrative Claims, Allowed Other Priority Claims, and Allowed Priority Tax Claims will be paid in full, and (iii) there will be a material distribution to the Holders of Allowed General Unsecured Claims.  Thus, it is projected that creditors would receive less in a hypothetical Chapter 7 liquidation compared to the Plan.  Therefore, the Plan meets the requirements of the Best Interest Test.

18

**G.      PLAN PAYMENT PROJECTIONS.**

36.      As discussed herein and set forth in the Plan Projections attached hereto as **Exhibit "3,"** (a) the Plan will be funded from cash on hand and from the Equity Capital to be provided by the Lender pursuant to the Loan Agreement and (b) the Equity Capital will enable the Debtor to (i) pay Allowed Administrative Claims, Allowed Other Priority Claims, and Allowed Priority Tax Claims in full, and to make a material distribution to the Holders of Allowed General Unsecured Claims, and (ii) fund going forward operations.

## IV.      TREATMENT OF CREDITORS' CLAIMS UNDER THE PLAN

**A.      WHAT CREDITORS WILL RECEIVE UNDER THE PLAN.**

As required by the Bankruptcy Code, the Plan classifies certain Claims and Interests in various Classes according to their right to priority and leaves other types of Claims unclassified as specified in Section IV of the Plan.  Also, as required by the Bankruptcy Code, the Plan states whether each Class of Claims or Interests is impaired or unimpaired and describes the treatment each class will receive.

### 1.      UNCLASSIFIED CLAIMS.

Certain types of Claims are not placed into voting classes; instead they are unclassified. The Bankruptcy Code predetermines what type of treatment these Claims will receive.  They are not considered impaired and they do not vote on the Plan because they are automatically entitled to specific treatment provided for them in the Bankruptcy Code.  As such, the Debtor has not placed the following Claims in a Class.

#### a.      ADMINISTRATIVE EXPENSES.

Administrative Claims are Claims for costs or expenses of administering the Debtor's Bankruptcy Case that are allowed under Section 507(a)(2).  The Bankruptcy Code requires that all Administrative Claims that are Allowed be paid on the Effective Date unless a particular claimant agrees to a different treatment.

The following chart lists all of the Debtor's estimated § 507(a)(2) Administrative Claims for professionals employed by the Estate and the Trustee ("Professional Fee Claims") that will be owed as of the Effective Date and their treatment under the Plan.

| Name | Estimated Amount Owed | Treatment |
|---|---|---|
| Clerk's Office Fees | $0 | Paid in full on the Effective Date |
| Levene, Neale, Bender, Yoo & Golubchik L.L.P., the Debtor's bankruptcy counsel | $216,001 (est.) | Paid in full on the later of the Effective Date or entry of a court order approving fees and costs |
| Caroline Djang, Subchapter V Trustee | $10,056 (est.) | Paid in full on the later of the Effective Date or entry of a court order approving fees and costs |
| Resolution, the Debtor's Financial Advisor and Sales Agent | $126,500 (est.) | Paid in full on the later of the Effective Date or entry of a court order approving fees and costs |
| TOTAL | $352,557 (est.) | |

The Court must approve all professional fees and expenses listed in this chart before they may be paid.  For all professional fees and expenses (except fees owing to the Clerk of the Bankruptcy Court), the professional in question must file and serve a properly noticed fee application and the Court must rule on the application.  Only the amount of fees and expenses allowed by the Bankruptcy Court will be required to be paid under the Plan.  The estimated amounts of the Professional Fee Claims set forth above simply represent the Debtor's best estimates as to the amount of Allowed Professional Fee Claims in the Bankruptcy Case.  The actual amounts of such Professional Fee Claims may be higher or lower.  Much of whether the actual amount of the Professional Fee Claims described above will be dependent upon whether the Debtor is required to engage in any substantial litigation regarding the confirmation of the Plan and/or objecting to Claims.  To the extent the Debtor is required to engage in any such substantial litigation, the Debtor will incur professional fees and expenses in excess (and possibly substantially in excess) of the figures set forth above.  By voting to accept the Plan, creditors are not acknowledging the validity of, or consenting to the amount of, any of these Professional Fee Claims, and creditors are not waiving any of their rights to object to the allowance of any of these Professional Fee Claims.  By including the figures described above, the Debtor is not acknowledging the validity of, or consenting to the amount of, any of these Professional Fee Claims, and the Debtor or the Reorganized Debtor are not waiving any of their

rights to object to the allowance of any of Professional Fee Claims.  Similarly, professionals who have been employed in the Bankruptcy Case are not being deemed to have agreed that the figures contained herein represent any ceiling on the amount of fees and expenses that they have incurred or are entitled to seek to be paid pursuant to Bankruptcy Court order as such fees and expenses are just estimates provided at the time of the preparation of the Plan.

In addition to the Professional Fee Claims, the Debtor has incurred other post-petition Administrative Claims.

The following chart lists all of the Debtor's Section 507(a)(2) Administrative Claims (other than the Administrative Claims that are Professional Fee Claims listed above) accruing and unpaid in the ordinary course of business and their treatment under the Plan (the "Other Administrative Claims" and, together with the Professional Fee Claims, the "Administrative Claims" herein).

| Name | Amount Owed | Treatment |
|---|---|---|
| Constellation Real Estate Corp | $94,482.00 | To be paid in full on the Effective Date. |
| Administrative Bar Date to be Set to There May be Additional Other Administrative Claims | TBD | To be paid in full on the Effective Date. |
| **TOTAL** | **$94,482.00** | |

To the extent Administrative Claims are Allowed prior to the Effective Date, and subject to the Obligations under the DIP Loans, Loan Agreement, the Prior DIP Order and the Loan Order, such Allowed Administrative Claims may be paid by the Debtor out of the Debtor's funds provided the Debtor has sufficient funds to pay them.  To the extent Administrative Claims are Allowed after the Effective Date, such Allowed Administrative Claims will be paid by the Reorganized Debtor.

**b.    PRIORITY TAX CLAIMS.**

Section 1129(a)(9)(C) of the Bankruptcy Code requires that each Holder of an Allowed Section 507(a)(8) Priority Tax Claim receive regular installment payments of a total value, as of the Effective Date, equal to the allowed amount of such Allowed Priority Tax Claims, over a period ending not later than five years after the Petition Date, and not less favorable than other creditors paid under the Plan.  Interest rates on Allowed Priority Tax Claims are conclusively determined by applicable non-bankruptcy law as of the month that the Plan is confirmed.  11 U.S.C. § 511.

Under the Plan, all Allowed Priority Tax Claims will be paid in full on the Effective Date or as soon thereafter as is practicable.

A failure by the Debtor to make a payment on the Allowed Priority Tax Claims pursuant to the terms of the Plan will be an event of default.  If the event of default is not cured within thirty (30) days after service of written notice of default from the taxing authority, then the taxing authority may enforce its applicable remedies exclusively by application to the Bankruptcy Court and with jurisdiction maintained exclusively by the Bankruptcy Court.  The chart below indicates <u>all</u> Section 507(a)(8) Priority Tax Claims which were either scheduled by the Debtor or asserted by the taxing agencies in timely filed Proofs of Claim.  The inclusion of the Claims in the chart below is intended simply to reflect the Claims that have been scheduled and/or asserted in timely filed Proofs of Claim as Priority Tax Claims, and is not intended to be a concession by the Debtor regarding the validity of the amount of any such Claims or the classification of such Claims as Priority Tax Claims under Section 507(a)(8) of the Bankruptcy Code.

| **Creditor** | **Claim No.** | **Priority Amount** | **Treatment** |
| --- | --- | --- | --- |
| Commonwealth of Pennsylvania-UCTS | 2 | $290.78 | To be paid in full on the Effective Date or as soon thereafter as is practicable. |
| Franchise Tax Board | 8 | $1,618.38 | To be paid in full on the Effective Date or as soon thereafter as is practicable. |

22

| Internal Revenue Service | 11 | $1,900.00 | To be paid in full on the Effective Date or as soon thereafter as is practicable. |
| Los Angeles County Treasurer and Tax Collector | 27 | $694.31 | To be paid in full on the Effective Date or as soon thereafter as is practicable. |
| Massachusetts Department of Revenue | 1 | $8,063.48 | To be paid in full on the Effective Date or as soon thereafter as is practicable. |
| **TOTAL** | | **$12,566.95** | |

## 2.    CLASSIFIED CLAIMS AND INTERESTS.

### a.    SECURED CLAIMS.

| Class | Class Composition (Applicable Case(s) | Amount of Claim (Approx.) | Amount and Timing of Distributions | Impaired or Unimpaired |
|---|---|---|---|---|
| 1 | The Lender (Delaney Family Limited Liability Limited Partnership) for Prior DIP Loan and Second DIP Loan | $955,177.60 | *Allowance:* On the Effective Date, the DIP Claims[11] secured by the DIP Loans[12] shall be allowed in the aggregate amount of the Obligations owed under the DIP Loans.<br><br>*Treatment:* On the Effective Date, in full and final satisfaction of the DIP Claims, the DIP Clams shall be converted to New Equity as set forth herein, provided that the Prior DIP Loan included in the DIP | Impaired; Entitled to Vote |

---

[11] "DIP Claims" means, collectively, all Claims of the Lender against the Debtor arising under, derived from, or based upon the DIP Loans, Loan Agreement, the Prior DIP Order, or the Loan Order. Nothing in this Plan is intended to amend or modify any Obligations under the DIP Loans, the Loan Agreement, the Prior DIP Order or the Loan Order.

[12] "DIP Loans" means, collectively, the loans made by the Lender (and SBG with respect to the Prior DIP Loan) pursuant to the Loan Agreement, the Prior DIP Order, and the Loan Order. Nothing in this Plan is intended to amend or modify any Obligations under the DIP Loans, the Loan Agreement, the Prior DIP Order or the Loan Order.

| Class | Class Composition (Applicable Case(s) | Amount of Claim (Approx.) | Amount and Timing of Distributions | Impaired or Unimpaired |
|---|---|---|---|---|
| | | | Claims may, as allowed under the Prior DIP Order, be paid in whole or in part before the Effective Date. *See* Section IV.B.2 for details regarding conversion into New Equity in the Reorganized Debtor and post-Effective Date management of the Reorganized Debtor. | |
| 2 | Connect as collateral agent for itself and the other Prepetition Noteholders | $ 5,198,082.19 | *Allowance:* On the Effective Date, the Prepetition Secured Note Claims[13] shall be allowed in the aggregate amount of $5,198,082.19. *Treatment:* On the Effective Date, in full and final satisfaction of each Prepetition Secured Note Claim, the Prepetition Secured Note Claims shall be converted to New Equity as set forth herein. *See* Section IV.B.2 for details regarding conversion into New Equity in the Reorganized Debtor and post-Effective Date management of the Reorganized Debtor. | Impaired; Entitled to Vote |

---

[13] "Prepetition Secured Note Claims" means, collectively, all claims against the Debtor arising under, derived from, or based upon the Prepetition Secured Notes or the Prepetition Purchase Agreement, including any adequate protection claims under any orders authorizing the use of cash collateral, the Prior DIP Order, and the Loan Order.

b.    **NON-TAX PRE-PETITION PRIORITY CLAIMS.**

Other Priority Claims that are referred to in Bankruptcy Code Sections 507(a)(4), (5), (6), and (7) are required to be placed in classes.  Other Priority Claims are entitled to priority treatment under the Bankruptcy Code as each Holder of such an Allowed Other Priority Claim must receive cash on the Effective Date equal to the allowed amount of such Claim.  The Debtor's Schedules reflect no creditors as holding Other Priority Claims.  The following chart lists the single class of Other Priority Claims and shows the estimated amount of Other Priority Claims and the proposed treatment thereof:

| Class | Class Composition | Amount of Claims (Approx./Estimated) | | | | Amount and Timing of Distributions | Impaired or Unimpaired |
|---|---|---|---|---|---|---|---|
| 3 | Other Priority Claims | | | | | Allowed Other Priority Claims to be paid in full, as soon as practicable after the later of the Effective Date or the date the Other Priority Claim becomes an Allowed Other Priority Claim (unless otherwise agreed) | Unimpaired; Not Entitled to Vote |
| | | Creditor | Estimated Pririty Claim | Planned Objection | Notes | | |
| | | Christine A. Bergmann | $0.00 | Yes | No basis for priority. Wrongful termination claim | | |
| | | Cyrena Bierley | $462.00 | | | | |
| | | Robert Edward Novick | $13,500.00 | | | | |
| | | Sarah Plowden | $1,039.00 | | | | |
| | | SPAR PARTNERS, LLC. | $0.00 | Yes | No Basis for priority. | | |
| | | **TOTAL** | **$15,001.00** | | | | |

c.    **GENERAL UNSECURED CLAIMS.**

The following chart identifies the Plan's treatment of the class containing all of the Debtor's General Unsecured Claims (*see* the claims chart (the "Claims Chart") attached hereto as **Exhibit "4"** for detailed information about each General Unsecured Claim):

| Class | Class Composition | Amount of Claims (Approx.) | Amount and Timing of Distributions | Impaired or Unimpaired |
|---|---|---|---|---|
| 4 | General Unsecured Claims | $4,497,292.75 (see Claims Chart) | In full and final satisfaction of their Claims, Holders of Allowed General Unsecured Claims shall be paid the lesser of (1) cash in an amount equal to 10% of such Allowed General Unsecured Claim and (2) their pro rata share of $325,000.<br><br>Allowed General Unsecured Claims shall be paid as soon as practicable after the later of the Effective Date or the date the General Unsecured Claim becomes an Allowed General Unsecured Claim.<br><br>Estimated Distribution: 7% (*see* Liquidation Analysis) | Impaired; Entitled to Vote |

### d.    EQUITY INTEREST HOLDERS.

The following chart lists the single Class of Holders of Equity Interests and shows the proposed treatment thereof.

| Class | Class Composition | Amount and Timing of Distributions and Related Matters | Impaired or Unimpaired |
|---|---|---|---|
| 5 | Any and all Equity Interests in the Debtor as of the Effective Date | On the Effective Date, any and all existing Equity Interests in the Debtor shall be deemed to be cancelled.<br><br>No Holder of existing stock or other ownership interests in the Debtor shall receive a distribution under the Plan on account of such existing stock or other ownership interest. | Impaired; Conclusively Presumed to Have Rejected the Plan; Not Entitled to Vote |

26

**B.**    **MEANS OF EFFECTUATING AND IMPLEMENTING THE PLAN.**

    **1.**    **FUNDING FOR THE PLAN.**

The Plan will be funded with the Debtor's cash on hand on the Effective Date and the Equity Capital to be provided by the Lender.

    **2.**    **COMPOSITION OF THE DEBTOR AFTER THE EFFECTIVE DATE AND ISSUANCE OF NEW STOCK.**

After the Effective Date, the Debtor shall be known as the "Reorganized Debtor."

On the Effective Date, (1) the Reorganized Debtor shall issue new stock, (2) the Prior DIP Loan (if not then fully discharged) and the Second DIP Loan, including for interest, fees, and other charges, will be converted in their entirety into 600,000 shares Preferred Stock, (3) the Prepetition Secured Debt, including for interest, fees, and other charges will be converted in its entirety into 225,000 shares of voting Common Stock, with each of the Prepetition Noteholders granted its pro rata share of the 225,000 shares of voting Common Stock in full and final satisfaction of the Prepetition Secured Debt and any and all obligations under the Prepetition Purchase Agreement and Prepetition Security Agreement, and (4) 175,000 shares of nonvoting Common Stock shall be reserved for issuance pursuant to the Reorganized Debtor's equity incentive plan for management and other key employees, to be allocated by the Post-Confirmation Board at such times and in such a manner that the Post-Confirmation Board deems appropriate.

The terms of the foregoing stock in the Reorganized Debtor issued under the Plan on the Effective Date, shall be as follows: (1) the Preferred Stock issued to the Lender shall be convertible, participating Preferred Stock, having a liquidation preference equal to the Obligations under the Second DIP Loan as of the Conversion Date, plus any accrued dividends; the Preferred Stock will carry an annual 5% cumulative dividend, payable upon a liquidation or deemed liquidation event; and (2) upon a liquidation or deemed liquidation event, the Preferred Stock shall be entitled to its liquidation value set forth above.  The balance of any proceeds from the liquidation or deemed liquidation event shall be distributed pro rata to the holders of Preferred Stock and Common Stock.  However, to the extent that the net proceeds of a

liquidation or deemed liquidation event exceed an amount equal to five (5) times the EBITDA of the Reorganized Debtor for the most recently completed full fiscal quarter, such excess shall be distributed proportionately among the Prepetition Noteholders on the basis that their voting Common Stock represents an additional 7.5% of the issued and outstanding shares (with the dilutive effect of such 7.5% interest being borne ratably by all the other stockholders).

In connection with issuing stock in the Reorganized Debtor pursuant to the Plan, prior to the Effective Date, the Debtor's charter, bylaws, and/or operating agreement will be replaced with New Governance Documents, which shall provide, inter alia, for the following terms for the governance of the Reorganized Debtor: (1) the Reorganized Debtor shall be governed by the Post-Confirmation Board; by virtue of its ownership of a majority of the issued and outstanding shares of the Reorganized Debtor, the Lender shall have the right to determine the total number of members comprising the Post-Confirmation Board from time to time, and to elect all of the members of the Post-Confirmation Board, except that the Prepetition Noteholders shall have the right to elect one (1) member of the Post-Confirmation Board, so long as they collectively hold at least one-half (1/2) of the total number of shares of voting Common Stock initially issued to them. In addition, the Prepetition Noteholders shall have the right to one (1) Post-Confirmation Board observer seat, having customary board observer rights, so long as they collectively hold at least one-half (1/2) of the total number of shares of Voting Common Stock initially issued to them; (2) upon the Effective Date, Arie Gurevitch shall be the initial Chief Executive Officer ("CEO") of the Reorganized Debtor; (3) upon the Effective Date, Nick Bodkins shall be the Chief Brand Officer of the Reorganized Debtor, serve as a member of the Post-Confirmation Board, and report to the CEO; and (4) on or before the Effective Date, the Reorganized Debtor shall execute and deliver to the Lender and all other shareholders of the Reorganized Debtor the New Governance Documents acceptable to Lender and Connect, provided that such New

Governance Documents shall not become operative or effective unless and until the Plan becomes effective on the Effective Date.

### 3.    POST-CONFIRMATION MANAGEMENT AND COMPENSATION.

The Reorganized Debtor will be overseen by the following:

| Name | Title | Annual Compensation |
|---|---|---|
| Arie Gurevitch | CEO | TBD by Post-Confirmation Board |
| Clyde "Tripp" Rea | Chief Operating Officer | TBD by Post-Confirmation Board |
| Nick Bodkins | Chief Brand Officer | TBD by Post-Confirmation Board |

### 4.    DISBURSING AGENT.

If the Plan is confirmed pursuant to Section 1191(a), the Reorganized Debtor will act as the disbursing agent under the Plan.  If the Plan is confirmed pursuant to 11 U.S.C. § 1191(b), notwithstanding Local Bankruptcy Rule 3020-2(c)(1), the Reorganized Debtor (and not the Trustee) will act as the disbursing agent under the Plan and submit a quarterly report to the Trustee, within 45 days after the end of each quarter, detailing the payees and amounts of payment to creditors under the Plan with bank statements as proof of payment.  The Reorganized Debtor will not charge any disbursing agent fee for making the Plan distributions.

### 5.    OBJECTIONS TO CLAIMS.

The Debtor or the Reorganized Debtor, as the case may be, will file objections to all Claims that are inconsistent with the Debtor's books and records or are otherwise objectionable to the Debtor unless the Debtor deems the inconsistency to be insignificant.  With respect to Disputed Claims that are not resolved prior to the Effective Date, the Reorganized Debtor will have the authority, in its sole discretion, and in the reasonable exercise of its business judgment, to settle or compromise any Disputed Claim without further notice or Court approval.  As provided by Section 502(c) of the Bankruptcy Code, the Bankruptcy Court may estimate any contingent, unliquidated or Disputed Claim for purposes of confirmation of the Plan.  As of the

Effective Date, the Reorganized Debtor shall have the sole authority and standing to file any objections to Claims following the Effective Date the Plan, and the Court shall retain jurisdiction over the Debtor, the Reorganized Debtor, and the Bankruptcy Case to resolve such objections to Claims following the Effective Date the Plan. Nothing contained in the Plan shall constitute a waiver or release by the Debtor or the Reorganized Debtor of any rights of setoff or recoupment, or of any defense, the Debtor or the Reorganized Debtor may have with respect to any Claim. **The Claims Objection Deadline shall be 180 days after the Effective Date, unless extended prior to the expiration thereof by an order of the Bankruptcy Court.**

6. **AVOIDANCE ACTIONS, STRONG ARM POWERS, AND CAUSES OF ACTION.**

Except as otherwise provided herein, all avoidance actions and strong-arm powers of a trustee under Chapter 5 of the Bankruptcy Code shall irrevocably vest in the Debtor and be transferred in total to the Reorganized Debtor on the Effective Date, and, on and from the Effective Date, the Reorganized Debtor shall have the sole authority, control, and standing regarding the avoidance actions and strong-arm powers of a trustee under Chapter 5 of the Bankruptcy Code. It is not contemplated that the Debtor or Reorganized Debtor will pursue any avoidance actions under the Plan. However, the deadline for the Debtor or Reorganized Debtor to file any non-avoidance actions shall be the later of (1) the statute of limitations for such cause of action and (2) two years after the Petition Date. Regardless of whether they are listed on the Debtor's bankruptcy schedules of assets or specified in the Plan, all causes of action owned by the Debtor shall vest in the Reorganized Debtor unless specifically settled with such settlement approved by order of the Bankruptcy Court prior to confirmation of the Plan.

**7.      EMPLOYMENT OF PROFESSIONALS BY THE REORGANIZED DEBTOR AND PAYMENT OF PROFESSIONAL FEES AND EXPENSES AFTER THE EFFECTIVE DATE.**

On and after the Effective Date, the Reorganized Debtor shall have the right to employ and compensate professionals as the Reorganized Debtor determines is appropriate and to compensate any such professionals without the need for any further order of the Bankruptcy Court.

**8.      EXEMPTION FROM TRANSFER TAXES.**

Pursuant to Section 1146(a), the issuance, transfer or exchange of a security, or the making or delivery of an instrument of transfer under a plan confirmed under Section 1129, may not be taxed under any law imposing a stamp tax or similar tax.  Transfers under the Plan that are exempt from taxes under Section 1146(a) include all transfers by the Debtor after the commencement of the Bankruptcy Case in contemplation of the Plan but prior to the Effective Date.  The taxes from which such transfers are exempt include stamp taxes, recording taxes, sales and use taxes, transfer taxes, and other similar taxes.

**9.      DISTRIBUTIONS TO BE MADE PURSUANT TO THE PLAN.**

Except as otherwise agreed to by the Reorganized Debtor in writing, distributions to be made to Holders of Allowed Claims pursuant to the Plan may be delivered by regular mail, postage prepaid, to the address shown in the Debtor's Schedules, as they may from time to time be amended in accordance with Bankruptcy Rule 1009, or, if a different address is stated in a Proof of Claim duly filed with the Bankruptcy Court, to such address.  Checks issued to pay Allowed Claims shall be null and void if not negotiated within sixty (60) days after the date of issuance thereof.

**10.      CERTAIN SECURITIES LAW MATTERS.**

Pursuant to Section 1145, the offering, issuance, and distribution of the New Equity under the Plan in exchange for Allowed Claims will be exempt from, among other things, the

31

registration requirements of Section 5 of the Securities Act[14] and any other applicable federal, state, or local law requiring registration prior to the offering, issuance, distribution, or sale of securities.  The New Equity (a) will not be "restricted securities" as defined in Rule 144(a)(3) under the Securities Act, and (b) will be freely transferrable without registration under the Securities Act by any initial recipient thereof provided that: (i) the recipient (x) is not an "affiliate" of the Debtor or the Reorganized Debtor as defined in Rule 144(a)(1) under the Securities Act, (y) has not been such an "affiliate" within 90 days of such transfer, and (z) is not an entity that is an "underwriter" as defined in Section 2(a)(11) of the Securities Act and in Section 1145 of the Bankruptcy Code, and (ii) such trade or transfer is permitted under the restrictions, if any, on the transferability of such New Equity in the New Governance Documents, or in agreements or instruments applicable to holder of, such New Equity.

## 11.    <u>EXCULPATIONS AND RELEASES.</u>

To the maximum extent permitted by law, the Debtor, the Reorganized Debtor, SBG, the Lender, and Connect, and their respective management and professionals employed or retained by any of them, whether or not by Bankruptcy Court order, shall not have or incur any liability to any person or entity for any act taken or omission made in good faith in connection with or related to the formulation and implementation of the Plan, or a contract, instrument, release, or other agreement or document created in connection therewith, the solicitation of acceptances for or confirmation of the Plan, or the consummation and implementation of the Plan and the transactions contemplated therein, including the distribution of estate funds, except for willful misconduct or gross negligence.

## 12.    <u>INJUNCTIONS.</u>

<u>The Confirmation Order shall enjoin the prosecution, whether directly, derivatively or otherwise, of any claim, obligation, suit, judgment, damage, demand, debt, right, cause of action, equitable remedy, liability or interest released, discharged, stayed, or terminated pursuant to the Plan.  Except as provided in the Plan or the Confirmation Order, as of the</u>

---

[14] "<u>Securities Act</u>" means the Securities Act of 1933.

Effective Date of the Plan, all entities that have held, currently hold or may hold a Claim or other debt or liability or equitable remedy that was stayed or is discharged or an Interest or other right of an equity security Holder that is extinguished pursuant to the terms of the Plan are permanently enjoined from taking any of the following actions against: (I) (a) the Debtor or (b) the Reorganized Debtor, or (II) property of the Debtor or the Reorganized Debtor; on account of any such discharged Claims, debts or liabilities or extinguished interests or rights under the Plan: (i) commencing or continuing, in any manner or in any place, any action or other proceeding; (ii) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree or order; (iii) creating, perfecting or enforcing any lien or encumbrance; (iv) asserting a setoff, right of subrogation or recoupment of any kind against any debt, liability or obligation due to the Debtor; and (v) commencing or continuing any action in any manner, in any place, that does not comply with or is inconsistent with the provisions of the Plan.  By accepting distributions pursuant to the Plan, each Holder of an Allowed Claim receiving distributions pursuant to the Plan shall be deemed to have specifically consented to the injunctions set forth in this Section.  The injunction described in this paragraph (the "Injunction") is applicable to **all** creditors and parties in interest with respect to Claims or causes of action arising or existing prior to the Effective Date of the Plan.

All creditors and parties in interest who are presented with a copy of the Confirmation Order are charged with actual knowledge of the Injunction and with actual knowledge that the Injunction is applicable to said creditor and/or party in interest ("Actual Knowledge"), such that it is impossible for said creditor and/or party in interest to have a good faith belief that the Injunction does not apply to said creditor's and/or party in interest's claim or cause of action. Accordingly, any creditor and/or party in interest charged with such Actual Knowledge may be held in contempt for violating the Injunction, which contempt proceeding shall include the Reorganized Debtor's reasonable attorneys' fees and costs for enforcing the Injunction.

**13.**     <u>**EXECUTORY CONTRACTS AND UNEXPIRED LEASES.**</u>

To the extent not already assumed or rejected, on the Effective Date, the Debtor will assume the executory contracts and unexpired leases set forth on **Exhibit "5"** to the Plan with the cure amount set forth on that exhibit (the "Schedule of Potential Assumed Contracts"). On the Effective Date, all of the Debtor's remaining executory contracts and unexpired leases which have not previously been assumed or rejected by the Debtor shall be deemed to be rejected by the Debtor effective as of 11:59 p.m. PST on the Effective Date. **UNLESS AN EXECUTORY CONTRACT OR UNEXPIRED LEASE WAS PREVIOUSLY REJECTED PURSUANT TO AN ORDER OF THE COURT (WHICH SETS A BAR DATE FOR FILING A REJECTION CLAIM), THE BAR DATE FOR FILING A PROOF OF CLAIM BASED ON A CLAIM ARISING FROM THE REJECTION OF AN UNEXPIRED LEASE OR EXECUTORY CONTRACT WHICH IS REJECTED ON THE EFFECTIVE DATE WILL BE THIRTY (30) DAYS AFTER THE EFFECTIVE DATE (THE "<u>REJECTION CLAIMS BAR DATE</u>").** Any Claim resulting from the Debtor's rejection of an unexpired lease or executory contract (each a "<u>Rejection Claim</u>") will be barred if a Proof of Claim based on such rejection is not timely filed, unless the Court orders otherwise. Any Allowed Rejection Claim will constitute a Class 4 Allowed General Unsecured Claim. Any Allowed Rejection Claim will be subject to the limitations set forth in 11 U.S.C. § 502(b) and other applicable sections of the Bankruptcy Code.

**14.**     <u>**CHANGES IN RATES SUBJECT TO REGULATORY COMMISSION APPROVAL.**</u>

The Debtor is not subject to governmental regulatory commission approval of its rates.

**15.**     <u>**RETENTION OF JURISDICTION.**</u>

After confirmation of the Plan and occurrence of the Effective Date, in addition to jurisdiction which exists in any other court, the Bankruptcy Court shall retain such jurisdiction as is legally permissible including for the following purposes:

1.     To resolve any and all disputes regarding the operation and interpretation of the Plan and the Plan Confirmation Order;

34

2.      To determine the allowability, classification, or priority of Claims and Equity Interests upon objection by the Debtor or the Reorganized Debtor and to consider any objection to Claim or Equity Interest whether such objection is filed before or after the Effective Date;

3.      To determine the extent, validity and priority of any lien asserted against property of the Debtor and property of the Debtor's estate;

4.      To construe and take any action to enforce the Plan, the Plan Confirmation Order, and any other order of the Bankruptcy Court, issue such orders as may be necessary for the implementation, execution, performance, and consummation of the Plan, the Plan Confirmation Order, and all matters referred to in the Plan and the Plan Confirmation Order, and to determine all matters that may be pending before this Bankruptcy Court in this Bankruptcy Case on or before the Effective Date with respect to any person or entity related thereto;

5.      To determine any and all applications for allowance of compensation and reimbursement of expenses of professionals for the period on or before the Effective Date;

6.      To determine any request for payment of administrative expenses;

7.      To determine motions for the rejection, assumption, or assignment of executory contracts or unexpired leases filed before the Effective Date and the Allowance of any Claims resulting therefrom;

8.      To determine all applications, motions, adversary proceedings, contested matters, and any other litigated matters instituted during the pendency of the Bankruptcy Case whether before, on, or after the Effective Date;

9.      To determine such other matters and for such other purposes as may be provided in the Plan Confirmation Order;

10.     To modify the Plan under Section 1193 in order to remedy any apparent defect or omission in the Plan or to reconcile any inconsistency in the Plan so as to carry out its intent and purpose upon motion by the Reorganized Debtor;

11.     Except as otherwise provided in the Plan and the Plan Confirmation Order, to issue injunctions, to take such other actions or make such other orders as may be necessary or appropriate to restrain interference with the Plan or the Plan Confirmation Order, or the execution or implementation by any person or entity of the Plan or the Plan Confirmation Order;

12.     To issue such orders in aid of consummation of the Plan and the Plan Confirmation Order, notwithstanding any otherwise applicable nonbankruptcy law, with respect to any person or entity, to the fullest extent authorized by the Bankruptcy Code or Bankruptcy Rules;

13.     To enter a discharge, under 11 U.S.C. §§ 1192 and 1141(d), if applicable; and

14.     To enter a final decree closing the Bankruptcy Case.

## V.     EFFECT OF CONFIRMATION OF THE PLAN

### A.     DISCHARGE.

If the Plan is confirmed pursuant to Section 1191(a), the Debtor shall receive a discharge of its debts pursuant to Section 1141(d) on the Effective Date.  If the Plan is confirmed pursuant to Section 1191(b), the Debtor shall receive a discharge pursuant to Section 1192 and 1141(d), as soon as practicable after the Debtor has completed payment to the Classes for which the Plan was confirmed pursuant to Section 1191(b).

### B.     MODIFICATION OF THE PLAN.

The Debtor may modify the Plan at any time before confirmation, with the written consent of the Lender and Connect.  However, the Bankruptcy Court may require re-voting on the Plan if the Debtor modifies the Plan before confirmation in a manner that materially and adversely affects a creditor or interest holder that had voted in favor of the Plan.  If the Plan is confirmed pursuant to Section 1191(a), the Reorganized Debtor may seek to modify the Plan at any time after confirmation of the Plan so long as (1) the Plan has not been substantially

consummated, (2) circumstances warrant the modification, and (3) the Bankruptcy Court authorizes the proposed modifications after notice and a hearing.

If the Plan is confirmed pursuant to Section 1191(b), the Reorganized Debtor may seek to modify the Plan during the life of the Plan as fixed by the Court, so long as (1) the modified plan still meets the requirements of Section 1191(b), (2) circumstances warrant the modification, and (3) the Bankruptcy Court authorizes the proposed modifications after notice and a hearing.

## C.    POST-CONFIRMATION STATUS REPORTS.

Until a final decree closing the Bankruptcy Case is entered, the Reorganized Debtor shall file quarterly post-confirmation status reports with the Bankruptcy Court explaining what progress has been made toward consummation of the confirmed Plan.  Even if the Plan is confirmed pursuant to Section 1191(b), the Reorganized Debtor, and not the Trustee, will file the post-confirmation quarterly reports, notwithstanding Local Bankruptcy Rule 3020-2(c)(2)

The requirement of Local Bankruptcy Rule 3020-2(b)(2) for filing a report within 14 days of entry of the Plan Confirmation Report to set forth an anticipated substantial consummation date is waived.  If the Plan is confirmed pursuant to Section 1191(a), the projected substantial consummation date will be when the Administrative Claims are approved and paid.  If the Plan is confirmed pursuant to Section 1191(b), the projected substantial consummation date will be when Class 3 payments are completed.  Nothing in the Plan waives the requirement of Local Bankruptcy Rule 3020-2(b)(4) for filing a notice that substantial consummation of the Plan has occurred.

## D.    FINAL DECREE.

Once this estate has been fully administered as referred to in Bankruptcy Rule 3022, the Reorganized Debtor will file a motion with the Bankruptcy Court to obtain a final decree to close the Bankruptcy Case.  The Reorganized Debtor will be responsible for the timely payment of all fees incurred pursuant to 28 U.S.C. § 1930(a)(6).  Notwithstanding Local Bankruptcy

Rule 3022-2(c), if the Plan is confirmed pursuant to Section 1191(b), the Reorganized Debtor

(and not the Trustee) will file final reports, accounts, and motion for final decree.

Dated: July 5, 2024                              BOISSON, INC.

_____

NICOLAS BODKINS
Officer and Director

Presented By:

LEVENE, NEALE, BENDER, YOO & GOLUBCHIK L.L.P.

By:____*/s/ Todd M. Arnold*_____
     RON BENDER
     TODD M. ARNOLD
     YIHAN SHE
Attorneys for Debtor and Debtor in Possession

## DECLARATION OF NICOLAS BODKINS

I, Nicolas Bodkins, hereby declare as follows:

1.    I am over 18 years of age.  Except where otherwise stated, I have personal knowledge of the facts set forth below and, if called to testify, would and could competently testify thereto.

2.    I am an Officer and Director of Boisson Inc., the Chapter 11 debtor and debtor-in-possession in the above-captioned Chapter 11 bankruptcy case (the "Debtor").

3.    I have reviewed and am familiar with and am knowledgeable about the books and records of the Debtor, which books and records are made in the regular practice of business, kept in the regular course of business, made by a person with knowledge of the events and information related thereto, and made at or near the time of events and information recorded.

4.    I make this Declaration in support of the Plan to which this Declaration is attached.  Unless otherwise stated, all capitalized terms herein have the meanings ascribed to them in the Plan.

5.    A true and correct copy of the Debtor's Liquidation Analysis is attached hereto as **Exhibit "1."**

6.    A true and correct copy of the UCC Summary/Financing Statements is attached hereto as **Exhibit "2**."

7.    A true and correct copy of the Plan Projections attached hereto as **Exhibit "3."**

8.    A true and correct copy of the Claims Chart attached hereto as **Exhibit "4."**

9.    To the best of my knowledge, all of the facts set forth in the Plan and the exhibits thereto are true and correct.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge.

Executed on 5th day of July 2024.


_____
NICOLAS BODKINS

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**EXHIBIT "1"**
**[LIQUIDATION ANALYSIS]**

| ASSETS | Chapter 7 | Chapter 11 Plan | Notes |
|---|---|---|---|
| Cash | $60,000 | $60,000 | Same in either scenario. |
| Lender Equity Capital | $0 | $750,000 | Only in Chapter 11 scenario. Per the Plan, and consistent with the Loan Agreement, the Lender will convert its secured debt and provide Equity Capital sufficient to (1) pay allowed administrative and priority claims in full on the Effective Date, (2) pay the holders of allowed general unsecured claims the lesser of 10% of their allowed general unsecured claim and their *pro rata* share of $325,000 made available to the holders of allowed general unsecured claims on the Effective Date, and (3) fund operating capital needs consistent with the Plan, at the discretion of the Post-Confirmation Board. Therefore, in the Chapter 11 scenario, while certain assets do have listed values, payments on allowed claims will be made from cash on hand and from the Lender Equity Capital/Plan Contribution consistent with the foregoing. |
| Security Deposits | $0 | $0 | Listed in Items 7.1 and 7.2 of the Schedules and relate to real and personal property leases, but (1) all real and personal property leases have been, or will be, rejected [see Dkts. 19, 43, 60, and 87] and (2) the lessors have, or will, apply security deposits to reduce claims, with no surplus to the estate anticipated. |
| Accounts Receivable | $650,000 | $650,000 | Listed in Item 11 of the Schedules. Listed in the same amount, but it is likely the amount would be lower in a Chapter 7 scenario if a Chapter 7 Trustee was seeking collections, as opposed to the Debtor collecting accounts receivable in the ordinary course of ongoing operations. |
| Minority ownership interest in Pentire Drinks Limited | $104,012 | $0 | Listed in Item 15.1 of the Schedules. Amount is as listed in the Schedules. |
| Minority ownership interest in MYMO, Inc. (d/b/a Ghia) | $250,000 | $0 | Listed in Item 15.2 of the Schedules. Amount is as listed in the Schedules. |
| Minority ownership interest in Boisson Import, LLC | $0 | $0 | Listed in Item 15.3 of the Schedules. Amount is as listed in the Schedules. |
| All Owned Inventory | $200,000 | $200,000 | Listed in Item 22 of the Schedules. Listed in the same amount, but it is likely the amount would be lower in a Chapter 7 scenario if a Chapter 7 Trustee was liquidating assets in a forced sale, as opposed to the Debtor selling inventory in the ordinary course of ongoing operations. |
| 2022 Ford T350 VIN: 1FTBW9CK7NKA49958 | $0 | $0 | Same in either scenario. Listed in Item 47.1 of the Schedules. Vehicle surrendered to secured lender after the Petition Date. |
| 2022 Ford T350 VIN: 1FTBW9CK2NKA44070 | $0 | $0 | Same in either scenario. Listed in Item 47.2 of the Schedules. Vehicle surrendered to secured lender after the Petition Date. |
| Yale Forklift Model: ESC040AD | $0 | $0 | Same in either scenario. Listed in Item 47.3 of the Schedules. Vehicle surrendered to secured lender after the Petition Date. |
| 2017 Ford Transit Connect Cargo Van VIN: NM0LS7E7XH1296427 | $15,000 | $15,000 | Same in either scenario. Vehicle owned free and clear. |
| Leases of Personal Property | $0 | $0 | Same in either scenario. Listed as $0 in Item 50 of Schedule, and leased personal property surrendered to secured lessor after the Petition Date. |
| Leases of Real Property | $0 | $0 | Same in either scenario. Listed as $0 in Item 55.1- 55.9 of Schedules and all real property leases rejected/surrendered to landlords after the Petition Date. [ *See, e.g.*, Dkts. 19, 43, 60, and 87] |
| Registered Trademark: BOISSON Registration No.: 6998187 Serial No.: 90661538 | $0 | $0 | Listed in Item 60 of the Schedules. Amount is as listed in the Schedules. |
| Shopify instance/account | $0 | $0 | Listed in Item 60 of the Schedules. Amount is as listed in the Schedules. |
| Internet domain names and websites https://boisson.co/ | Unknown | Unknown | Listed in Item 61 of the Schedules. Amount is as listed in the Schedules. |
| Customer Email List | Unknown | Unknown | Listed in Item 63 of the Schedules. Amount is as listed in the Schedules. |
| Goodwill | Unknown | Unknown | Listed in Item 65 of the Schedules. Amount is as listed in the Schedules. |
| 2022 NOL | $0 | $0 | Listed in Item 72 of the Schedules. Chapter 7 Scenario = $0 because not transferable to asset purchaser. Chapter 11 Scenario = Listed at $0, because this asset will not be used to fund Plan. Instead, the Plan will be funded from (1) cash on hand on the Effective Date and (2) the Equity Capital being contributed by the Lender. |
| Various Insurance Policies | $0 | $0 | Listed in Item 70 of the Schedules. Amount is as listed in the Schedules. |
| Avoidance Actions | | | |
| Potential Preference Causes of Action | $143,544 | $143,544 | The Debtor believes that most, if not all, potential preference defendants may complete defenses. However, for purposes of illustration, the amount listed represents a 10% recovery on gross transfers to non-insiders during the 90-day lookback period and to insiders during the 1 year lookback period in the total amount of $1,435,442.09 |
| Fraudulent Transfers | N/A | N/A | The Debtor is not aware of any fraudulent transfer/obligation claims. |
| Estate Causes of Action (other than Avoidance Actions) | N/A | N/A | Other than potential preference action claims, the only litigation claims the Debtor is aware of would be to recover accounts receivable, but that is accounted for in the accounts receivable line-item above. |
| **Total** | **$1,422,556** | **$1,818,544** | |

| LIABILITIES | Chapter 7 | Chapter 11 Plan | Notes |
|---|---|---|---|
| Secured | $6,153,260 | $0 | As set forth in the Plan and the Claims Chart, the only valid secured claims the Debtor is aware of are (1) the senior secured claims of the Lender for the $455,177.60 loaned to the Debtor under the Prior DIP Loan and the additional $500,000 to be loaned to the Debtor under the Second DIP Loan prior to the projected Effective Date, and (3) the $5,198,082 secured claim asserted by Connect as collateral agent for itself and the other Prepetition Noteholders under the Prepetition Security Agreement, for a total of $6,153,259.60. Chapter 7 Scenario = $6.153 million because debt is not converted to New Equity, which only occurs in a Chapter 11 scenario under the Plan. **Chapter 11 Scenario = Listed at $0, because, pursuant to the Loan Agreement, under the Plan, the secured debt of Connect, as collateral agent for itself and the other Prepetition Noteholders under the Prepetition Security Agreementthe, and Lender is converted to New Equity as set forth in the Plan.** |
| Estimated Subchapter V Trustee Fees | $10,056 | $10,056 | *Per Subchapter V Trustee's Estimated Fees And Expenses For Purposes Of Plan Confirmation* [Dkt. 120]. **Chapter 11 = Paid in full from cash and the Lender Equity Capital. *See note above re Lender Plan Contribution Asset.*** |
| Estimated Chapter 11 Professional Administrative Claims | $347,422 | $342,501 | LNBYG, the Debtor's Bankruptcy Counsel: Chapter 7 Scenario = $220,922, which is the estimated amount of LNBYG' s outstanding fees and expenses as of July 5, 2022 without any agreed fee reduction being provided if the Plan is confirmed. Chapter 11 Scenario = $216,001, usually the Chapter 11 amount would be higher. Here, the amount is lower, because, with certain exceptions, LNBYG has agreed with the Lender that LNBYG would reduce its fees (not expenses) to reduce the New Equity the Lender is required to contribute on or near the Effective Date to make payments on allowed administrative, priority, and general unsecured claims as required by the Plan. Resolution, the Debtor's Financial Advisor and Sales Agent: $126,500 **Chapter 11 = Paid in full from cash and the Lender Equity Capital Asset.** |
| Estimated Chapter 11 Non-Professional Administrative Claims | $94,482 | $94,482 | **Chapter 11 = Paid in full from cash and the Lender Equity Capital. *See note above re Lender Equity Capital Asset.*** |
| Estimated Chapter 7 Administrative Claims for fees payable under Section 326(a). | $55,878 | N/A | |
| Estimated Chapter 7 Administrative Claims for professional fees and expenses incurred by professionals retained by the Chapter 7 Trustee to familiarize themselves with case facts, liquidate assets, perform any motion work, analyze and pursue any litigation claims, and advise the Trustee with respect to the foregoing | $100,000 | N/A | |
| Estimated Priority Tax Claims and Other Priority Claims | $27,568 | $27,568 | **Chapter 11 = Paid in full from cash and the Lender Equity Capital. *See note above re Lender Equity Capital Asset.*** |
| **Total** | **$6,788,665** | **$474,607** | **Chapter 11 = Paid in full from cash and the Lender Equity Capital. *See note above re Lender Equity Capital Asset.*** |
| | | | |
| **Balance Available for Allowed General Unsecured Claims** | **($5,366,109)** | **$325,000** | **Chapter 11 = Per the Plan, and consistent with the Loan Agreement, the Lender will, inter alia, provide Equity Capital sufficient to pay the holders of allowed general unsecured claims the lesser of 10% of their allowed general unsecured claim and their pro rata share of $325,000 made available to the holders of allowed general unsecured claims on the Effective Date.** |
| | | | |
| **Estimated Allowed Class General Unsecured Claims** | **$4,497,293** | **$4,497,293** | |
| | | | |
| **Estimated Percent Paid on Allowed General Unsecured Claims** | **0%** | **7%** | |

Exhibit 1
(Liquidation Analysis)

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**EXHIBIT "2"**
**[UCC]**



# Delaware

*Page 1*

### The First State

CERTIFICATE

SEARCHED MARCH 28, 2024 AT 6:26 P.M.
FOR DEBTOR, BOISSON, INC.

1 OF 5           FINANCING STATEMENT              20223717790

   EXPIRATION DATE: 05/03/2027
DEBTOR:       BOISSON, INC.

   11762 SAN VINCENTE BOULEVARD      ADDED    05-03-22

   LOS ANGELES, CA US 90049

SECURED:      11770 SVB, LLC

   11777 SAN VINCENTE BOULEVARD,     ADDED    05-03-22

   SUITE 550

   LOS ANGELES, CA US 90049


     F I L I N G   H I S T O R Y

 20223717790    FILED 05-03-22   AT 11:27 A.M.   FINANCING STATEMENT


  2 OF 5            LEASE                20228097271

   EXPIRATION DATE: 09/28/2027
DEBTOR:       BOISSON INC.

   177 COURT ST                  ADDED    09-28-22



*Jeffrey W. Bullock, Secretary of State*



# Delaware

*Page 2*

## The First State

```
            BROOKLYN, NY US 11201

SECURED:    FARNAM STREET FINANCIAL, INC.

            5850 OPUS PARKWAY                     ADDED    09-28-22

            SUITE 240

            MINNETONKA, MN US 55343
```

### F I L I N G   H I S T O R Y

```
    20228097271    FILED 09-28-22    AT 11:11 A.M.   LEASE
```

```
    3 OF 5          FINANCING STATEMENT              20229961590
                EXPIRATION DATE: 12/02/2027
DEBTOR:     BOISSON INC.

            177 COURT ST                          ADDED    12-02-22

            BROOKLYN, NY US 11201

SECURED:    HYG FINANCIAL SERVICES, INC.

            PO BOX 35701                          ADDED    12-02-22

            BILLINGS, MT US 59107
```

### F I L I N G   H I S T O R Y



Jeffrey W. Bullock, Secretary of State

20256327657-UCC11
SR# 20241217742
You may verify this certificate online at corp.delaware.gov/authver.shtml

Authentication: 203140122
Date: 03-28-24

# Delaware

*Page 3*

## The First State

*20229961590    FILED 12-02-22    AT 11:14 A.M.    FINANCING STATEMENT*

*4 OF 5              FINANCING STATEMENT                    20235382014*

*EXPIRATION DATE: 08/04/2028*
DEBTOR:      BOISSON INC.

*177 COURT STREET                        ADDED    08-04-23*

*BROOKLYN, NY US 11201*

SECURED:      *CONNECT VENTURES I, L.P., AS COLLATERAL AGENT*

*1954 GREENSPRING DRIVE, SUITE 600      ADDED    08-04-23*

*TIMONIUM, MD US 21093*

*F I L I N G   H I S T O R Y*

*20235382014    FILED 08-04-23    AT 6:41 P.M.    FINANCING STATEMENT*

*5 OF 5              FINANCING STATEMENT                    20241975810*

*EXPIRATION DATE: 03/26/2029*
DEBTOR:      BOISSON INC.

*251 LITTLE FALLS DRIVE                    ADDED    03-26-24*

*WILMINGTON, DE US 19808*



Jeffrey W. Bullock, Secretary of State

# Delaware

*Page 4*

## The First State

SECURED:      OUIBY, INC.

PO BOX 21584                              ADDED     03-26-24

BOULDER, CO US 80308


*F I L I N G   H I S T O R Y*

*20241975810      FILED 03-26-24    AT 7:31 A.M.    FINANCING STATEMENT*


*E N D   O F   F I L I N G   H I S T O R Y*

*THE UNDERSIGNED FILING OFFICER HEREBY CERTIFIES THAT THE ABOVE
LISTING IS A RECORD OF ALL PRESENTLY EFFECTIVE FINANCING STATEMENTS,
LAPSED FINANCING STATEMENTS, FEDERAL TAX LIENS AND UTILITY SECURITY
INSTRUMENTS FILED IN THIS OFFICE WHICH NAME THE ABOVE DEBTOR, BOISSON,
INC. AS OF MARCH 18, 2024 AT 11:59 P.M.*



Jeffrey W. Bullock, Secretary of State

# UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS

| | |
|---|---|
| **A. NAME & PHONE OF CONTACT AT FILER (optional)**<br>RENEE LUKE (845) 425-0077 | |
| **B. E-MAIL CONTACT AT FILER (optional)**<br>SEARCHES@VCORPSERVICES.COM | |
| **C. SEND ACKNOWLEDGMENT TO:** (Name and Address)<br><br>VCORP SERVICES, LLC<br>25 ROBERT PITT DRIVE, SUITE 204<br>MONSEY, NY 10952<br>US | **Delaware Department of State**<br>**U.C.C. Filing Section**<br>**Filed: 11:27 AM 05/03/2022**<br>**U.C.C. Initial Filing No: 2022 3717790**<br><br>**Service Request No:  20221743801** |

**THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY**

1. **DEBTOR'S NAME:** Provide only one Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| | 1a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|---|
| OR | BOISSON, INC. | | | | |
| | 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| 1c. MAILING ADDRESS<br>11762 SAN VINCENTE BOULEVARD | | CITY<br>LOS ANGELES | STATE<br>CA | POSTAL CODE<br>90049 | COUNTRY<br>US |

2. **DEBTOR'S NAME:** Provide only one Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| | 2a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|---|
| OR | | | | | |
| | 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| 2c. MAILING ADDRESS | | CITY | STATE | POSTAL CODE | COUNTRY |

3. **SECURED PARTY'S NAME** (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY): Provide only one Secured Party name (3a or 3b)

| | 3a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|---|
| OR | 11770 SVB, LLC | | | | |
| | 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| 3c. MAILING ADDRESS<br>11777 SAN VINCENTE BOULEVARD,, SUITE 550 | | CITY<br>LOS ANGELES | STATE<br>CA | POSTAL CODE<br>90049 | COUNTRY<br>US |

4. **COLLATERAL:** This financing statement covers the following collateral:
ALL STOCK IN TRADE AND DEBTOR'S TRADE FIXTURES (WHICH INCLUDES TRADE FIXTURES WHICH ARE  NOT ATTACHED TO OR INTEGRATED WITH IMPROVEMENTS TO THE "PREMISES" (AS DEFINED BELOW)  BUT SHALL NOT INCLUDE IMPROVEMENTS TO THE PREMISES MADE BY DEBTOR OR FIXTURES,  INCLUDING TRADE FIXTURES, ATTACHED TO OR INTEGRATED WITH IMPROVEMENTS TO THE PREMISES),  FURNITURE, EQUIPMENT AND OTHER PERSONAL PROPERTY NOW OR HEREAFTER LOCATED IN THE PREMISES AND ALL PROCEEDS THEREFROM. "PREMISES" MEANS THOSE CERTAIN PREMISES LOCATED AT 11762 SAN VINCENTE BOULEVARD, LOS ANGELES, CALIFORNIA 90049, WHICH PREMISES ARE LEASED TO DEBTOR, AS TENANT, BY SECURED PARTY, AS LANDLORD, PURSUANT TO THAT CERTAIN RESTAURANT LEASE DATED AS OF MAY 2, 2022.

5. Check only if applicable and check only one box: Collateral is ☐ held in a Trust (see UCC1Ad, item 17 and Instructions) ☐ being administered by a Decedent's Personal Representative

6a. Check only if applicable and check only one box:
☐ Public-Finance Transaction ☐ Manufactured-Home Transaction ☐ A Debtor is a Transmitting Utility

6b. Check only if applicable and check only one box:
☐ Agricultural Lien ☐ Non-UCC Filing

7. ALTERNATIVE DESIGNATION (if applicable): ☐ Lessee/Lessor ☐ Consignee/Consignor ☐ Seller/Buyer ☐ Bailee/Bailor ☐ Licensee/Licensor

8. OPTIONAL FILER REFERENCE DATA:

# UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS

| | |
|---|---|
| **A. NAME & PHONE OF CONTACT AT FILER (optional)**<br>STEVE MORGAN (952) 908-0850 | **Delaware Department of State**<br>**U.C.C. Filing Section**<br>**Filed: 11:11 AM 09/28/2022**<br>**U.C.C. Initial Filing No: 2022 8097271** |
| **B. E-MAIL CONTACT AT FILER (optional)**<br>RJENSEN@FARNAMSTREET.NET | |
| **C. SEND ACKNOWLEDGMENT TO:   (Name and Address)**<br>FARNAM STREET FINANCIAL, INC.<br>5850 OPUS PARKWAY<br>SUITE 240<br>MINNETONKA, MN 55343 | **Service Request No:   20223638970** |

**THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY**

1. **DEBTOR'S NAME:** Provide only one Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| | | | | | |
|---|---|---|---|---|---|
| 1a. ORGANIZATION'S NAME<br>BOISSON INC. | | | | | |
| 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| 1c. MAILING ADDRESS<br>177 COURT ST | CITY<br>BROOKLYN | STATE<br>NY | POSTAL CODE<br>11201 | | COUNTRY<br>US |

2. **DEBTOR'S NAME:** Provide only one Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| | | | | | |
|---|---|---|---|---|---|
| 2a. ORGANIZATION'S NAME | | | | | |
| 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | | COUNTRY |

3. **SECURED PARTY'S NAME** (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY): Provide only one Secured Party name (3a or 3b)

| | | | | | |
|---|---|---|---|---|---|
| 3a. ORGANIZATION'S NAME<br>FARNAM STREET FINANCIAL, INC. | | | | | |
| 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| 3c. MAILING ADDRESS<br>5850 OPUS PARKWAY, SUITE 240 | CITY<br>MINNETONKA | STATE<br>MN | POSTAL CODE<br>55343 | | COUNTRY<br>US |

4. **COLLATERAL:** This financing statement covers the following collateral:
**See Attached Addendum No. 1   Lease Agreement No. BO092622**
**Collateral Description - please see attached**

5. Check only if applicable and check only one box: Collateral is ☐ held in a Trust (see UCC1Ad, item 17 and Instructions) ☐ being administered by a Decedent's Personal Representative

6a. Check only if applicable and check only one box:
☐ Public-Finance Transaction ☐ Manufactured-Home Transaction ☐ A Debtor is a Transmitting Utility

6b. Check only if applicable and check only one box:
☐ Agricultural Lien ☐ Non-UCC Filing

7. ALTERNATIVE DESIGNATION (if applicable): ☑ Lessee/Lessor ☐ Consignee/Consignor ☐ Seller/Buyer ☐ Bailee/Bailor ☐ Licensee/Licensor

8. OPTIONAL FILER REFERENCE DATA:
BO092622

FILING OFFICE COPY — UCC FINANCING STATEMENT (Form UCC1) (Rev. 04/20/11)

International Association of Commercial Administrators

## ADDENDUM NO. 1

This transaction is a true lease and is not intended by the parties as a secured transaction. Filing is only intended to make the true lease a matter of public record. Farnam Street Financial, Inc. is the owner of all the equipment contained on this filing and any and all other equipment now or hereafter the subject of any lease agreement or lease schedule by and between the parties and all accessories, attachments, additions, and any substitutions and/or replacement of the equipment contained on this filing or any lease agreement or lease schedule between the parties. The lessee has no rights, express or implied, to sell, exchange, encumber, or otherwise dispose of any equipment contained on this filing or any lease agreement or lease schedule by and between the parties. The parties agree that this financing statement covers any and all equipment now or hereafter the subject of any lease agreement or lease schedule by and between the parties, including, but not limited to equipment contained on or subject to Lease Agreement Number BO092622 or any lease schedule executed pursuant thereto, together with all substitutions, replacements, accessions, process, rent, revenue, insurance, and proceeds related to the equipment contained on this filing or any lease agreement or lease schedule by and between the parties.

**Every Term is Agreed to and Accepted:**
**FARNAM STREET FINANCIAL, INC.**
**"LESSOR"**

By: *Steven Morgan*

Print Name: Steve Morgan

Title: President

Date: Sep 27, 2022

**Every Term is Agreed to and Accepted:**
**BOISSON INC.**
**"LESSEE"**

By: *Alexander Hudson*
Alexander Hudson (Sep 27, 2022 13:46 EDT)

Print Name: Alexander Hudson

Title: Chief Operating Officer

Date: Sep 27, 2022

# BO092622 Lease Documents

Final Audit Report                                               2022-09-27

| | |
|---|---|
| Created: | 2022-09-26 |
| By: | Martha Hartfiel (mhartfiel@farnamstreet.net) |
| Status: | Signed |
| Transaction ID: | CBJCHBCAABAAC1mZUgceCeOKFeBqoRwBY5Xz2ypV0zcM |

## "BO092622 Lease Documents" History

⬑ Document created by Martha Hartfiel (mhartfiel@farnamstreet.net)
   2022-09-26 - 7:05:50 PM GMT- IP address: 65.141.55.34

⬑ Document emailed to alex@boisson.nyc for signature
   2022-09-26 - 7:11:45 PM GMT

⬑ Email viewed by alex@boisson.nyc
   2022-09-27 - 3:51:30 PM GMT- IP address: 71.167.92.127

⬑ Signer alex@boisson.nyc entered name at signing as Alexander Hudson
   2022-09-27 - 5:46:39 PM GMT- IP address: 71.167.92.127

⬑ Document e-signed by Alexander Hudson (alex@boisson.nyc)
   Signature Date: 2022-09-27 - 5:46:41 PM GMT - Time Source: server- IP address: 71.167.92.127

⬑ Document emailed to Steve Morgan (smorgan@farnamstreet.net) for signature
   2022-09-27 - 5:46:43 PM GMT

⬑ Email viewed by Steve Morgan (smorgan@farnamstreet.net)
   2022-09-27 - 7:38:22 PM GMT- IP address: 65.141.55.34

⬑ Document e-signed by Steve Morgan (smorgan@farnamstreet.net)
   Signature Date: 2022-09-27 - 7:38:55 PM GMT - Time Source: server- IP address: 65.141.55.34

⬑ Agreement completed.
   2022-09-27 - 7:38:55 PM GMT

**Adobe Acrobat Sign**

# UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS

**A. NAME & PHONE OF CONTACT AT FILER (optional)**
CSC 800-858-5294

**B. E-MAIL CONTACT AT FILER (optional)**
FILINGDEPT@CSCINFO.COM

**C. SEND ACKNOWLEDGMENT TO:  (Name and Address)**

801 ADLAI STEVENSON DR [244945189]

SPRINGFIELD, IL 62703

US

Delaware Department of State
U.C.C. Filing Section
Filed: 11:14 AM 12/02/2022
U.C.C. Initial Filing No: 2022 9961590

Service Request No:  20224157958

**THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY**

1. **DEBTOR'S NAME:** Provide only one Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| | | | | |
|---|---|---|---|---|
| 1a. ORGANIZATION'S NAME  BOISSON INC. | | | | |
| 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| 1c. MAILING ADDRESS  177 COURT ST | CITY  BROOKLYN | STATE  NY | POSTAL CODE  11201 | COUNTRY  US |

2. **DEBTOR'S NAME:** Provide only one Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| | | | | |
|---|---|---|---|---|
| 2a. ORGANIZATION'S NAME | | | | |
| 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |

3. **SECURED PARTY'S NAME** (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY): Provide only one Secured Party name (3a or 3b)

| | | | | |
|---|---|---|---|---|
| 3a. ORGANIZATION'S NAME  EYG FINANCIAL SERVICES, INC. | | | | |
| 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| 3c. MAILING ADDRESS  PO BOX 35701 | CITY  BILLINGS | STATE  MT | POSTAL CODE  59107 | COUNTRY  US |

4. **COLLATERAL:** This financing statement covers the following collateral:
All of the equipment now or hereafter leased by Lessor to Lessee; and all accessions, additions, replacements, and substitutions thereto and therefore, and all proceeds including insurance proceeds thereof.

5. Check only if applicable and check only one box: Collateral is ☐ held in a Trust (see UCC1Ad, item 17 and Instructions) ☐ being administered by a Decedent's Personal Representative

6a. Check only if applicable and check only one box:
☐ Public-Finance Transaction  ☐ Manufactured-Home Transaction  ☐ A Debtor is a Transmitting Utility

6b. Check only if applicable and check only one box:
☐ Agricultural Lien  ☐ Non-UCC Filing

7. ALTERNATIVE DESIGNATION (if applicable): ☑ Lessee/Lessor ☐ Consignee/Consignor ☐ Seller/Buyer ☐ Bailee/Bailor ☐ Licensee/Licensor

8. OPTIONAL FILER REFERENCE DATA:
400-0006602-000

FILING OFFICE COPY — UCC FINANCING STATEMENT (Form UCC1) (Rev. 04/20/11)

International Association of Commercial Administrators

# UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS

| A. NAME & PHONE OF CONTACT AT FILER (optional) |
|---|
| WK LIEN SOLUTIONS 800-331-3282 |

| B. E-MAIL CONTACT AT FILER (optional) |
|---|
| UCCFILINGRETURN@WOLTERSKLUWER.COM |

C. SEND ACKNOWLEDGMENT TO:  (Name and Address)

P.O. BOX 29071

GLENDALE, CA 91209-9071

US

**Delaware Department of State**
**U.C.C. Filing Section**
**Filed: 06:41 PM 08/04/2023**
**U.C.C. Initial Filing No: 2023 5382014**

**Service Request No:  20233174381**

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. **DEBTOR'S NAME:** Provide only one Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 1a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| BOISSON INC. | | | | |
| 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 177 COURT STREET | BROOKLYN | NY | 11201 | US |

2. **DEBTOR'S NAME:** Provide only one Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 2a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |

3. **SECURED PARTY'S NAME** (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY):  Provide only one Secured Party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| CONNECT VENTURES I, L.P., AS COLLATERAL AGENT | | | | |
| 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 1954 GREENSPRING DRIVE, SUITE 600 | TIMONIUM | MD | 21093 | US |

4. COLLATERAL: This financing statement covers the following collateral:
**Collateral Description - please see attached**

5. Check only if applicable and check only one box: Collateral is ☐ held in a Trust (see UCC1Ad, item 17 and Instructions) ☐ being administered by a Decedent's Personal Representative

6a. Check only if applicable and check only one box:    6b. Check only if applicable and check only one box:
☐ Public-Finance Transaction   ☐ Manufactured-Home Transaction   ☐ A Debtor is a Transmitting Utility    ☐ Agricultural Lien   ☐ Non-UCC Filing

7. ALTERNATIVE DESIGNATION (if applicable): ☐ Lessee/Lessor ☐ Consignee/Consignor ☐ Seller/Buyer ☐ Bailee/Bailor ☐ Licensee/Licensor

8. OPTIONAL FILER REFERENCE DATA:
DE-0-94381293-67190887

FILING OFFICE COPY — UCC FINANCING STATEMENT (Form UCC1) (Rev. 04/20/11)    International Association of Commercial Administrators

**See Exhibit A attached hereto and by this reference incorporated herein for a description of the Collateral.**

## EXHIBIT A TO UCC-1 FINANCING STATEMENT

**DEBTOR:**               **BOISSON INC.**

**SECURED PARTY:**      **CONNECT VENTURES I, L.P., AS COLLATERAL AGENT**

All of the Debtor's right, title and interest in and to the following personal property (the "Collateral"):

All Goods, Accounts, Equipment, Inventory, contract rights or rights to payment of money, leases, license agreements, franchise agreements, General Intangibles (including intellectual property), commercial tort claims, Documents, Instruments, Chattel Paper (whether tangible or electronic), cash, Deposit Accounts, certificates of deposit, fixtures, Letter-of-Credit Rights, Securities, Securities Accounts, Securities Entitlements and all other Investment Property, Supporting Obligations and Financial Assets, whether now owned or hereafter acquired, wherever located, and all of the Debtor's books and records relating to the foregoing, and any and all rights, rights and interests in any of the above and all substitutions for, additions, attachments, accessories, accessions and improvements to and replacements, products, proceeds and insurance proceeds of any or all of the foregoing.

Notwithstanding the foregoing, the Collateral does not include (a) any interest of the Debtor as a lessee or sublessee under a real property lease; (b) any rights or interest in any contract, lease, permit, license, or license agreement covering real or personal property, or in any equipment or property subject to a purchase money security interest, capitalized lease obligation or similar arrangement, if under the terms of such contract, lease, permit, license, or license agreement or purchase money arrangement, capitalized lease obligation or similar arrangement, or applicable law with respect thereto, the grant of a security interest or lien therein is prohibited or restricted as a matter of law or under the terms of such contract, lease, permit, license, or license agreement, or would invalidate any such contract, lease, permit, license or license agreement, and such prohibition or restriction has not been waived or the consent of the other party to such contract, lease, permit, license, or license agreement has not been obtained; and (c) any United States intent-to-use trademark or service mark applications to the extent that, and solely during the period in which, the grant of a security interest therein would impair the validity or enforceability of a registration issuing from such intent-to-use trademark or service mark applications under applicable federal law.

Terms in this Exhibit not otherwise defined shall have the meanings set forth in the Uniform Commercial Code as the same is, from time to time, in effect in the State of Delaware (the "UCC"; provided, however, that, in the event that, by reason of mandatory provisions of any applicable law, any of the attachment, perfection, or priority of the Collateral Agent's security interest in any Collateral is governed by the Uniform Commercial Code of a jurisdiction other than the State of Delaware, "UCC" shall mean the Uniform Commercial Code as in effect in such other jurisdiction for purpose of the provisions hereof relating to such attachment, perfection, or priority and for purpose of the definitions related to or otherwise used in such provisions).

# UCC FINANCING STATEMENT

FOLLOW INSTRUCTIONS

**A. NAME & PHONE OF CONTACT AT FILER (optional)**
ONLINE DEPT. 888-507-4593

**B. E-MAIL CONTACT AT FILER (optional)**
ONLINE@FICOSO.COM

**C. SEND ACKNOWLEDGMENT TO:  (Name and Address)**

Delaware Department of State
U.C.C. Filing Section
Filed: 07:31 AM 03/26/2024
U.C.C. Initial Filing No: 2024 1975810

Service Request No:  20241162692

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

**1. DEBTOR'S NAME:** Provide only one Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| | | | | |
|---|---|---|---|---|
| 1a. ORGANIZATION'S NAME  BOISSON INC. | | | | |
| 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| 1c. MAILING ADDRESS  251 LITTLE FALLS DRIVE | CITY  WILMINGTON | STATE  DE | POSTAL CODE  19808 | COUNTRY  US |

**2. DEBTOR'S NAME:** Provide only one Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| | | | | |
|---|---|---|---|---|
| 2a. ORGANIZATION'S NAME | | | | |
| 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |

**3. SECURED PARTY'S NAME** (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY): Provide only one Secured Party name (3a or 3b)

| | | | | |
|---|---|---|---|---|
| 3a. ORGANIZATION'S NAME  QUIBY, INC. | | | | |
| 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| 3c. MAILING ADDRESS  PO BOX 21584 | CITY  BOULDER | STATE  CO | POSTAL CODE  80308 | COUNTRY  US |

**4. COLLATERAL:** This financing statement covers the following collateral:
This filing shall cover the following consignment inventory and proceeds from the same    Leitz - Eins Zwei Zero Sparkling Non-Alcoholic Riesling Can (12 oz.) 2,907 Units  Pentire - Pentire Adrift & Tonic - Non-Alcoholic Can (12 oz.) 612 Units  Pentire - Pentire Margarita - Pre-Mixed Non-Alcoholic Cocktail (200 ml) 459 Units  Pentire Seaward & Tonic Non-Alcoholic Can (12 oz.) 459 Units  Leitz - Eins Zwei Zero - Non-Alcoholic Sparkling Rose Can (250ml) 3,672 Units  Kolonne Null - Cuve Blanc Sparkling 375ml- Non-Alcoholic Wine 1,377 Units  Kolonne Null - Riesling White Wine 2022 750ml- Non-Alcoholic Wine 918 Units  Leitz Non-Alcoholic Eins Zwei Chardonnay (750ml | 25.4oz)AND Leitz - Eins Zwei Zero Riesling Non-Alcoholic White Wine (750 ml/25.4oz) 5,661 Units  Leitz X Boisson Blanc Non-Alcoholic Wine (750ml | 25.4oz) 1,989 Units  Leitz - Eins Zwei Zero Non-Alcoholic Sparkling Blanc De Blancs Wine (750ml | 25.4oz) 765 Units  Kolonne Null Cuve Rouge No. 02 Non-Alcoholic Red Wine (750ml | 25.4oz) 918 Units  Pentire - Pentire Margarita - Pre-Mixed Non-Alcoholic Cocktail (200ml) AND Pentire - Adrift - Non-Alcoholic Distilled Spirit 200ml 765 Units  Kolonne Null Cuve Rouge N03 Edition Le Grand Verdus Non-Alcoholic Wine (750ml | 25.4oz) AND Kolonne Null - Cuve Blanc Sparkling 750ml- Non-Alcoholic Wine 2,601 Units  Leitz NV Zero Point Five Non-Alcoholic Pinot Noir (750ml | 25.4oz) AND Kolonne Null - Ros Sparkling 2021 750ml- Non-Alcoholic Wine 6,426 Units  Leitz - Eins Zwei Zero Sparkling Riesling

**5.** Check only if applicable and check only one box: Collateral is ☐ held in a Trust (see UCC1Ad, item 17 and instructions) ☐ being administered by a Decedent's Personal Representative

**6a.** Check only if applicable and check only one box:   ☐ Public-Finance Transaction   ☐ Manufactured-Home Transaction   ☐ A Debtor is a Transmitting Utility   **6b.** Check only if applicable and check only one box:   ☐ Agricultural Lien   ☐ Non-UCC Filing

**7. ALTERNATIVE DESIGNATION (if applicable):**   ☐ Lessee/Lessor   ☑ Consignee/Consignor   ☐ Seller/Buyer   ☐ Bailee/Bailor   ☐ Licensee/Licensor

**8. OPTIONAL FILER REFERENCE DATA:**
[UCC1-1342629] UCC1 - 5965

International Association of Commercial Administrators

FILING OFFICE COPY — UCC FINANCING STATEMENT (Form UCC1) (Rev. 04/20/11)

# UCC FINANCING STATEMENT **ADDENDUM**

FOLLOW INSTRUCTIONS

**9. NAME OF FIRST DEBTOR:** Same as line 1a or 1b on Financing Statement; if line 1b was left blank because Individual Debtor name did not fit, check here ☐

9a. ORGANIZATION'S NAME

OR

9b. INDIVIDUAL'S SURNAME

FIRST PERSONAL NAME

ADDITIONAL NAME(S)/INITIAL(S)                    SUFFIX

**THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY**

**10. DEBTOR'S NAME:** Provide (10a or 10b) only one additional Debtor name or Debtor name that did not fit in line 1b or 2b of the Financing Statement (Form UCC1) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name) and enter the mailing address in line 10c

10a. ORGANIZATION'S NAME

OR

10b. INDIVIDUAL'S SURNAME

INDIVIDUAL'S FIRST PERSONAL NAME

INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S)                    SUFFIX

| 10c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | | | | |

**11.** ☐ **ADDITIONAL SECURED PARTY'S NAME** or ☐ **ASSIGNOR SECURED PARTY'S NAME:** Provide only one name (11a or 11b)

11a. ORGANIZATION'S NAME

OR

| 11b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| | | | |

| 11c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | | | | |

**12. ADDITIONAL SPACE FOR ITEM 4 (Collateral)**
Non-Alcoholic White Wine( 750ml | 25.4oz) AND Leitz - Eins Zwei Zero Sparkling Rose Non-Alcoholic Wine (750ml | 25.4oz) 3,519 Units  Lautus Savvy Red - Non-Alcoholic Wine (750ml | 25.4oz) 1,989 Units  Lautus Sauvignon Blanc - Non-Alcoholic Wine (750ml | 25.4oz) 1,530 Units  Misty Cliffs Non-Alcoholic Sauvignon Blanc (750 ml/25.4 oz.) AND Lautus - Lautus Chardonnay - Non-Alcoholic Wine (750 ml) AND Misty Cliffs Non-Alcoholic Rose (750 ml/25.4 oz) 2,754 Units  Thomson & Scott Noughty Alcohol-Free Sparkling Chardonnay (750ml) AND Thomson & Scott Noughty Alcohol-Free Sparkling Rose (750 ml) 8,568 Units  Thomson & Scott - Noughty Alcohol-Free Blanc (750 ml) AND Thomson & Scott Noughty Rouge (750 ml) 5,508 Units  Lautus Non-Alcoholic Sparkling White Wine (750ml | 25.4oz) AND Kolonne Null Non-Alcoholic Session No. 05 Silvaner 2021 (750ml |

**13.** ☐ This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS (if applicable)

**14.** This FINANCING STATEMENT:
☐ covers timber to be cut   ☐ covers as-extracted collateral   ☐ is filed as a fixture filing

**15.** Name and address of a RECORD OWNER of real estate described in item 16 (if Debtor does not have a record interest):

**16.** Description of real estate:

**17. MISCELLANEOUS:**

International Association of Commercial Administrators
**FILING OFFICE COPY — UCC FINANCING STATEMENT ADDENDUM (Form UCC1Ad) (Rev. 04/20/11)**

# UCC FINANCING STATEMENT **ADDENDUM**

FOLLOW INSTRUCTIONS

**9. NAME OF FIRST DEBTOR:** Same as line 1a or 1b on Financing Statement; if line 1b was left blank because Individual Debtor name did not fit, check here ☐

9a. ORGANIZATION'S NAME

OR

9b. INDIVIDUAL'S SURNAME

FIRST PERSONAL NAME

ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX

**THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY**

**10. DEBTOR'S NAME:** Provide (10a or 10b) only <u>one</u> additional Debtor name or Debtor name that did not fit in line 1b or 2b of the Financing Statement (Form UCC1) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name) and enter the mailing address in line 10c

10a. ORGANIZATION'S NAME

OR

10b. INDIVIDUAL'S SURNAME

INDIVIDUAL'S FIRST PERSONAL NAME

INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX

| 10c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|

**11.** ☐ **ADDITIONAL SECURED PARTY'S NAME** or ☐ **ASSIGNOR SECURED PARTY'S NAME:** Provide only <u>one</u> name (11a or 11b)

11a. ORGANIZATION'S NAME

OR

| 11b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|

| 11c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|

**12. ADDITIONAL SPACE FOR ITEM 4 (Collateral):**
**25.4oz) 1,071 Units   Pentire - Non-Alcoholic Distilled Spirit (Adrift, Seaward)(700ml | 23.7oz) AND Pentire - Coastal Spritz - Non-Alcoholic Aparitf - 700 ml Bottle 1,989 Units   Lautus Non-Alcoholic Wine Savvy Red (4 Pack)(4 x 250ml | 4 x 8.45oz) AND Lautus Non-Alcoholic Wine (Mixed 4 Pack)(4 x 250ml | 4 x 8.45oz) 1,071 Units   Kolonne Null Tasting Bundle (all sizes)(all items) 153 Units**

**13.** ☐ This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS  (if applicable) | **14.** This FINANCING STATEMENT: ☐ covers timber to be cut   ☐ covers as-extracted collateral   ☐ is filed as a fixture filing

**15.** Name and address of a RECORD OWNER of real estate described in item 16 (if Debtor does not have a record interest): | **16.** Description of real estate:

**17. MISCELLANEOUS:**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**EXHIBIT "3"**
**[PLAN PROJECTIONS]**

| Week of | 6/17/2024 | 6/24/2024 | 7/1/2024 | 7/8/2024 | 7/15/2024 | 7/22/2024 | 7/29/2024 |
|---|---|---|---|---|---|---|---|
| Week of Plan | 11 | 12 | 13 | 14 | 15 | 16 | 17 |
| WEEKNUM | 25 | 26 | 27 | 28 | 29 | 30 | 31 |
| Start | $ 43,977 | $ 239,698 | $ 122,127 | $ 89,112 | $ 59,726 | $ 280,970 | $ 227,213 |
| | | | | | | | |
| **Ins** | | | | | | | |
| Cash From Sales | $ 14,006 | $ 13,523 | $ 25,750 | $ 25,750 | $ 27,500 | $ 27,500 | $ 30,000 |
| AR | $ 10,502 | $ 9,374 | $ 25,000 | $ 25,000 | $ 25,000 | $ 25,000 | $ 30,000 |
| Other Inflows | $ 1,261 | $ 1,217 | $ 2,318 | $ 2,318 | $ 2,475 | $ 2,475 | $ 2,700 |
| DIP Financing | $ 250,000 | $ - | $ - | $ - | $ 250,000 | $ - | $ - |
| Total Inflows | $ 275,768 | $ 24,115 | $ 53,068 | $ 53,068 | $ 304,975 | $ 54,975 | $ 62,700 |
| | | | | | | | |
| **Outs** | | | | | | | |
| Rent | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| Utilities | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| Replacement Ecomm | $ 8,403 | $ 8,114 | $ 15,450 | $ 15,450 | $ 16,500 | $ 16,500 | $ 18,000 |
| Replacement Wholesa | $ 8,401 | $ 7,499 | $ 20,000 | $ 20,000 | $ 20,000 | $ 20,000 | $ 24,000 |
| Forward Wholesale Pu | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| Strategic / Amazon Pu | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| Inventory | $ 16,805 | $ 15,613 | $ 35,450 | $ 35,450 | $ 36,500 | $ 36,500 | $ 42,000 |
| Shipping & Materials | $ 1,991 | $ 1,910 | $ 3,754 | $ 3,754 | $ 3,981 | $ 3,981 | $ 4,388 |
| Contractors | $ 9,750 | $ 25,750 | $ 16,750 | $ 16,750 | $ 16,750 | $ 16,750 | $ 16,750 |
| Trade | $ 7,500 | $ 15,500 | $ 7,500 | $ 7,500 | $ 7,500 | $ 7,500 | $ 7,500 |
| Other Outflows | $ - | $ 63,913 | $ 3,628 | $ - | $ - | $ - | $ - |
| Legal Costs - LNBYG | $ 25,000 | $ - | $ - | $ - | $ - | $ 25,000 | $ - |
| Advertising | $ 10,000 | $ 10,000 | $ 10,000 | $ 10,000 | $ 10,000 | $ 10,000 | $ 10,000 |
| Ecommerce Agency | $ 2,500 | $ 2,500 | $ 2,500 | $ 2,500 | $ 2,500 | $ 2,500 | $ 2,500 |
| Backend Development | $ 5,000 | $ 5,000 | $ 5,000 | $ 5,000 | $ 5,000 | $ 5,000 | $ 5,000 |
| Travel | $ 1,500 | $ 1,500 | $ 1,500 | $ 1,500 | $ 1,500 | $ 1,500 | $ 1,500 |
| Total Outflows | $ 80,046 | $ 141,686 | $ 86,082 | $ 82,454 | $ 83,731 | $ 108,731 | $ 89,638 |
| | | | | | | | |
| End | $ 239,698 | $ 122,127 | $ 89,112 | $ 59,726 | $ 280,970 | $ 227,213 | $ 200,276 |

| Week of | 8/5/2024 | 8/12/2024 | 8/19/2024 | 8/26/2024 | 9/2/2024 | 9/9/2024 | 9/16/2024 | 9/23/2024 |
|---|---|---|---|---|---|---|---|---|
| Week of Plan | **18** | **19** | **20** | **21** | **22** | **23** | **24** | **25** |
| WEEKNUM | 32 | 33 | 34 | 35 | 36 | 37 | 38 | 39 |
| Start | $ 200,276 | $ 162,133 | $ 111,096 | $ 85,058 | $ 59,921 | $ 175,702 | $ 138,603 | $ 114,285 |
| | | | | | | | | |
| **Ins** | | | | | | | | |
| Cash From Sales | $ 30,000 | $ 32,500 | $ 32,500 | $ 35,000 | $ 35,000 | $ 37,500 | $ 37,500 | $ 40,000 |
| AR | $ 30,000 | $ 30,000 | $ 30,000 | $ 30,000 | $ 35,000 | $ 35,000 | $ 35,000 | $ 35,000 |
| Other Inflows | $ 2,700 | $ 2,925 | $ 2,925 | $ 3,150 | $ 3,150 | $ 3,375 | $ 3,375 | $ 3,600 |
| DIP Financing | $ - | $ - | $ - | $ - | $ 750,000 | $ - | $ - | $ - |
| Total Inflows | $ 62,700 | $ 65,425 | $ 65,425 | $ 68,150 | $ 823,150 | $ 75,875 | $ 75,875 | $ 78,600 |
| | | | | | | | | |
| **Outs** | | | | | | | | |
| Rent | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| Utilities | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| Replacement Ecomme | $ 18,000 | $ 19,500 | $ 19,500 | $ 21,000 | $ 21,000 | $ 22,500 | $ 22,500 | $ 24,000 |
| Replacement Wholesa | $ 24,000 | $ 24,000 | $ 24,000 | $ 24,000 | $ 28,000 | $ 28,000 | $ 28,000 | $ 28,000 |
| Forward Wholesale Pu | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| Strategic / Amazon Pu | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| Inventory | $ 42,000 | $ 43,500 | $ 43,500 | $ 45,000 | $ 49,000 | $ 50,500 | $ 50,500 | $ 52,000 |
| Shipping & Materials | $ 4,388 | $ 4,713 | $ 4,713 | $ 5,038 | $ 5,119 | $ 5,444 | $ 5,444 | $ 5,769 |
| Contractors | $ 16,750 | $ 16,750 | $ 16,750 | $ 16,750 | $ 16,750 | $ 16,750 | $ 16,750 | $ 16,750 |
| Trade | $ 7,500 | $ 7,500 | $ 7,500 | $ 7,500 | $ 7,500 | $ 7,500 | $ 7,500 | $ 7,500 |
| Other Outflows | $ 11,205 | $ - | $ - | $ - | $ 610,000 | $ 12,780 | $ - | $ - |
| Legal Costs - LNBYG | $ - | $ 25,000 | $ - | $ - | $ - | $ - | $ - | $ - |
| Advertising | $ 10,000 | $ 10,000 | $ 10,000 | $ 10,000 | $ 10,000 | $ 10,000 | $ 10,000 | $ - |
| Ecommerce Agency | $ 2,500 | $ 2,500 | $ 2,500 | $ 2,500 | $ 2,500 | $ 2,500 | $ 2,500 | $ 5,000 |
| Backend Development | $ 5,000 | $ 5,000 | $ 5,000 | $ 5,000 | $ 5,000 | $ 5,000 | $ 5,000 | $ 10,000 |
| Travel | $ 1,500 | $ 1,500 | $ 1,500 | $ 1,500 | $ 1,500 | $ 2,500 | $ 2,500 | $ 5,000 |
| Total Outflows | $ 100,843 | $ 116,463 | $ 91,463 | $ 93,288 | $ 707,369 | $ 112,974 | $ 100,194 | $ 102,019 |
| | | | | | | | | |
| End | $ 162,133 | $ 111,096 | $ 85,058 | $ 59,921 | $ 175,702 | $ 138,603 | $ 114,285 | $ 90,866 |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**EXHIBIT "4"**
**[CLAIMS CHART]**

| Gen Bar Date = 6/13/2024 Gov Bar Date = 10/1/2024 | SCHEDULED CLAIM | | | | FILED CLAIM | | | | ESTIMATED CLAIMS | | | | Notes |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Creditor | Schedule "D" Secured | Schedule "E" Priority | Schedule "F" Unsecured | C/U/D | Claim No. | Secured | Priority | General Unsecured | Secured Amount | Administrative Amount | Priority Amount | Unsecured Amount | |
| 11770 SVB, LLC | | | $0.00 | | | | | | | | | $0.00 | |
| 11770 SVB, LLC | | | $0.00 | | | | | | | | | $0.00 | |
| 11770 SVB, LLC | | | | U | | | | | $0.00 | | | | Scheduled as unliquidated and no POC filed. |
| 11771 SVB, LLC | $23,386.86 | | | | | | | | | | | $0.00 | |
| 11771 SVB, LLC | | | $0.00 | | | | | | | | | $0.00 | |
| 1Huddle From | | | $11,000.00 | | 9 | | | $14,000.00 | | | | $14,000.00 | Also known as 1Huddle, Inc. Address: 550 Broad Street, Suite 904, Newark, NJ 07102. Basis: 1Huddle provided its platform and services to Boisson. Filed on 4/23/2024. |
| 326 Columbus LLC | | | $15,276.00 | | | | | | | | | $15,276.00 | |
| A.P. Keaton, Inc. | | | $0.00 | | 36 | $50,986.30 | | | $0.00 | | | | A.P. Keaton does not have its own security agreement or any recorded UCC 1 Financing Statement.  Instead, Connect Ventures acts as the Collateral Agent for itself and the other Prepetition Noteholders and has the recorded UCC-1 Financing Statement.

This claim is included in the Connect Ventures proof of claim asserted on behalf of all prepetition noteholders.

Secured promissory note |
| Acid League Inc | | | $0.00 | | | | | | | | | $0.00 | |
| Airgoods Inc. | | | $2,175.00 | | 26 | | | $2,178.00 | | | | $2,178.00 | Address: 220 W 13th St, Apt 5C, New York, NY 10011. Basis: Goods sold. Filed on 5/21/2024. |
| Alan Flowers | | $0.00 | | | | | | | | | $0.00 | | |
| Alejandra Vides Ramirez | | $0.00 | | | | | | | | | $0.00 | | |
| Alexander Hudson | | $0.00 | | | | | | | | | $0.00 | | |
| Alexander Kelley | | $0.00 | | | | | | | | | $0.00 | | |
| Alexander Nguyen | | $0.00 | | | | | | | | | $0.00 | | |
| Alexandra Tenney | | $0.00 | | | | | | | | | $0.00 | | |
| Alexina Gottschalck | | $0.00 | | | | | | | | | $0.00 | | |
| All The Bitter | | | $12,706.44 | | 28 | $38,770.71 | | | $0.00 | | | $12,706.44 | No security. Vehicle surrendered.

2022 FORD E-transit 350 Cargo Van High Roof Van 3D VIN:1FTBW9CK4NKA29943

Address: c/o AIS Portfolio Services, LLC, 4515 N. Santa Fe Ave. Dept. APS, Oklahoma City, OK 73118. Basis: Automobile Financing. Filed on 5/22/2024. Secured by 2022 FORD E-transit 350 Cargo Van High Roof Van 3D. Last 4 digits of the debtor's account: 5850. |
| Ally Financial (aka Ally Capital) | $40,266.44 | | | | | | | | | | | | |
| Almave (aka Casa Lumbre Corp.) | | | | | 33 | | | $73,239.24 | | | | $73,239.24 | Duplicates 32 and 33]

Goods sold pursuant to distribution agreement |
| Almave (aka Casa Lumbre Corp.) | | | $50,799.24 | | 32 | | | $73,239.24 | | | | $0.00 | Duplicates 32 and 33]

Goods sold pursuant to distribution agreement |
| Alpha Tarawally | | $0.00 | | | | | | | | | $0.00 | | |
| Alphonso Johnson | | $0.00 | | | | | | | | | $0.00 | | |
| Alt Distilling | | | $6,240.00 | | | | | | | | | $6,240.00 | |
| Amanda Bowman | | $0.00 | | | | | | | | | $0.00 | | |
| Amber Waves | | | $2,500.00 | | | | | | | | | $2,500.00 | |
| American Express National Bank | | | $231,162.20 | | 24 | | | $231,184.82 | | | | $231,184.82 | Address: c/o Becket and Lee LLP, PO Box 3001, Malvern, PA 19355-0701. Basis: Credit Card. Filed on 5/17/2024. Last 4 digits of the debtor's account: 1002. |
| Ana Clemente | | $0.00 | | | | | | | | | $0.00 | | |
| Andrew Fuentes | | $0.00 | | | | | | | | | $0.00 | | |
| Andrew Lighten | | $0.00 | | | | | | | | | $0.00 | | |
| Andrew Seymour | | $0.00 | | | | | | | | | $0.00 | | |
| ANDRZEJ JURCZYKOWSKI | | | $36,072.67 | | | | | | | | | $36,072.67 | |
| ANDRZEJ JURCZYKOWSKI | | | $0.00 | | | | | | | | | $0.00 | |
| Anja Korosec | | | $4,400.00 | | | | | | | | | $4,400.00 | |
| Ann Chen | | $0.00 | | | | | | | | | $0.00 | | |
| Ann O'Brien | | $0.00 | | | | | | | | | $0.00 | | |
| Anthoneill Miller | | $0.00 | | | | | | | | | $0.00 | | |
| Anthony Mills | | $0.00 | | | | | | | | | $0.00 | | |
| Antonio Perez | | $0.00 | | | | | | | | | $0.00 | | |
| Aplos, Inc. | | | $16,812.00 | | | | | | | | | $16,812.00 | |
| Arianna Laidley | | | $0.00 | | 13 | | | $13,281.25 | | | | $13,281.25 | Address: 437 S Hill St APT 650, Los Angeles, CA 90013-437. Basis: Services performed. Filed on 4/30/2024. Amends claim #13. |
| Arturo Ascurra | | $0.00 | | | | | | | | | $0.00 | | |
| Ashley Klinger & Co. | | | $2,750.00 | | | | | | | | | $2,750.00 | |
| Assured Enviroments | | | $718.56 | | | | | | | | | $718.56 | |
| Athena Products | | | $727.00 | | | | | | | | | $727.00 | |
| Audrey Esomonu | | $0.00 | | | | | | | | | $0.00 | | |
| Austin Sanderson | | $0.00 | | | | | | | | | $0.00 | | |
| AVEC | | | $0.00 | | | | | | | | | $0.00 | |
| AVEC DRINKS CO | | | $25,632.00 | | | | | | | | | $25,632.00 | |

| Gen Bar Date = 6/13/2024 Gov Bar Date = 10/1/2024 | SCHEDULED CLAIM | | | | FILED CLAIM | | | | ESTIMATED CLAIMS | | | | Notes |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Creditor | Schedule "D" Secured | Schedule "E" Priority | Schedule "F" Unsecured | C/U/D | Claim No. | Secured | Priority | General Unsecured | Secured Amount | Administrative Amount | Priority Amount | Unsecured Amount | Notes |
| Azione Pr Inc. | | | $42,737.65 | | | | | | | | | $42,737.65 | |
| Barette Harvin | | $0.00 | | | | | | | | | $0.00 | | |
| Barnes Beverage Group | | | $25,302.50 | | | | | | | | | $25,302.50 | |
| Barry's Bootcamp Holdings, LLC | | | $40,000.00 | | | | | | | | | $40,000.00 | |
| Benneth Ekwegbalu | | $0.00 | | | | | | | | | $0.00 | | |
| Betty Buzz AP | | | $2,592.00 | | | | | | | | | $2,592.00 | |
| Betty Buzz Llc | | | $8,352.00 | | | | | | | | | $8,352.00 | |
| Beyond Alcohol Inc. | | | $0.00 | | | | | | | | | $0.00 | |
| Bin Huang | | $0.00 | | | | | | | | | $0.00 | | |
| BLDG Christopher LLC | | | $0.00 | | | | | | | | | $0.00 | |
| BLDG Christopher LLC | | | $0.00 | | | | | | | | | $0.00 | |
| BLDG MANAGEMENT CO. INC. (aka BLDG GANSVOORT LLC) | | | $18,540.00 | | 42 | | | $12,550.76 | | | | $12,550.76 | Lease |
| Blue Meranti, LLC | | | $12,041.18 | | | | | | | | | $12,041.18 | |
| Brandon Hunt | | $0.00 | | | | | | | | | $0.00 | | |
| Brandon Stephens | | $0.00 | | | | | | | | | $0.00 | | |
| Brandon Zafra | | $0.00 | | | | | | | | | $0.00 | | |
| Bridget Padilla | | $0.00 | | | | | | | | | $0.00 | | |
| Bringg Inc. | | | $9,725.44 | | 37 | | | $29,115.44 | | | | $29,115.44 | Services performed |
| Brittany Bodkins | | $0.00 | | | | | | | | | $0.00 | | |
| Burrelle Hall | | $0.00 | | | | | | | | | $0.00 | | |
| Buzzkill Wines LLC | | | $0.00 | | | | | | | | | $0.00 | |
| Caleno | | | $20,916.00 | | | | | | | | | $20,916.00 | |
| Camille Johnson | | $0.00 | | | | | | | | | $0.00 | | |
| Carmelo Martinez-Vazquez | | $0.00 | | | | | | | | | $0.00 | | |
| Ceder's | | | $0.00 | | | | | | | | | $0.00 | |
| Celigo, Inc | | | $6,421.12 | | | | | | | | | $6,421.12 | |
| Charles Freeman | | $0.00 | | | | | | | | | $0.00 | | |
| Charter Communications aka Spectrum | | | $0.00 | | | | | | | | | $0.00 | |
| Checkr | | | $0.00 | | | | | | | | | $0.00 | |
| Chelsea Batres | | | | | | | | | | | $0.00 | | |
| Christine A. Bergmann | | | | | 31 | | $15,150.00 | $115,056.00 | | | | $20,000.00 | No basis for priority.<br><br>Wrongful termination claim |
| Christine Bergmann | | $0.00 | | | | | | | | | $0.00 | | |
| Christine Bierley | | $0.00 | | | | | | | | | $0.00 | | |
| Cocktail Garnish Company | | | $2,379.78 | | 16 | | | $4,454.00 | | | | $4,454.00 | Address: 10 COUNTY CENTER RD, STE G9, WHITE PLAINS, NY 10607. Basis: Goods Sold. Filed on 5/5/2024. |
| Commonwealth of Pennsylvania-UCTS | | | | | 2 | | $290.78 | | | | $290.78 | | Address: Dept. of Labor and Industry, Harrisburg, PA 17106-8568. Basis: Unemployment Compensation Taxes. Filed on 4/5/2024. Priority claim under 11 U.S.C. § 507(a)(8) for taxes. Last 4 digits of debtor's account: 7764. |
| Commonwealth Packaging Company | | | $5,380.60 | | | | | | | | | $5,380.60 | |
| CONNECT VENTURES I, L.P. | $5,000,000.00 | | | | 46 | $5,198,082.19 | | | $0.00 | | | | To be converted to new equity per second DIP Loan Agreement and Plan. |
| Consolidated Edison, Inc. | | | $0.00 | | | | | | | | | $0.00 | |
| Constellation Real Estate Corp | | | $101,091.16 | | 47 | $282,000.00 | $94,482.00 | $579,918.77 | | $94,482.00 | | $559,918.77 | Per stip and order Dkts. 116 and 119]<br><br>Non-Residential Real Estate Obligation |
| Copyland Center Inc | | | $457.28 | | | | | | | | | $457.28 | |
| Courtney Ann Balzer | | | $12,405.73 | | | | | | | | | $12,405.73 | |
| Courtney Balzer | | $0.00 | | | | | | | | | $0.00 | | |
| Craig Arnold | | $0.00 | | | | | | | | | $0.00 | | |
| CSC | | | $1,347.00 | | | | | | | | | $1,347.00 | |
| Curious Elixirs | | | $22,656.00 | | | | | | | | | $22,656.00 | |
| Cyrena Bierley | | | | | 6 | | $462.00 | | | | $462.00 | | Also known as Cyrena Bierley-Smith. Address: 250 Ashland Place APT 16H, Brooklyn, NY 11217-250. Basis: Contracted services performed. Filed on 4/18/2024. Priority claim under 11 U.S.C. § 507(a)(4) for wages earned within 180 days of petition. |
| Daniel Vogel | | $0.00 | | | | | | | | | $0.00 | | |
| Danielle Smail | | $0.00 | | | | | | | | | $0.00 | | |
| Dante Osborne | | $0.00 | | | | | | | | | $0.00 | | |
| De Lage Landen Financial Services, Inc | | | $950.23 | | | | | | | | | $950.23 | |
| De Maison East | | | $7,600.00 | | | | | | | | | $7,600.00 | |
| De Soi, Inc. | | | $34,164.00 | | | | | | | | | $34,164.00 | |
| Deanna Slocombe | | $0.00 | | | | | | | | | $0.00 | | |
| Degree, Inc | | | $2,202.77 | | | | | | | | | $2,202.77 | |
| Delaney Family Limited Liability Limited Partnership | | | | | | $455,177.60 | | | $0.00 | | | | Prior DIP Loan.  To be converted to new equity per second DIP Loan Agreement and Plan. |
| Delaney Family Limited Liability Limited Partnership | | | | | | $500,000.00 | | | $0.00 | | | | Second DIP Loan.  To be converted to new equity per second DIP Loan Agreement and Plan. |
| Deven Machette | | | $22,500.00 | | | | | | | | | $22,500.00 | |

| | SCHEDULED CLAIM | | | | FILED CLAIM | | | | ESTIMATED CLAIMS | | | | Notes |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Gen Bar Date + 6/13/2024<br>Gov Bar Date + 10/1/2024 | | | | | | | | | | | | | |
| Creditor | Schedule "D" Secured | Schedule "E" Priority | Schedule "F" Unsecured | C/U/D | Claim No. | Secured | Priority | General Unsecured | Secured Amount | Administrative Amount | Priority Amount | Unsecured Amount | |
| Diego Gallardo | | $0.00 | | | | | | | | | $0.00 | | |
| Dimitri Rodriguez | | | | | 19 | | | $4,992.00 | | | | $4,992.00 | Address: 1338 47th ave, San Francisco, CA 94116-1338. Basis: Employment at retail store. Filed on 5/10/2024. |
| Dimitri Rodriguez | | $0.00 | | | | | | | | | $0.00 | | |
| DoorDash | | | $5,522.75 | | | | | | | | | $5,522.75 | |
| Dr. Zero Zero | | | $6,789.60 | | | | | | | | | $6,789.60 | |
| Dram Apothecary | | | $1,842.45 | | | | | | | | | $1,842.45 | |
| Drink Monday | | | $4,110.00 | | | | | | | | | $4,110.00 | |
| Drink Proxies Inc. | | | $21,961.80 | | | | | | | | | $21,961.80 | |
| Drinks Sherpa Ltd | | | $11,837.43 | | | | | | | | | $11,837.43 | |
| Drizly Llc | | | $3,937.90 | | | | | | | | | $3,937.90 | |
| Edgardo Carire | | $0.00 | | | | | | | | | $0.00 | | |
| Eduardo Luzuriaga | | $0.00 | | | | | | | | | $0.00 | | |
| Elena Fernandez | | $0.00 | | | | | | | | | $0.00 | | |
| Elenteny Imports (T Elenteny Holdings LL | | | $865.64 | | | | | | | | | $865.64 | |
| Elizabeth Garlick | | $0.00 | | | | | | | | | $0.00 | | |
| Eloise Stephens Ramp | | | $660.69 | | | | | | | | | $660.69 | |
| eLow Cost Plumbing | | | $210.00 | | | | | | | | | $210.00 | |
| Emily Batista | | $0.00 | | | | | | | | | $0.00 | | |
| Emily Everson | | $0.00 | | | | | | | | | $0.00 | | |
| Emily Newton | | $0.00 | | | | | | | | | $0.00 | | |
| Endless Fields, LLC (DBA Tenneyson) | | | $10,260.48 | | | | | | | | | $10,260.48 | |
| Ernesto Aguilera | | $0.00 | | | | | | | | | $0.00 | | |
| Ernesto Bonilla | | $0.00 | | | | | | | | | $0.00 | | |
| Ethan Hack Chabot | | $0.00 | | | | | | | | | $0.00 | | |
| Everleaf | | | $9,243.36 | | | | | | | | | $9,243.36 | |
| Export-Import Services Inc. | | | $358.92 | | | | | | | | | $358.92 | |
| Ezequiel Vazquez | | $0.00 | | | | | | | | | $0.00 | | |
| Faire Insider | | | $3,138.48 | | | | | | | | | $3,138.48 | |
| Farnam Street Financial Inc. | | $0.00 | | | | | | | | | | $0.00 | |
| FARNAM STREET FINANCIAL, INC. | $24,514.14 | | | | 21 | | | $226,551.04 | $0.00 | | | $100,000.00 | Object re mitigation.<br><br>Address: 5850 OPUS PARKWAY, SUITE 240, MINNETONKA, MN 55343. Basis: Equipment Lease. Filed on 5/10/2024. |
| Feragaia | | | $12,650.04 | | | | | | | | | $12,650.04 | |
| Fernando Febus | | $0.00 | | | | | | | | | $0.00 | | |
| Fivetran, Inc. | | | | | | | | | | | | $3,266.25 | |
| Flyers Cocktail Co. | | | | | | | | | | | | $0.00 | |
| For Bitter For Worse | | | | | | | | | | | | $7,387.40 | |
| Ford Motor Credit Company LLC | $39,008.24 | | | | 38 | $36,351.07 | | | $0.00 | | | | | Vehicle surrender and claim waver per stip and order [Dkts. 121 and 122].<br><br>Car loan<br>2022 FORD E-transit 350 Cargo Van High Roof Van 3D VIN:1FTBW9CK7NKA49958 |
| Ford Motor Credit Company LLC | $36,948.24 | | | | 39 | $34,431.39 | | | $0.00 | | | | | Vehicle surrender and claim waver per stip and order [Dkts. 121 and 122].<br><br>Car loan<br>2022 FORD E-transit 350 Cargo Van High roof van 3D VIN:1FTBW9CK2NKA44070 |
| Forward Food, Inc. dba Surely | | | $12,954.23 | | | | | | | | | $12,954.23 | |
| Franchise Tax Board | | | | | 8 | | $1,618.38 | | | | $1,618.38 | | Address: BANKRUPTCY SECTION MS A340, PO BOX 2952, SACRAMENTO CA 95812-2952. Basis: Taxes and/or fees. Filed on 4/19/2024. Priority claim under 11 U.S.C. § 507(a)(8) for taxes. Last 4 digits of debtor's account: 5337. |
| Franco Dizon | | $0.00 | | | | | | | | | $0.00 | | |
| Free AF | | | $12,270.37 | | | | | | | | | $12,270.37 | |
| Free Spirits | | | $12,552.00 | | | | | | | | | $12,552.00 | |
| French Bloom SAS | | | $363,187.20 | | | | | | | | | $363,187.20 | |
| Gerome Brooks | | $0.00 | | | | | | | | | $0.00 | | |
| Giffard | | | $94,158.96 | | | | | | | | | $94,158.96 | |
| Globalfranz Enterprise, LLC | | | $16,551.97 | | | 40 | | | $18,733.21 | | | | $18,733.21 | |
| Gold Coast Distributors LTD | | | $3,402.00 | | | | | | | | | $3,402.00 | |
| Golenbock Eiseman Assor Bell & Peskoe LLP | | | | | 23 | | | $7,863.50 | | | | $7,863.50 | Address: 711 Third Avenue, New York, NY 10017. Basis: Legal Services. Filed on 5/16/2024. |
| Good + Bar | | | $772.50 | | | | | | | | | $772.50 | |
| Gordon Logistics | | | $2,175.46 | | | | | | | | | $2,175.46 | |
| GR0.com LLC | | | $5,000.00 | | | 50 | | | $1,136.96 | | | | $1,136.96 | POCs 45 and 50 are duplicates. |
| GR0.com LLC | | | | | 45 | | | $1,136.96 | | | | $0.00 | POCs 45 and 50 are duplicates. |
| Granite Telecommunications, LLC | | | | | 5 | | | $802.84 | | | | $802.84 | Address: 100 Newport Avenue Extension, Quincy, MA 02171. Basis: Telephone/Internet Services. Filed on 4/16/2024. Last 4 digits of debtor's account: 1825. |
| Greenhouse Software Inc. | | | $3,803.61 | | | | | | | | | $3,803.61 | |

| | SCHEDULED CLAIM | | | | FILED CLAIM | | | ESTIMATED CLAIMS | | | | Notes |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Gen Bar Date + 6/13/2024 Gov Bar Date + 10/1/2024 | | | | | | | | | | | | |
| Creditor | Schedule "D" Secured | Schedule "E" Priority | Schedule "F" Unsecured | C/U/D | Claim No. | Secured | Priority | General Unsecured | Secured Amount | Administrative Amount | Priority Amount | Unsecured Amount | |
| Greenhouse Software, Inc. | | | $0.00 | | | | | | | | | $0.00 | |
| Guardian Distributors | | | | | | | | | | | | $0.00 | |
| Harbor Distributing | | | $136.44 | | | | | | | | | $136.44 | |
| Hearst Magazines | | | $2,452.73 | | | | | | | | | $2,452.73 | |
| Heglovich LLC | | | | | 44 | | | $8,826.72 | | | | $8,826.72 | Goods sold |
| Helena Ma | | $0.00 | | | | | | | | | $0.00 | | |
| Hella Cocktail (Hella Bitter LLC) | | | $7,546.77 | | 17 | | | $8,423.27 | | | | $8,423.27 | Address: 316 W 23RD ST. APT 2FW, NEW YORK, NY 10011. Basis: Goods Sold. Filed on 5/6/2024. |
| Henry Nelson | | $0.00 | | | | | | | | | $0.00 | | |
| Hiyo, Inc. | | | $9,696.00 | | | | | | | | | $9,696.00 | |
| HYG FINANCIAL SERVICES, INC. | $3,000.00 | | | U | | | | | $0.00 | | | | Waived per Stip and Order [Dkts 75 and 77] |
| Illi Commercial Real Estate | | | $5,237.00 | | | | | | | | | $5,237.00 | |
| Ilona Shcherbakova | | $0.00 | | | | | | | | | $0.00 | | |
| Imagine it clean | | | $1,510.00 | | | | | | | | | $1,510.00 | |
| Interaktivo Solutions Inc | | | $9,952.55 | | | | | | | | | $9,952.55 | |
| Internal Revenue Service | | | | | 11 | | $1,900.00 | | | | $1,900.00 | | Address: IRS Insolvency Group 7 24000 AVILA ROAD 3rd Floor, M/S 5503, LAGUNA NIGUEL CA 92677. Basis: Taxes. Filed on 4/26/2024. Priority claim under 11 U.S.C. § 507(a)(8) for taxes. |
| Irina Simonova | | $0.00 | | | | | | | | | $0.00 | | |
| Jamel Utsey | | $0.00 | | | | | | | | | $0.00 | | |
| James Arends Jr. | | $0.00 | | | | | | | | | $0.00 | | |
| James Sweeney | | $0.00 | | | | | | | | | $0.00 | | |
| Janelle Christopher | | $0.00 | | | | | | | | | $0.00 | | |
| Jashima Brathwaite | | $0.00 | | | | | | | | | $0.00 | | |
| Jean Rodney | | $0.00 | | | | | | | | | $0.00 | | |
| Jeng | | | $1,200.00 | | | | | | | | | $1,200.00 | |
| Jennice Pusey | | $0.00 | | | | | | | | | $0.00 | | |
| Jill Sites | | $0.00 | | | | | | | | | $0.00 | | |
| John A Werwaiss and Estate of Deborah Bl | | | $14,560.00 | | | | | | | | | $14,560.00 | |
| Jose Abreu | | $0.00 | | | | | | | | | $0.00 | | |
| Joseph Marbella | | $0.00 | | | | | | | | | $0.00 | | |
| Joseph Mikos Photography & Video LLC | | | $408.00 | | | | | | | | | $408.00 | |
| Joseph Olmos | | $0.00 | | | | | | | | | $0.00 | | |
| Joseph Runyon | | $0.00 | | | | | | | | | $0.00 | | |
| Josephine Utech | | $0.00 | | | | | | | | | $0.00 | | |
| Joshua Cavoto | | $0.00 | | | | | | | | | $0.00 | | |
| Joshua Trelles | | $0.00 | | | | | | | | | $0.00 | | |
| Joyus | | | $27,687.32 | | | | | | | | | $27,687.32 | |
| JPMorgan Chase Bank, N.A | | | | | 48 | $468,000.00 | | | $0.00 | | | | Letter of credit was drawn by landlord. Debtor offered relief from stay to allow creditor to foreclose on collateral securing letter of creidit. Debtor wil do so again so that creditor will have no secured claim. |
| JTL DIGITAL, LLC | | | $9,600.00 | | | | | | | | | $9,600.00 | |
| Juan Arenas | | $0.00 | | | | | | | | | $0.00 | | |
| Judy Gurnbiner Cramin Trust | | | $10,474.00 | | | | | | | | | $10,474.00 | |
| Judy Gurnbiner Cramin Trust | | | $0.00 | | | | | | | | | $0.00 | |
| Jukes US LLC | | | $4,109.50 | | 20 | | | $4,784.50 | | | | $4,784.50 | Address: 230 Arabian Road, Palm Beach, FL 33480. Basis: Goods sold and delivered to the debtor. Filed on 5/10/2024. |
| Julio Perez | | $0.00 | | | | | | | | | $0.00 | | |
| Kaleo Legal | | | $6,550.00 | | | | | | | | | $6,550.00 | |
| Katarzyna Banas | | $0.00 | | | | | | | | | $0.00 | | |
| Katelyn Kennedy | | $0.00 | | | | | | | | | $0.00 | | |
| Katherine O'Brien | | | $2,250.00 | | | | | | | | | $2,250.00 | |
| Katherine O'Brien | | $0.00 | | | | | | | | | $0.00 | | |
| Katie Nessel | | | $1,278.00 | | | | | | | | | $1,278.00 | |
| Keith Lucky | | $0.00 | | | | | | | | | $0.00 | | |
| Kelly Richards | | $0.00 | | | | | | | | | $0.00 | | |
| Kimberley Pegueros | | $0.00 | | | | | | | | | $0.00 | | |
| Kin Euphorics | | | $5,235.43 | | | | | | | | | $5,235.43 | |
| Kin Social Tonics, Inc. | | | $21,748.70 | | 10 | | | $28,548.19 | | | | $28,548.19 | Address: 510 Broadhollow. Road, Suite 300, Melville, NY 11747. Basis: Goods sold. Filed on 4/23/2024. |
| Kirk Bonny | | $0.00 | | | | | | | | | $0.00 | | |
| Kolonne Null GmbH | | | $98,121.00 | | | | | | | | | $98,121.00 | |
| La Metro 3 Lp | | | $66,339.00 | | | | | | | | | $66,339.00 | |
| La Metro 3 LP | | | $0.00 | | | | | | | | | $0.00 | |
| La Metro 3 LP | | | $0.00 | | | | | | | | | $0.00 | |
| Lashawn Fields | | $0.00 | | | | | | | | | $0.00 | | |
| Latiana Blue | | $0.00 | | | | | | | | | $0.00 | | |
| Laura Cassidy | | $0.00 | | | | | | | | | $0.00 | | |
| Lauren Brown | | $0.00 | | | | | | | | | $0.00 | | |
| Lautus De-Alcoholised Wines | | | $0.00 | | | | | | | | | $0.00 | |
| Lautus De-Alcoholised Wines | | | $0.00 | | | | | | | | | $0.00 | |
| Lautus De-Alcoholised Wines (aka Golden Gate Selections) | | | $56,862.84 | | 30 | | | $60,990.28 | | | | $60,990.28 | Goods sold |

| | SCHEDULED CLAIM | | | | FILED CLAIM | | | | ESTIMATED CLAIMS | | | | Notes |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Gen Bar Date + 6/13/2024<br>Gov Bar Date + 10/1/2024 | | | | | | | | | | | | | |
| Creditor | Schedule "D" Secured | Schedule "E" Priority | Schedule "F" Unsecured | C/U/D | Claim No. | Secured | Priority | General Unsecured | Secured Amount | Administrative Amount | Priority Amount | Unsecured Amount | |
| Lee Baker | | $0.00 | | | | | | | | | $0.00 | | |
| Lenore Souza | | $0.00 | | | | | | | | | $0.00 | | |
| Liberty Industrial Gases | | | $77.85 | | | | | | | | | $77.85 | |
| Lime Ventures | | | $0.00 | | | | | | | | | $0.00 | |
| Lindsey Heyman | | $0.00 | | | | | | | | | $0.00 | | |
| Little Saints LLC | | | $41,595.52 | | | | | | | | | $41,595.52 | |
| Logistic Dynamics | | | $7,407.42 | | | | | | | | | $7,407.42 | |
| Lois Wilkinson-Gray | | $0.00 | | | | | | | | | $0.00 | | |
| Los Angeles County Treasurer and Tax Collector | | | | | 27 | $574.38 | $119.93 | | | | $694.31 | | No security.<br><br>Address: PO Box 54110, Los Angeles, CA 90054. Basis: Tax Claims. Filed on 5/21/2024. Secured by tax lien. |
| Louise O'Shea | | $0.00 | | | | | | | | | $0.00 | | |
| Louise Sypher | | $0.00 | | | | | | | | | $0.00 | | |
| Loverboy | | | $1,080.00 | | | | | | | | | $1,080.00 | |
| M&M Sanitation Corp | | | $937.00 | | | | | | | | | $937.00 | |
| Maame Adjare-Sefa | | $0.00 | | | | | | | | | $0.00 | | |
| Mabel Brown | | $0.00 | | | | | | | | | $0.00 | | |
| Manhattan Beer Distributors | | | $1,739.30 | | | | | | | | | $1,739.30 | |
| Marie Davis | | $0.00 | | | | | | | | | $0.00 | | |
| Marie Lanzarone | | $0.00 | | | | | | | | | $0.00 | | |
| Marie Rooney | | $0.00 | | | | | | | | | $0.00 | | |
| Marie Root | | $0.00 | | | | | | | | | $0.00 | | |
| Marvin Wells Jr | | $0.00 | | | | | | | | | $0.00 | | |
| Mary Kennedy | | $0.00 | | | | | | | | | $0.00 | | |
| Massachusetts Department of Revenue | | | | | 1 | | $8,063.48 | | | | $8,063.48 | | Address: P.O. Box 7090, Boston, MA 02204-7090. Basis: Taxes. Filed on 4/5/2024. Priority claim under 11 U.S.C. § 507(a)(8) for taxes. Last 4 digits of debtor's account: 0170. |
| Material | | | $6,786.00 | | | | | | | | | $6,786.00 | |
| Matthew Wittman | | $0.00 | | | | | | | | | $0.00 | | |
| McCumber Lindsay | | $0.00 | | | | | | | | | $0.00 | | |
| Mei Lysaght | | $0.00 | | | | | | | | | $0.00 | | |
| Mei Zhu | | $0.00 | | | | | | | | | $0.00 | | |
| Melissa Myrie | | $0.00 | | | | | | | | | $0.00 | | |
| Merrick Park LLC | | | $25,284.60 | | 41 | | | $172,655.75 | | | | $172,655.75 | Non-Residential Real Estate Obligation |
| Merrick Park LLC | | | $0.00 | | | | | | | | | $0.00 | |
| Merrick Park LLC (aka Shops at Merrick Park) | | | $0.00 | | | | | | | | | $0.00 | |
| Michelle Hall | | $0.00 | | | | | | | | | $0.00 | | |
| Miguel Guerrero-Rodriguez | | $0.00 | | | | | | | | | $0.00 | | |
| Milica Cardona | | $0.00 | | | | | | | | | $0.00 | | |
| Miller Family Wine Company | | | $4,227.00 | | | | | | | | | $4,227.00 | |
| Mindful Drinking Fest LLC | | | $10,000.00 | | | | | | | | | $10,000.00 | |
| Miriam Western | | $0.00 | | | | | | | | | $0.00 | | |
| Misty Cliffs Wines | | | $0.00 | | | | | | | | | $0.00 | |
| Monday | | | $1,236.00 | | | | | | | | | $1,236.00 | |
| Montauk Printing Inc. | | | $265.05 | | | | | | | | | $265.05 | |
| Morrison Stephens | | $0.00 | | | | | | | | | $0.00 | | |
| Mr T Carting | | | $1,177.43 | | | | | | | | | $1,177.43 | |
| Mr T Carting | | | $0.00 | | | | | | | | | $0.00 | |
| Mymo Inc. (GHIA) | | | $18,735.00 | | | | | | | | | $18,735.00 | |
| NASA Services, Inc. | | | $2,114.97 | | | | | | | | | $2,114.97 | |
| Nasser Almontaser | | | $6,000.00 | | | | | | | | | $6,000.00 | |
| National Grid | | | $0.00 | | | | | | | | | $0.00 | |
| Nicholas and Brittany Bodkins | | | $0.00 | | | | | | | | | $0.00 | |
| Nicholas Bodkins | | $0.00 | | | | | | | | | $0.00 | | |
| Nicol Mercado Hernandez | | $0.00 | | | | | | | | | $0.00 | | |
| Nicole Scharfroth-Bach | | $0.00 | | | | | | | | | $0.00 | | |
| No & Low Inc. | | | $30,832.62 | | | | | | | | | $30,832.62 | |
| Non | | | $360.00 | | | | | | | | | $360.00 | |
| Oak Beverage | | | $879.78 | | | | | | | | | $879.78 | |
| Olivia Zorechak | | $0.00 | | | | | | | | | $0.00 | | |
| Omar Garcia | | $0.00 | | | | | | | | | $0.00 | | |
| Opici Wines & Spirits | | | $11,097.72 | | | | | | | | | $11,097.72 | |
| Optimist Drinks LLC | | | $2,622.00 | | | | | | | | | $2,622.00 | |
| Oriana Caraballi Soto | | $0.00 | | | | | | | | | $0.00 | | |
| Orrick, Herrington & Sutcliffe LLP | | | $109,364.94 | | | | | | | | | $109,364.94 | |
| OUIBY, INC. | $0.00 | | | | | | | | $0.00 | | | | |
| Owen Grogan | | $0.00 | | | | | | | | | $0.00 | | |
| Packform | | | $10,738.57 | | | | | | | | | $10,738.57 | |
| Paperplane Cocktail Club | | | $1,276.51 | | | | | | | | | $1,276.51 | |
| Park Street Imports | | | $0.00 | | | | | | | | | $0.00 | |
| Patrick Grogan | | $0.00 | | | | | | | | | $0.00 | | |
| PayPal Working Capital | | | $233,138.88 | | | | | | | | | $233,138.88 | |
| Pentire Drinks Limited | | | $0.00 | | | | | | | | | $0.00 | |
| Pentire Drinks (UK) | | | $0.00 | | | | | | | | | $0.00 | |
| Prodnostic | | | $1,000.00 | | | | | | | | | $1,000.00 | |
| ProjectBL LLC | | | $7,000.00 | | | | | | | | | $7,000.00 | |
| Proper Parking Company | | | $7,000.00 | | | | | | | | | $7,000.00 | |
| Pttow Llc | | | $73,062.50 | | | | | | | | | $73,062.50 | |

| | SCHEDULED CLAIM | | | | FILED CLAIM | | | | ESTIMATED CLAIMS | | | | Notes |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Gen Bar Date = 6/13/2024<br>Gov Bar Date = 10/1/2024 | | | | | | | | | | | | | |
| Creditor | Schedule "D" Secured | Schedule "E" Priority | Schedule "F" Unsecured | C/U/D | Claim No. | Secured | Priority | General Unsecured | Secured Amount | Administrative Amount | Priority Amount | Unsecured Amount | |
| Ramp.com | | | $96,529.36 | | | | | | | | | $96,529.36 | |
| Rasasvada LLC (Rasaspirit) | | | $3,000.00 | | 14 | | | $3,600.00 | | | | $3,600.00 | Also known as Rasasvada, LLC. Address: 1045 Park Avenue, Apt. 5B, New York, NY 10028. Basis: Goods sold (Ruby Artemisia, Rose Bergamot, Black Ginger). Filed on 5/1/2024. |
| Rashida John | | $0.00 | | | | | | | | | | | |
| Ravenna Landa | | $0.00 | | | | | | | | | | | |
| Raymond Mcclough | | $0.00 | | | | | | | | | | | |
| RCPI Landmark Properties LLC | | | $21,790.34 | | | | | | | | | $21,790.34 | |
| Rebecca Anderson | | $0.00 | | | | | | | | | | $0.00 | |
| Rebecca Anderson Ramp | | | $1,367.35 | | | | | | | | | $1,367.35 | |
| Red Krypton Inc. | | | $56,287.00 | | | | | | | | | $56,287.00 | |
| REMEDY PLACE | | | $15,000.00 | | | | | | | | | $15,000.00 | |
| Richard Ortiz | | $0.00 | | | | | | | | | | $0.00 | |
| Ritual Beverage Company, LLC | | | $36,036.00 | | 15 | | | $61,865.93 | | | | $61,865.93 | Also known as Ritual Zero Proof. Address: 4115 N. Ravenswood Avenue, Suite 205, Chicago, IL 60613. Basis: Goods Sold. Filed by Elliott Cohen, Director of Finance, on 5/3/2024. Supporting documents attached include invoices and A/R aging report. |
| RO Sales and Distribution Services | | | $130,365.00 | | | | | | | | | $130,365.00 | |
| Robert Edward Novick | | | | | 3 | | $13,500.00 | | | | $13,500.00 | | Address: 64-33 Catalpa Ave. #2R, Ridgewood, NY 11385. Basis: Commission payments owed for sales made on behalf of the debtor. Filed on 4/7/2024. Priority claim under 11 U.S.C. § 507(a)(4) for wages, salaries, or commissions earned within 180 days before bankruptcy petition. |
| Robert Novick | | $0.00 | | | | | | | | | | $0.00 | |
| Robyn Crane | | $0.00 | | | | | | | | | | $0.00 | |
| Roots Divino | | | $7,344.00 | | 22 | | | $7,344.00 | | | | $7,344.00 | Also known as F.R. GREEK CRAFT LIQUEURS LTD / ROOTS SPIRITS LTD. Address: Solonos 38, 106 72, Athens, Greece. Basis: Goods sold. Filed on 5/16/2024. |
| Rosa Quinones | | $0.00 | | | | | | | | | | $0.00 | |
| Rose Darwish | | $0.00 | | | | | | | | | | $0.00 | |
| Rossano Edghill | | $0.00 | | | | | | | | | | $0.00 | |
| Ryshe Powell | | $0.00 | | | | | | | | | | $0.00 | |
| S.K.I. Wholesale Beer Corp | | | $1,498.42 | | | | | | | | | $1,498.42 | |
| Sabina Lueras | | $0.00 | | | | | | | | | | $0.00 | |
| Sally Flynn | | $0.00 | | | | | | | | | | $0.00 | |
| Sam Rocca | | $0.00 | | | | | | | | | | $0.00 | |
| Sampson Family Wines, LLC | | | $31,625.53 | | | | | | | | | $31,625.53 | |
| Sara Padgett | | $0.00 | | | | | | | | | | $0.00 | |
| Sarah Plowden | | $0.00 | | | 4 | | $1,039.40 | | | | $1,039.00 | | Also known as Caroline Plowden; Caroline Plowden Ellis. Address: 4705 Center Blvd, 3007, Long Island City, NY 11109. Basis: Services performed. Filed on 4/10/2024. Amends claim #4. Priority claim under 11 U.S.C. § 507(a)(4) for wages earned within 180 days of petition. |
| Sarene Craft Beer Distributors | | | $0.00 | | | | | | | | | $0.00 | |
| Sarene Craft Beer Distributors LLC | | | $1,159.60 | | | | | | | | | $1,159.60 | |
| Sayso Beverages Inc. | | | $762.72 | | | | | | | | | $762.72 | |
| Schatzi Wines, LLC | | | $73,160.92 | | 18 | | | $74,006.72 | | | | $74,006.72 | Address: 60 WALL STREET, New York, NY 10005. Basis: Goods Sold. Filed on 5/6/2024. |
| Seacoast Distributing | | | $192.00 | | | | | | | | | $192.00 | |
| Sezenio Calvo | | $0.00 | | | | | | | | | | $0.00 | |
| SFRealEstate Enterprises | | | $5,105.46 | | | | | | | | | $5,105.46 | |
| Shannon Ross | | | $9,600.00 | | | | | | | | | $9,600.00 | |
| Shaquille Pearson | | $0.00 | | | | | | | | | | $0.00 | |
| Sheetal Aiyer | | $0.00 | | | | | | | | | | $0.00 | |
| Sheherazade Fraihi | | $0.00 | | | | | | | | | | $0.00 | |
| Sheny Crawford | | $0.00 | | | | | | | | | | $0.00 | |
| Sherise Sandford | | $0.00 | | | | | | | | | | $0.00 | |
| Sigma Computing, Inc. | | | $10,887.48 | | 7 | | | $13,609.35 | | | | $13,609.35 | Address: 116 New Montgomery Street, Suite 700, San Francisco, CA 94105. Basis: Data processing SAS platform subscription. Filed on 4/18/2024. |
| Simon Data | | | $26,130.00 | | | | | | | | | $26,130.00 | |
| SinZero | | | $2,130.00 | | | | | | | | | $2,130.00 | |
| Skybox Packaging Llc | | | $16,659.32 | | | | | | | | | $16,659.32 | |
| Solomon Fried | | $0.00 | | | | | | | | | | $0.00 | |
| Southern Glazer's Wine & Spirits of CA | | | $12,045.34 | | | | | | | | | $12,045.34 | |
| Sovi Wine Co. | | | $30,973.00 | | | | | | | | | $30,973.00 | |
| SPAR PARTNERS, LLC. | | | | | 25 | | $286.66 | $11,424.38 | | | | $11,711.04 | No Basis for priority.<br><br>Address: 473 WEST END AVENUE, SUITE 2A, NEW YORK, NY 10024. Basis: Goods sold and services performed. Filed on 5/21/2024. |
| Spectrum | | | $1,620.68 | | 12 | | | $893.65 | | | | $893.65 | Dis |
| Spiritless Inc | | | $13,879.00 | | 49 | | | $13,072.60 | | | | $13,072.60 | |

| | SCHEDULED CLAIM | | | | FILED CLAIM | | | | ESTIMATED CLAIMS | | | | Notes |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Gen Bar Date = 6/13/2024 / Gov Bar Date = 10/1/2024 | | | | | | | | | | | | | |
| Creditor | Schedule "D" Secured | Schedule "E" Priority | Schedule "F" Unsecured | C/U/D | Claim No. | Secured | Priority | General Unsecured | Secured Amount | Administrative Amount | Priority Amount | Unsecured Amount | |
| St. Agrestis Spirits | | | $42,442.80 | | 34 | | | $58,340.00 | | | | $58,340.00 | Goods sold |
| SteadFast Digital LLC | | | $4,500.00 | | | | | | | | | $4,500.00 | |
| Stephanie Macoul | | $0.00 | | | | | | | | | $0.00 | | |
| Stephanie Macoul Boisson | | | $7,148.00 | | | | | | | | | $7,148.00 | |
| Steve Weinberg | | $0.00 | | | | | | | | | $0.00 | | |
| Stone Distributing | | | $2,341.40 | | | | | | | | | $2,341.40 | |
| Supportlib Dib.Com | | | $335.00 | | | | | | | | | $335.00 | |
| Susan Dion | | $0.00 | | | | | | | | | $0.00 | | |
| Synergy General Contracting LLC | | | $95,871.37 | | 43 | | | $98,155.60 | | | | $98,155.60 | |
| T&G Industries Inc | | | $1,905.02 | | | | | | | | | $1,905.02 | |
| Taide Keno | | $0.00 | | | | | | | | | $0.00 | | |
| Talent Pop | | | $0.00 | | | | | | | | | $0.00 | |
| Tamara Rivera | | $0.00 | | | | | | | | | $0.00 | | |
| Tanner Hake | | $0.00 | | | | | | | | | $0.00 | | |
| Taylor Mckenty-allen | | $0.00 | | | | | | | | | $0.00 | | |
| Ted Segers | | | $6,400.00 | | | | | | | | | $6,400.00 | |
| Terrence Allbritton Mcclamb | | $0.00 | | | | | | | | | $0.00 | | |
| The Pathfinder | | | $90,113.94 | | | | | | | | | $90,113.94 | |
| The Zero Proof LLC | | | $68,420.64 | | | | | | | | | $68,420.64 | |
| Thierry Joseph | | $0.00 | | | | | | | | | $0.00 | | |
| Thomas Standing | | $0.00 | | | | | | | | | $0.00 | | |
| Three Spirit Drinks Ltd | | | $60,768.00 | | | | | | | | | $60,768.00 | |
| Timonier Family Office Ltd. | | | $1,000.00 | | | | | | | | | $1,000.00 | |
| Toast Beverages LLC (Tost) | | | $2,560.00 | | | | | | | | | $2,560.00 | |
| Tom Standing Ramp | | | $375.80 | | | | | | | | | $375.80 | |
| Torey Yelverton | | $0.00 | | | | | | | | | $0.00 | | |
| Trejo's Spirits | | | $5,160.00 | | | | | | | | | $5,160.00 | |
| True Spirit Beverage Company (Parch) | | | $15,939.84 | | | | | | | | | $15,939.84 | |
| Tyreek Carter | | $0.00 | | | | | | | | | $0.00 | | |
| Tyrese Miranda | | $0.00 | | | | | | | | | $0.00 | | |
| Union Beer Distributors | | | $0.00 | | | | | | | | | $0.00 | |
| UPS | | | $250.25 | | | | | | | | | $250.25 | |
| Victor Guaman | | $0.00 | | | | | | | | | $0.00 | | |
| Visitor World, Inc. | | | $8,064.00 | | | | | | | | | $8,064.00 | |
| VOS Selections | | | $69,861.84 | | | | | | | | | $69,861.84 | |
| W.B. Mason | | | $1,896.91 | | | | | | | | | $1,896.91 | |
| Walker Malloy Co. Inc. | | | $18,807.18 | | | | | | | | | $18,807.18 | |
| Wallace Wong | | $0.00 | | | | | | | | | $0.00 | | |
| Wells Fargo | | | $34,507.46 | | | | | | | | | $34,507.46 | |
| Werwaiss & Co., Inc. | | | $7,169.00 | | | | | | | | | $7,169.00 | |
| West Networks Llc | | | $2,571.00 | | | | | | | | | $2,571.00 | |
| Wilderton LLC | | | $0.00 | | | | | | | | | $0.00 | |
| Wilfreds Drinks Ltd | | | $19,344.00 | | | | | | | | | $19,344.00 | |
| William Gallagher | | $0.00 | | | | | | | | | $0.00 | | |
| William Guerra | | $0.00 | | | | | | | | | $0.00 | | |
| William Hammett | | $0.00 | | | | | | | | | $0.00 | | |
| Wilsa Francois | | $0.00 | | | | | | | | | $0.00 | | |
| Wingify Software Private Limited | | | $2,400.00 | | 35 | | | $4,800.00 | | | | $4,800.00 | POC 29 and 35 are duplicative. Services performed |
| Wingify Software Private Limited | | | | | 29 | | | $4,800.00 | | | | $0.00 | POC 29 and 35 are duplicative. Address: E-170 Antriksh Apartments, Sector-14, Rohini, New Delhi 110085, INDIA. Basis: Software Services. Filed on 5/22/2024. |
| Wood Stove Kitchen | | | $11,050.16 | | | | | | | | | $11,050.16 | |
| Yasu Maskay | | $0.00 | | | | | | | | | $0.00 | | |
| Zahara Flooring Corp - Elizabeth Brooks | | | $1,080.00 | | | | | | | | | $1,080.00 | |
| | | | | | | | | | | | | | |
| TOTALS | $5,167,123.92 | $0.00 | $3,612,180.16 | | | $7,064,373.64 | $136,912.63 | $2,045,574.97 | $0.00 | $94,482.00 | $27,567.95 | $4,497,292.75 | |

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

**EXHIBIT "5"**

**[LIST OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES TO BE ASSUMED]**

24

**[TO FOLLOW]**

25

26

27

28

44

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:
2818 La Cienega Avenue, Los Angeles, California 90034

A true and correct copy of the foregoing document entitled (*specify* **DEBTOR'S CHAPTER 11, SUBCHAPTER V, PLAN OF REORGANIZATION, DATED JULY 5, 2024** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

1.  **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) **July 5, 2024**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- **Todd M Arnold    tma@lnbyg.com**
- **Ron Bender    rb@lnbyg.com**
- **Caroline Renee Djang (TR)    cdjang@buchalter.com,
  C190@ecfcbis.com;docket@buchalter.com;lverstegen@buchalter.com**
- **Dare Law    dare.law@usdoj.gov**
- **James P Menton    jmenton@robinskaplan.com, LCastiglioni@robinskaplan.com**
- **Kristen N Pate    bk@bpretail.com**
- **Amitkumar Sharma    amit.sharma@aisinfo.com**
- **United States Trustee (LA)    ustpregion16.la.ecf@usdoj.gov**

2.  **SERVED BY UNITED STATES MAIL**: On (*date*) **July 5, 2024**, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

Attn:  Ally Capital/Ford Motor **RSN**
AIS Portfolio Services, LLC
Amitkumar Sharma **SERVED BY NEF \***
4515 N Santa Fe Ave. Dept. APS
Oklahoma City, OK 73118

☐ Service information continued on attached page

3.  **SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) **July 5, 2024**, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐ Service information **BY EMAIL** continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| July 5, 2024 | Lourdes Cruz | /s/ Lourdes Cruz |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.